UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **DAVID MATSON and BARBARA MATSON**, individually and on behalf of all others similarly situated, | § § § § | |
| *Plaintiffs*, | § § § | |
| v. | § § | Civil Action No. 5:19-cv-00717 |
| **NIBCO, Inc.**, | § § § | |
| *Defendant*. | § § § § | |

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT**

Plaintiffs David Matson and Barbara Matson ("Plaintiffs"), individually and on behalf of all others similarly situated (the "Settlement Class" and "Settlement Class Members") file their Unopposed Motion for Preliminary Approval of Class Action Settlement (the "Motion"), and in support state as follows.

**I.**
**INTRODUCTION**

After contested litigation and hard-fought, arms-length negotiations – including before an experienced mediator – Plaintiffs and the Settlement Class on the one hand, and Defendant NIBCO, Inc. ("NIBCO") on the other, have entered into a Settlement Agreement (the "Settlement"), which if approved by the Court, would finally and fully resolve the claims against NIBCO on behalf of the Settlement Class.[1] Plaintiffs now move this Court for an Order, pursuant to Fed. R. Civ. P. 23(e): (i)

---

[1] The proposed Settlement in this case would also resolve the class-wide claims brought in *Garrett v NIBCO*, Case No. 19-cv-01137, which is currently pending in the Northern District of Alabama. Plaintiffs here will

preliminarily approving the Settlement, (ii) certifying the Settlement Class, (iii) providing for issuance of notice to the Settlement Class, and (iv) scheduling a final-fairness hearing. For the reasons set forth below, the Court should grant this Motion for Preliminary Approval.

## II.
### SUMMARY

1. Plaintiffs seek to certify the following Settlement Class, pursuant to Fed. R. Civ. P. 23(b)(3), for purposes of approving the proposed settlement:

> All Persons that own or have owned at any time since January 1, 2005, a residential structure constructed by: (a) D.R. Horton, Inc.-Birmingham (including, but not limited to, those for which the plumbing contracting was performed by or on behalf of Dupree Plumbing Co., Inc.) and which is located in the following cities in Alabama: Bella Vista; Bessemer; Birmingham; Calera; Chelsea; Cottondale; Hoover; Kimberly; Leeds; Maylene; McCalla; Montgomery; Northport; Odenville; Pinson; Prattville; Springville; Trussville; and Tuscaloosa; and/or (b) Continental Homes of Texas, L.P. (including, but not limited to, those for which the plumbing contracting was performed by or on behalf of Christianson Air Conditioning and Plumbing, LLC) and which is located in the following cities in Texas: Boerne; Cibolo; Converse; Live Oak; Medina County; New Braunfels; Royse City; San Antonio; San Marcos; Schertz; Seguin; and Universal City, that contains or contained NIBCO's Tubing, Fittings, or Clamps, including with respect to both (a) and/or (b), their spouses, joint owners, heirs, executors, administrators, mortgagees, tenants, creditors, lenders, predecessors, successors, trusts and trustees, and assigns ("Occupant Persons"); as well as all Persons who have standing and are entitled to assert a claim on behalf of any such Occupant Persons, such as but not limited to a contractor, distributor, seller, subrogated insurance carrier, or other Person who has claims for contribution, indemnity or otherwise against NIBCO based on claims for Qualifying Leaks of the Tubing, Fittings, or Clamps with respect to such residential structures. The Settlement Class includes all Persons who subsequently purchase or otherwise obtain an interest in a property covered by this Settlement without the need of a formal assignment by contract or court order. A list of the residential structures in Alabama and Texas included in the Settlement Class will be provided to the Settlement Administrator and made available on the Settlement Website.

---

move for leave to file an amended complaint to add the *Garrett* named plaintiff as a named Plaintiff in this action. Similar claims were resolved in a nationwide class action settlement approved by the United States District Court for the District of New Jersey in *Cole v. NIBCO*; however, that settlement did not include the approximately 8,100 homes in Texas and Alabama built by DR Horton (or a subsidiary thereof) and which comprise the Settlement Class here.

Excluded from the Settlement Class are D.R. Horton, Inc.-Birmingham, Dupree Plumbing Co., Inc., Continental Homes of Texas, L.P., and Christianson Air Conditioning and Plumbing, LLC.

Also excluded from the Settlement Class is any Person (other than the named Plaintiffs in the Litigation) who, as of October 22, 2020, had pending litigation in any court or tribunal against NIBCO asserting claims based on a Covered Product.

Also excluded from the Settlement Class are: (i) NIBCO, its officers, directors, affiliates, legal representatives, employees, successors, and assigns, and entities in which NIBCO has a controlling interest; (ii) judges presiding over the Litigation; and (iii) local, municipal, state, and federal governmental entities.

2. Under the Settlement, the Settlement Class has agreed to settle its claims against NIBCO in exchange for NIBCO creating a common fund of up to $7,650,000. In addition to this common fund amount, NIBCO also has agreed to separately pay Class Counsel's reasonable attorney's fees and expenses such that the Class does not have to bear that expense. Thus, the $7,650,000 common fund is a net amount (subject only to the costs of notice and administration, which the Settlement Administrator has agreed will not exceed $272,500).

3. Plaintiffs on behalf of the Settlement Class submit that the Settlement is fair, reasonable, adequate, and merits the entry of an order preliminarily approving the Settlement, certifying the Settlement Class for purposes of settlement only, providing for issuance of notice to the Settlement Class and approving the Notice Plan, and scheduling a final-fairness hearing.

4. Plaintiffs also attach the following documents along with the Motion:

   a.    A fully executed copy of the Settlement Agreement with exhibits;[2]

   b.    A *proposed* Order Granting Plaintiffs' Motion for Preliminary Approval of Class

---

[2] The Settlement Agreement is attached as **Exhibit A**.

Action Settlement (the "Preliminary Approval Order");[3]

     c.     A *proposed* Notice of Proposed Settlement of Class Action and Final Approval Hearing (the "Notice");[4]

     d.     A *proposed* Short Form (Summary) Notice of Proposed Settlement;[5]

     e.     A *proposed* Claim Form to be utilized by Class Members when submitting a Claim (the "Claim Form");[6]

     f.     A *proposed* Schedule of Fixtures, Preferred Provider Agreement, and Scope of Work, all of which are related to provision of preferred plumbing services providers;[7]

     g.     A *proposed* Cover Letter to Accompany the Notice (the "Cover Letter");[8] and

     h.     *Proposed* Deficiency and Denial Letters to Settlement Class Members explaining the reason for denial, the process for responding to a denial of claim by the Class Action Administrator, and the appeal mechanism (the "Deficiency Letter" and "Denial Letter").[9]

## II.
### OVERVIEW OF THE LITIGATION

In this action, Plaintiffs brought claims against NIBCO for (i) breach of express warranty (Count I), (ii) breach of implied warranty of merchantability (Count II); and (iii) strict liability design defect, manufacturing defect, and failure to warn (Count III). These claims were based upon

---

[3] The Preliminary Approval Order is attached as **Exhibit B**.

[4] The Notice is attached as Exhibit 2 to the Settlement Agreement.

[5] The Summary Notice is attached as Exhibit 10 to the Settlement Agreement**.**

[6] The Claim Form is attached as Exhibit 1 to the Settlement Agreement.

[7] The Schedule of Fixtures, Preferred Provider Agreement, and Scope of Work are attached as Exhibits 4, 5, and 6 respectively, to the Settlement Agreement.

[8] The Cover Letter is attached as Exhibit 9 to the Settlement Agreement.

[9] The Deficiency Letter is attached as Exhibit 8 to the Settlement Agreement and the Denial Letter is attached as Exhibit 7 to the Settlement Agreement.

*Plaintiffs' Unopposed Motion for Preliminary Approval of*
*Class Action Settlement*         *Page 4*
3310033.1

Plaintiffs' allegation that NIBCO is liable to Plaintiffs and class members for damages resulting from undisclosed design and manufacturing defects in NIBCO's cross-linked polyethylene plumbing tubes ("PEX Tubing"), the brass fittings required to connect the PEX Tubing ("PEX Fittings"), and the stainless-steel camps ("PEX Clamps") required for joining the PEX Tubing and PEX Fittings (collectively the PEX Tubing, PEX Clamps, and PEX Fittings are "PEX Products"). Plaintiffs alleged that the above defects caused each of the PEX Tubing, PEX Fittings, and PEX Clamps to fail prematurely, resulting in repeated leaks which cause and caused damage to Plaintiffs' and class members' real and personal property.

Specifically, Plaintiffs alleged that contrary to the warranties and promises made by NIBCO that its PEX Products would be free from defects and last ten to 25 years, PEX Tubing is predisposed to premature oxidative failure and creep rupture; PEX Fittings are predisposed to prematurely fail as a result of dezincification corrosion; and PEX Clamps are predisposed to prematurely fail as a result of chloride-induced stress corrosion cracking.[10]

NIBCO denies that it is liable to Plaintiffs and the class, has raised numerous defenses to Plaintiffs' claims, and instead asserts the failures related to the PEX Products are the result of the actions of others, including but not limited to installation errors.

## III
### PROCEDURAL HISTORY

NIBCO's PEX Products have been the subject of litigation since at least 2013, including in Texas, Alabama, and federal courts. These claims have been extensively litigated in each of these forums. Indeed, claims concerning the same alleged defects in the PEX Products were the subject

---

[10] *See* Amended Complaint at Dkt. No. 33.

of protracted litigation for more than five (5) years in the putative class action captioned *Cole v. NIBCO*, Case No. 13-cv-7871 (D.N.J.). That case was finally settled in 2019, but as explained below, that settlement – which received final court approval on April 12, 2019 – excluded Plaintiffs and the members of this Settlement Class.

## A. **The Texas Litigation**

On April 10, 2018, Plaintiffs Barbara and David Matson initiated their first lawsuit by filing a Texas state court petition against builder DR Horton in Bexar County, Texas. On April 24, 2018, DR Horton filed a third-party claim against NIBCO, and after which, the Matson Plaintiffs amended their petition to include NIBCO. Shortly thereafter, Plaintiffs engaged in discovery and fact investigation (which included discovery of materials produced in other litigation involving the same claims involved here), and both Matson Plaintiffs were deposed. On June 19, 2019, Plaintiffs filed their Original Complaint in the instant action seeking relief on a class-wide basis, while simultaneously nonsuiting their state court action which had been brought in their individual capacity only.

During the pendency of litigation in this Court, Plaintiffs have engaged in both "on-docket" and extensive "off-docket" litigation activities. With regard to the "on-docket" activity, Plaintiffs' filed their class action complaint on June 19, 2019.[11] Defendant moved to dismiss Plaintiffs' complaint pursuant to Fed. R. Civ. P. 12(b)(6).[12] Thereafter on April 27, 2020, Plaintiffs filed their amended complaint, which, *inter alia*, added an Alabama subclass and clarified the basis for Plaintiffs' claims.[13] On July 10, 2020, Defendant again moved to dismiss the Amended Complaint.[14]

---

[11] *See* Dkt No. 1.
[12] *See* Dkt. No. 14.
[13] *See* Dkt. No. 33.
[14] *See* Dkt. No. 38.

With regard to the extensive "off-docket" activity, Plaintiffs reviewed the discovery conducted in the first *Matson* action, including discovery produced in *Cole*, analyzed Defendants' Motion to Dismiss the Amended Complaint, researched relevant authorities, and began developing argument and theories in response to the Motion to Dismiss. Additionally, Plaintiffs and Defendants have been engaged in "arms-length" negotiations for more than a year. Those negotiations have included numerous in person, telephonic, and Zoom settlement conferences (some of which included third-party DR Horton). Plaintiffs and Defendants also spent hundreds of hours reviewing and analyzing the contentions of defendant's expert concerning the statistical likelihood of future leaks in Class member structures, including the timing and frequency of such leaks. Those analyses undergirded the negotiations that culminated in a full-day mediation on September 16th before Ross Hart (the mediator who also resolved the *Cole* litigation), which was ultimately successful and led to the instant Settlement.

## B. <u>The Alabama Litigation</u>

Separate from the Texas litigation, on July 18, 2019, Yolanda Garrett filed her initial complaint in the United States District Court for the Northern District of Alabama in a matter captioned *Garret v. NIBCO*. NIBCO moved to dismiss her complaint on September 30, 2019, and Plaintiff Garrett responded with a First Amended Complaint on October 21, 2019. On November 4, 2019, NIBCO again filed a motion to dismiss. On November 14, 2019, Plaintiff Garrett filed her response in opposition to NIBCO's motion to dismiss, and on November 25, 2019, NIBCO filed its reply. Thereafter, plaintiff sought leave and filed her sur-reply to the motion to dismiss. On May 28, 2020, without reaching the merits of the motion to dismiss, the Court terminated the motion and ordered plaintiff to file a Second Amended Complaint.

With regard to "off-docket" activity, Plaintiff Garrett also engaged experts and likewise spent untold hours working with those experts on issues related to the manufacturing of the PEX Products, the failure of the PEX Products, and the water damage to the home, home structure, and personal property of Plaintiff Garrett and Alabama class members. Garrett coordinated with Plaintiffs in this action and fully participated in the September 16th mediation, as well as numerous other settlement conferences with NIBCO.

## C. The *Cole* Litigation

The *Cole* litigation which involved claims concerning the same alleged defects in the PEX Products alleged originally by Plaintiffs here and in the *Garrett* action in Alabama, was initiated in the District of New Jersey in 2013 and litigated before the Honorable Freda Wolfson. The class definition used in the *Cole* complaint and amended complaint included Plaintiffs and members of the class in this action (including Garrett).[15] Plaintiffs and other current and former owners of homes in the certain Alabama and Texas communities at issue in this action and *Garrett* were excluded from the settlement class definition in the *Cole* settlement, however.[16] Thus, Plaintiffs and class

---

[15] The *Cole* class in the original complaint and amended complaint was defined as:

> All persons or entities who sustained damages proximately caused by NIBCO's Defective PEX Products used in the water plumbing systems of Plaintiffs' and Class members' homes and other structures, or which otherwise were installed in the homes and structures of Plaintiffs and the Class and require remediation.

The *Cole* class was further defined to include state subclasses which generally used the same definition listed above and which included both an Alabama and Texas subclass.

[16] The settlement class definition in *Cole* specifically excluded from its settlement class the residential structures that are part of the Settlement Class in this action:

> . . . Occupant  Persons with respect to residential structures constructed by D.R. Horton, Inc.-Birmingham (including, but not limited to, those for which the plumbing contracting was performed by or on behalf of Dupree Plumbing Co. Inc.) and which are located in the following cities in Alabama:  Bella Vista; Bessemer; Birmingham; Calera; Chelsea; Cottondale; Hoover; Kimberly;

members continued to suffer the leaks and damages from the alleged leaks in the PEX Products but stood to receive no relief from the *Cole* settlement. Plaintiffs and Garrett stepped-in to protect the class members, and in doing so, have secured a settlement agreement that exceeds the judicially-approved recovery accomplished in *Cole* in several material respects.

## IV.
### THE RISKS PRESENTED

At the time Plaintiffs and NIBCO reached terms, the Plaintiffs and Class Members faced enormous risk which could have resulted in Plaintiffs and the Settlement Class recovering nothing, or at best a modest recovery which would have been far less than the recovery provided for in the proposed Settlement.

### A.  Limitations Defenses

Unlike the plaintiffs in *Cole*, Plaintiffs and Settlement Class Members faced the real possibility of dismissal of their implied warranty and strict liability claims based upon NIBCO's statute of limitations defense. As argued by NIBCO, Texas law with regard to the breach of implied warranty is such that Plaintiffs were required to bring suit within four years of the purchase of their home. Likewise, the strict liability claims are subject to a two-year limitations period, meaning that

---

Leeds; Maylene; McCalla; Montgomery; Northport; Odenville; Pinson; Prattville; Springville; Trussville; and Tuscaloosa.  Also excluded from the Settlement Class are Occupant Persons with respect to residential structures constructed by Continental Homes of Texas, L.P. (including, but not limited to, those for which the plumbing contracting was performed by or on behalf of Christianson Air Conditioning and Plumbing, LLC) and which are located in the following cities in Texas:  Boerne; Cibolo; Converse; Live Oak; Medina County; New Braunfels; Royse City; San Antonio; San Marcos; Schertz; Seguin; and Universal City.  A list of such residential structures in Alabama and Texas covered by this exclusion will be provided to the Settlement Administrator and made available on the Settlement Website.  Also excluded from the Settlement Class are D.R. Horton, Inc.-Birmingham, Dupree Plumbing Co. Inc., Continental Homes of Texas, L.P., and Christianson Air Conditioning and Plumbing, LLC, solely with respect to the structures identified in that list.

class members who first experienced leaks more than two years before filing of this suit may have been barred from recovery.

In order to overcome NIBCO's limitations defense, Plaintiffs would have had to demonstrate the applicability of NIBCO's extended warranty or the applicability of equitable tolling. As explained in greater detail in the next section, Plaintiffs faced formidable hurdles with respect to the extended warranty. Equitable tolling would have required Plaintiffs to demonstrate that either: (i) NIBCO had fraudulently concealed its conduct with regard to the PEX Products, or (ii) that Plaintiffs were entitled to *American Pipe*[17] tolling as a result of the pendency of the *Cole* litigation, an argument NIBCO refuted. Plaintiffs' ability to demonstrate they were entitled to such tolling of the statute of limitations was by no means a clear-cut endeavor. First, as to fraudulent concealment, Plaintiffs would have been required to plead NIBCO knew of the alleged defects which affected the PEX Products and affirmatively withheld that knowledge from Plaintiffs. As to *American Pipe* tolling, Plaintiffs would have been required to overcome recent authority indicating *American Pipe* tolling does not apply to state law claims.[18] Moreover, Plaintiffs would have also had to overcome relevant Texas and Alabama case law—which has not traditionally accepted cross-jurisdictional tolling of state common law and statutory claims.[19]

## B.  <u>Substantive Defenses</u>

Plaintiffs also faced numerous other defenses to liability raised by NIBCO, any one of which

---

[17] *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974) (filing of class action complaint tolls statute of limitations for absent class members with respect to federal claims).

[18] *See*, *e.g.*, 1 McLaughlin on Class Actions § 3:15 (14th ed.) (noting that state law claims are subject to state law tolling doctrines)

[19] *See*, *e.g.*, *Bell v. Showa Denko K.K*., 899 S.W.2d 749, 757-58 (Tex. App.—Amarillo 1995, writ denied) (federal class action in New Mexico did not toll statute of limitations for Texas state claims); *Love v. Wyeth*, 569 F. Supp. 2d 1228, 1237 (N.D. Ala. 2008) (declining to toll state law claims based on Louisiana federal class action).

could have led to dismissal of Plaintiffs' claims.

For example, with regard to Plaintiffs' claims for breach of express warranty (Count I), Plaintiffs faced two notable defenses. First, Plaintiffs would have had to demonstrate NIBCO's written "Limited Warranty" was the basis of NIBCO's bargain with Plaintiffs, a difficult proposition given that Plaintiffs purchased fully constructed homes and did not select the plumbing components. NIBCO further asserted Plaintiffs were also required to demonstrate they had relied upon the NIBCO "Limited Warranty" at the time they purchased their home (and by extension, knew the PEX Products were contained therein).

NIBCO also asserted that its written "Limited Warranty" applied only to manufacturing defects, and not design defects. Put simply, NIBCO argued Plaintiffs would have been required to demonstrate their claim arose from a defect in the manufacturing of the PEX Products (which defect was arguably covered by the "Limited Warranty"), as opposed to the design of the PEX Products themselves (which claims arguably were excluded from the "Limited Warranty").

With regard to Plaintiffs' strict liability claim, NIBCO raised numerous defenses, most notably, Texas' Economic Loss Rule ("ELR"). Plaintiffs hoped to overcome the ELR as defense to liability, but *still* would have faced the real possibility that by application of the ELR, Plaintiffs' and Settlement Class Members' damage claims would have been limited to personal property and would not have included the costs of re-piping structures or repairing damage to the home or home structures themselves that had resulted from leaks.

Of course, overarching the above highlighted risks faced by Plaintiffs and the Settlement Class with regard to liability, were the difficulties Plaintiffs would have also faced in seeking a contested class certification order, which would have required Plaintiff to satisfy the requirements

of Rule 23 through an adversarial process.

Simply put, the risks faced by Plaintiffs were substantial and, potentially, fatal to the Class.

## V.
## THE TERMS OF THE SETTLEMENT

In light of the risks outlined above, the recovery contemplated by the Settlement Agreement is simply remarkable. In order for Plaintiffs to have achieved a recovery similar to that provided by the proposed Settlement, Plaintiffs and the Settlement Class would have been required to literally "shoot the moon" on the merits while carrying that risk through dispositive motions, class certification, and ultimately trial. Indeed, even if Plaintiffs had succeeded at trial on every issue, they and the Class *still ran the risk* of receiving far less in damages than the proposed Class Settlement Fund. The notable terms of the Settlement provide for:

- A settlement fund in the amount of up to $7,650,000.00, with additional upside value as explained below;

- Settlement Class Members will be eligible to receive up to 75% of their "Reasonably Proven Property Damage" (with an initial payment of 50%). Reasonably Proven Property Damage is defined to include repair or replacement of the NIBCO PEX (defined as "Covered Products" in the Settlement) as a result of a Qualifying Leak, the repair or replacement of other property damaged as a result of a Qualifying Leak, and material and labor costs necessary to restore the affected property or structure to its condition prior to the Qualifying Leak."[20]

- Settlement Class Members who have suffered Multiple Qualifying Leaks may exercise the

---

[20]*See* Exhibit A at ¶10a.

option to obtain a re-plumb of their entire residence or structure.[21] The amount of the payment (the "Re-Plumb Calculation") is to be calculated at a rate of $722.50 per plumbing fixture present in the residential structure (*e.g.*, the Re-Plumb Calculation for a home with 13 fixtures would be $9,392.50). Eligible Claimants shall receive up to 75% of the Re-Plumb Calculation (with an initial payment of 50% of the Re-Plumb Calculation, as set forth below).

- Discounted services by preferred plumbing providers in Texas and Alabama (who have performed numerous replumbs in each of the relevant communities) at an approximate 15% discount from the standard rates those providers would charge homeowners for re-plumb services in their relevant communities, such that the true value of the settlement fund is potentially as much as $8,797,500 (if one considers this a 15% premium on the maximum $7,650,000 fund), along with other benefits like financing for out-of-pocket expenses associated with the re-plumb;

- Settlement Class Members eligible for a re-plumb also will have the option to select a one-time payment of $3,000 in lieu of a re-plumb payment;

- In order to access the relief provided for by the Settlement, Settlement Class Members are only required to provide proof of payment for past leak claims, and the process through which such Claims may be submitted also provides for submission of proof electronically through a settlement website designed for such purpose.[22]

- Attorney's fees and expenses paid by NIBCO over and above the Class Settlement Fund.[23]

---

[21] *See Id.* at ¶10b.

[22] *See* Declaration of Steven Weisbrot, Esq., Angeion Group, attached as **Exhibit C.**

[23] The costs of notice and administration capped at $272,000 will be paid out of the Class Settlement Fund.

Importantly, the benefits of the proposed Settlement improve upon virtually every term provided for in the *Cole* settlement, which itself was an excellent result for the class and was finally approved in the District of New Jersey on April 11, 2019. Notably, the *Cole* settlement provided for an initial payment to class members with qualifying leaks of 25% of the cost to repair property damage or toward the cost of a replumbing, with a potential maximum payment of 70% of these amounts. Additionally, *Cole* did not provide for a preferred provider offering discounted plumbing services or financing to assist Settlement Class Members to pay the balance of the cost of replumbing their homes.  Finally, *Cole* did not provide the option of a one-time cash payment in lieu of a re-plumb.

As to the size of the fund, the *Cole* settlement after payment of attorney's fees and expenses, provided up to approximately $29,000,000 for a class which was estimated at between 150,000 and 422,000 structures.[24] The proposed Settlement here provides up to $7,650,000 for approximately 8,100 structures. On a *pro rata* basis, therefore, the proposed settlement is anywhere from 5 to 8.4 times larger than the settlement finally approved by Judge Wolfson in *Cole.*[25]

## VI.
### ANALYSIS

### A. **Introduction**

Rule 23(e) requires notice be given to the Class, a final fairness hearing, and this Court's

---

[24] Unlike the proposed settlement, the *Cole* settlement provided for attorney's fees and expenses to be paid out of the total settlement fund, which reduced the amount available to the settlement class by approximately 30%.

[25] Plaintiffs certainly do not take issue with the result achieved by the plaintiffs in *Cole.* Indeed, that result was also quite remarkable. Rather, Plaintiffs merely point out that given that the fairness, reasonableness, and adequacy of the *Cole* settlement has already been determined and finally approved, then by comparison the instant Settlement clearly meets that standard.

approval of the Settlement. Before scheduling a fairness hearing and ordering notice, this Court must be presented with a settlement that on its face, warrants notice be given to the Settlement Class. Put simply, the purpose of seeking preliminary approval from the Court is to determine whether there is a reason to notify the class members of the proposed settlement and proceed with the fairness hearing.[26]

In making the determination as to whether to preliminarily approve a class action settlement, the court assesses whether there is "probable cause" to provide notice and hold a fairness hearing.[27] An inquiry into the ultimate fairness of the Settlement is not necessary at this point because there will be a further hearing at which the fairness of the Settlement will be addressed, after notice to the Settlement Class. So long as the proposed settlement "discloses no reason to doubt its fairness, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, does not grant excessive compensation to attorneys, and appears to fall within the range of possible approval, the court should grant preliminary approval."[28]

## B. The Settlement Class Should be Certified

The Court should satisfy itself that the requirements of Rule 23 are met prior to exercising its discretion to conditionally certify the Settlement Class.[29]

First, the Settlement Class clearly satisfies the numerosity requirement of Rule 23(a)(1).

---

[26] *See* Fed. R. Civ. P. 23(e) (requiring notice to be sent to class if Court is likely (i) to approve the settlement as fair and reasonable, and (ii) to certify the class).

[27] *See, e.g.*, *Jones v. Singing River Health Sys.*, No. 1:14CV447-LG-RHW, 2016 WL 6106518, at *5 (S.D. Miss. Jan. 20, 2016).

[28] *In re Pool Prods. Distrib. Market Antitrust Litig.*, 310 F.R.D. 300, 315 (E.D. La. 2015)

[29] *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997) (must first determine whether the elements of Rule 23(a) are satisfied); *see also* McLaughlin on Class Actions: Law and Practice (Eleventh) § 5.1 (2014) (court must next determine whether class is maintainable under Rule 23(b)).

The approximate number of Settlement Class Members is known and includes more than 8,100 homeowners in Texas and Alabama, whose structures include or included the PEX Products.

Next, Rule 23(a)(2)'s commonality element requires Plaintiffs to show that "there are questions of law or fact common to the class."[30] As the Supreme Court noted in *Walmart v. Dukes*, "[t]hat language is easy to misread, since any competently created class complaint literally raises common questions."[31] Thus, reciting common questions alone is not enough to obtain class certification. Rather, "[c]ommonality requires the plaintiff to demonstrate the class members have suffered the same injury."[32] In other words, Class Member claims must "depend upon a common contention."[33] That in turn means that, in order to satisfy Rule 23(a)'s commonality requirement, the common contention "must be of such a nature that it is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."[34]

Here, the claims of Settlement Class Members depend on a common contention. The central issue in this case was whether the PEX Products at issue are defective.  That contention turns on a common answer about the design of the product that is either true or false for each and every member of the Settlement Class. In other words, Plaintiffs asserted that the validity of Class member claims can be determined in a "single stroke." Other common questions subject to a common answer include whether NIBCO knew of the alleged defects, whether NIBCO breached its Limited Warranty, and the many other common questions identified in the operative complaint.  And that is

---

[30] *See* Fed. R. Civ. P. 23(a)(2).
[31] *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011) (internal quotations and citations omitted).
[32] *Id.* at 350.
[33] *Id*.
[34] *Id.*

all that is required to satisfy the commonality element.

"Like commonality, the test for typicality is not demanding. It 'focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent.'"[35] Where, as here, the legal theories underlying the Plaintiffs' claims are precisely the same as the theories which underly the claims of the Class—*i.e.,* Plaintiffs' contention that they were damaged by defectively designed and manufactured PEX Products—the typicality requirement is easily met.[36]

Finally, to determine whether the Plaintiffs "will fairly and adequately protect the interest of the class," as required by Rule 23(a)(4), "the court must find [Plaintiffs], their counsel, and the relationship between the two are adequate to protect the interests of absent class members.[37] Plaintiffs must also show "that they, and not counsel, are directing the litigation [by demonstrating] they are sufficiently informed . . . to manage the litigation effort."[38]

Here, Class Counsel collectively have decades of experience in prosecuting large class actions and have successfully represented individuals and classes in numerous complex matters. They are well qualified to conduct the litigation and their results speak for themselves. The named Plaintiffs' legal and remedial theories are substantially similar to those of other members of the Settlement Class and the Settlement does not involve any compromise of the interests of some Settlement Class Members to the interests of others. Moreover, Plaintiffs are well-informed, have participated heavily in the litigation by directing the efforts of Class Counsel, and the relationship

---

[35] *Mullen v. Treasure Chest Casino, LLC,* 186 F.3d 620, 625 (5th Cir. 1999) (quoting *Lightbourn v. County of El Paso,* 118 F.3d 421, 426 (5th Cir. 1997)).
[36] *Id.*
[37] *Unger v. Amedisys Inc*., 401 F.3d 316, 321 (5th Cir. 2005).
[38] *Id.*

between Class Counsel and Plaintiffs are adequate to protect the interests of absent class members.

In addition to the requirements of Rule 23(a), Plaintiffs must also satisfy Rule 23(b)(3)'s predominance element—under which Plaintiffs have proceeded here. Rule 23(b)(3) requires common issues predominate over individualized issues, such that class wide treatment of claims is appropriate.[39] Here, that clearly is the case. The single dominant question for all Settlement Class Members is whether NIBCO's PEX Products were defectively designed and/or manufactured. This contention can be proven on a class-wide basis, without meaningful individualized issues that predominate over the common issues.

Rule 23(b)(3) also requires the Court find that certification of the Settlement Class is "superior to other available methods for the fair and efficient adjudication of the controversy."[40] This requirement is easily satisfied here. Clearly, class-wide treatment of these claims is far more efficient than requiring approximately 8,100 Settlement Class Members to file and prosecute individual actions, all of which are based upon the same factual and legal theories, and which individually do not involve large enough damages to justify the cost of piecemeal litigation. Indeed, class-wide treatment and the proposed Settlement provides the Settlement Class with substantial benefits, while limiting the risks, costs, and delays of litigation. As such certification is clearly superior to other available methods of resolving the claims of the Settlement Class.

Moreover, when assessing predominance and superiority, the Court may consider that the class will be certified for settlement purposes only, and that a showing of manageability at trial is not required. *See Amchem*, 521 U.S. at 618 ("Confronted with a request for settlement-only class

---

[39] *See* Fed. R. Civ. P. 23(b)(3).
[40] *Id.*

certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see FED. R. CIV. P. 23(b)(3)(D), for the proposal is that there be no trial.").

## C. The Settlement Should Be Preliminarily Approved

The judicial approval of a class action settlement requires two separate steps. First, the Court must make a preliminary determination as to whether a proposed settlement falls "within the range of possible judicial approval."[41] Once the proposed settlement is found to be within the range of possible approval, a final approval hearing is set, and notice is provided the Settlement Class.[42] The second step involves a final determination – following a hearing at which pertinent evidence and any objections by class members may be considered – whether the Settlement is fair, reasonable, and adequate from the standpoint of the Settlement Class.[43]

In making this first-step determination, the trial court is entitled to rely upon the judgment of experienced counsel for the parties.[44] There is also a strong initial presumption that the compromise is fair and reasonable.[45] Thus, courts exercise restraint in examining proposed settlements and recognize that settlements, by definition, are compromises that need not satisfy every concern of the parties and must fall anywhere within a broad range of upper and lower limits.[46]

Rather than an extended inquiry into the claims asserted, courts may "presume a settlement is fair and reasonable when it is the result of arms' length negotiations" effected by counsel

---

[41] H. Newberg, *Newberg on Class Actions*, §11.25 (4th ed.) (*quoting Manual for Complex Litig.*, at §30.41 (3d ed. 1991).

[42] *Id.*

[43] H. Newberg, *Newberg on Class Actions*, §11.41.

[44] *See Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977).

[45] *See Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 650 (N.D. Tex. 2010) (*citing Purdie v. Ace Cash Express, Inc.*, 2003 WL 22976611 at *4 (N.D. Tex. Dec. 11, 2003)).

[46] *See, e.g.*, *Welsh v. Navy Federal Credit Union*, 2018 WL 7283639 (W.D. Tex. Aug. 20, 2018) (noting in approving class action settlement that the broad range of recovery could extend from a few dollars to thousands of dollars).

experienced in class action litigation."[47] Once counsel's experience is established, courts give such counsel's "opinion . . . supporting the settlement . . . 'considerable weight.'"[48] Courts recognize "parties' counsel are best able to weigh the relative strengths and weaknesses of their arguments."[49]

The proposed Settlement was reached after extensive "arms-length" negotiations prior to, during, and after mediation, by opposing counsel—all of whom were committed to the vigorous representation of their respective clients. All sides fully presented their positions (always professionally, but also aggressively), and considerable effort was expended over a considerable period of time before the parties ultimately reached a settlement. There was nothing remotely collusive about the settlement negotiations or the ultimate agreement reached by the parties. Indeed, there are no terms contained in the Settlement Agreement which would militate against the granting of preliminary approval.

The Settlement provides substantial benefits for Settlement Class Members. It creates a common-fund of up to $7,650,000.00, which provides a large and immediate monetary benefit to the Settlement Class – without the Settlement Class having to ford a myriad of legal risks by pressing forward with litigation and possible appeals for several more years in addition to those already expended. That is to say, the proposed Settlement provides important and meaningful relief to the Settlement Class right now rather than potentially years down the line, which given the nature of this action is as important a factor as the size of the relief. Moreover, the benefits provided by this Settlement meet or exceed those finally approved as "fair, reasonable, and adequate" by another Federal District Court Judge in the *Cole* settlement. And of course, had the parties not been able to

---

[47] *See Duncan v. JPMorgan Chase Bank*, 2016 WL 4419472 at *11 (W.D. Tex. May 24, 2016)
[48] *See In re Saxon Sec. Litig.*, 1985 WL 48177, at *5 (S.D.N.Y, Oct. 30, 1985).
[49] *Id.*

resolve this matter through settlement, Plaintiffs and the Settlement Class risked the possibility of recovering nothing at all. Thus, the Settlement is extremely favorable to the Settlement Class.

**D.** **The Court Should Approve the Parties' Notice Plan**

The Settlement Agreement also provides for a proposed Notice Plan, which includes a long form Notice of Settlement, a Cover Letter summarizing and highlighting the benefits of the Settlement, the Claim Form, the Summary Notice for publication, provisions for providing notice of the Settlement through digital media, a Settlement Website, www.AlabamaTexasPEXsettlement.com, and a toll-free telephone line with live operators.

The parties have engaged nationally known Class Action Administrator, Angeion Group to serve as Class Action Administrator and implement the Notice Plan and manage claims administration for the Claim Period. Notably, Angeion serves as administrator in the *Cole* Settlement and is fully familiar with the notice and claims process utilized in *Cole*, which closely resemble the proposed Notice and Claims process here.[50]

The Notice, Cover Letter, and Summary Notice each fairly, accurately, and reasonably inform Settlement Class Members of: (1) appropriate information about the nature of this Litigation and the essential terms of the Settlement Agreement; (2) appropriate information about how to obtain additional information regarding this matter and the Settlement in particular, through the Settlement Website www.AlabamaTexasPEXsettlement.com, and (3) appropriate information about how to object to, or exclude themselves from, the Settlement if they wish to do so. The Notice also fairly and adequately informs Settlement Class Members that if they do not comply with the specified procedures and the deadline for objections, they will lose any opportunity to have any

---

[50] *See* **Exhibit C.**

objection considered at the Final Approval Hearing or to otherwise contest approval of the Settlement or appeal from any order or judgment entered by the Court in connection with the Settlement. Additionally, the Notice Plan provides for notification of the appropriate Federal and State officials by NIBCO pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §1715.[51]

In short, the Notice Program as described above is the best notice practicable under the circumstances, fully comports with the due process and the requirements of Rule 23.[52]

The proposed Order Granting Plaintiffs' Motion for Preliminary Approval ("Preliminary Approval Order") grants preliminary approval of the Settlement Agreement and approves the form and content of the proposed Notice.

The Preliminary Approval Order sets forth a reasonable timetable for implementing the Settlement and specifically provides for the following timeline (which is presented based on the assumption that the Court would enter a Preliminary Approval Order by December 30, 2020):

- **PROVISION OF NOTICE:** Notice shall be provided via first class mail to all members of the Class within thirty (30) days of the date of the Preliminary Approval Order [**Requested date: February 1, 2021**];
- **SCHEDULING OF A FINAL APPROVAL HEARING:** The Court shall schedule a Final Approval Hearing not less than one hundred and five (105) days from the Notice Date [**Requested date: May 17, 2021**];
- **DEADLINE FOR OPT-OUTS:** Class members who wish to exclude themselves from the Settlement must file a written request for exclusion with the Court and serve it upon Plaintiffs' counsel no later than forty-five (45) days after the Notice Date [**Requested date: March 17, 2021**];
- **DEADLINE FOR OBJECTIONS:** Class members who wish to object to the Settlement must file a written objection with the Court and serve it upon counsel for both parties no later than forty-five (45) days after the Notice Date [**Requested date: March 17, 2021**];
- **DEADLINE TO FILE MOTION FOR FINAL APPROVAL:** Plaintiffs shall file their Motion for Final Approval no later than ten (10) days prior to the date of the Final

---

[51] *See Id.* at ¶¶19-37.

[52] *See Id.* at ¶11.

Approval Hearing [**Requested date: May 7, 2021**];

- **DEADLINE TO FILE MOTION FOR FEES, COSTS, AND CLASS REPRESENTATIVE STIPENDS:** Plaintiffs' Counsel shall file an application with the Court requesting approval of Attorney's Fees and Costs, and service awards payable to Plaintiffs for having served as representatives of the Class, no later than thirty days (30) prior to the Objection and Opt-Out Deadline [**Requested date: February 15, 2021**].

The proposed timetable would provide an orderly process for giving notice to Settlement Class Members, for Settlement Class Members to respond to the Notice, and for the Court to determine the fairness, reasonableness, and adequacy of the Settlement. Moreover, the proposed timetable meets the due process requirements intended by the process set forth in Rule 23(e).

Finally, the Preliminary Approval Order also provides for the entry of an injunction, and specifically provides:

> Pending final determination of whether the Settlement should be approved, Plaintiffs, including all members of the Class, and Plaintiffs' counsel are barred and enjoined from instigating, instituting, commencing, asserting, prosecuting, continuing, or participating in any way in any action asserting any claim, either directly, individually, derivatively, representatively, or in any other capacity, against Defendants, as defined in the Settlement Agreement, which arises out of or relates to any of the claims brought in this action.

Such temporary injunction is necessary to the orderly process outlined above.

## VII.
### CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that this Court grant preliminary approval of the Settlement, certify the Class, execute the *proposed* Preliminary Approval Order, and direct Notice be given to the Class in the form submitted, and schedule a Final Approval Hearing to be scheduled on or about May 17, 2021, to determine whether the Settlement is fair, reasonable, adequate, and in the best interests of the Settlement Class.

WHEREFORE, Plaintiffs request that this Court enter the proposed Preliminary Approval Order:

(1) Preliminarily approving the parties' Settlement;

(2) Conditionally certifying the Settlement Class for purposes of the Settlement;

(3) Approving the form of Notice provided to the Court and directing the Plaintiffs to serve such Notice on Class members;

(4) Scheduling a Final Approval Hearing;

(5) Setting forth a schedule for:

- Settlement Class Members to opt-out of the Settlement;

- Settlement Class Members to object to the Settlement;

- Plaintiffs to file their Motion for Final Approval; and

- Class Counsel to submit an application for approval of attorneys' fees, costs and expenses, and service awards payable to Plaintiffs for having served as representatives of the Class;

(6) Granting such other and further relief as this Court deems necessary.

Dated: December 22, 2020                    Respectfully submitted,

                                    */s/ Robert E. Linkin*
                                       Robert E. Linkin

                                    **NIX PATTERSON, LLP**
                                    3600 N Capital of Texas Highway
                                    Suite B350
                                    Austin, Texas 78746
                                    (512) 328-5333 (telephone)
                                    Austin Tighe
                                    atighe@nixlaw.com

**MUNCK WILSON MANDALA, LLP**
2801 Via Fortuna, Ste. 630
Austin, Texas 78746
(737) 201-1616 (telephone)
Robert E. Linkin
rlinkin@munckwilson.com

**DuBOIS, BRYANT & CAMPBELL, LLP**
303 Colorado Street, Suite 2300
Austin, TX  78701
(512) 457-8000 (telephone)
J. David Rowe
drowe@dbcllp.com

**GRABLE GRIMSHAW PLLC**
1603 Babcock Road
Suite 118
San Antonio TX  78229
(210) 963-5297 (telephone)
Brandon J. Grable
brandon@g2.law
Matthew Grimshaw
matt@g2.law

*ATTORNEYS FOR PLAINTIFFS*
**David Matson and Barbara Matson,
Individually, and on Behalf of All Others
Similarly Situated**

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of December, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Missy Atwood
matwood@germer-austin.com
Ben Zinnecker
bzinnecker@germer-austin.com
GERMER BEAMAN & BROWN PLLC
301 Congress Avenue, Suite 1700
Austin, TX 78701

Gordon J. Cooney, Jr.
Gordon.cooney@morganlewis.com
Franco A. Corrado
Franco.corrado@morganlewis.com
MORGAN, LEWIS & BOKIUS, LLP
1701 Market Street
Philadelphia, PA 19103-2921

Kevin Kuhlman
kkuhlman@lathropgage.com
LATHROP& GAGE, LLP
2345 Grand Blvd., Ste. 220
Kansas City, MO 64108-2618

*Counsel for Defendant NIBCO, Inc.*

           */s/ Robert E. Linkin*
           Robert E. Linkin