# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| DAVID MATSON and BARBARA MATSON, Individually and on Behalf of All Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> NIBCO INC., <br><br> Defendant. | CASE NO.  SA-19-CV-00717-JKP |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| YOLANDA GARRETT, <br><br>　　　　　Plaintiff, <br>　　v. <br><br> NIBCO INC., <br><br>　　　　　Defendant. | Case No.: 2:19-cv-01137-RDP |

## SETTLEMENT AGREEMENT

Plaintiffs in the above-captioned cases, *Matson v. NIBCO Inc.*, No. 19-cv-01137-RBF-JKP

(W.D. Tex.), and *Garrett. v. NIBCO Inc.*, No. 19-cv-01137-RDP (D. Ala.) (collectively, the

"**Litigation**"), and Defendant NIBCO Inc. ("**NIBCO**" or "**Defendant**") (together with Plaintiffs,

the "**Parties**"), stipulate and agree, pursuant to the terms and conditions set forth in this Settlement

Agreement (the "**Settlement Agreement**," "**Settlement**," or "**Agreement**"), to settle, dismiss, and

compromise the claims asserted against NIBCO in the Litigation as set forth herein.

WHEREAS, Plaintiffs have or had NIBCO Tubing, Fittings, and/or Clamps (defined

below) installed in their homes or buildings;

WHEREAS, Plaintiffs have asserted claims in the Litigation seeking to recover damages

individually and on behalf of putative classes as a result of the purchase, installation and/or use of

Covered Products (defined below), which they claim to be defective, and also have sought

injunctive, declaratory and other equitable relief;

WHEREAS, NIBCO has defended the Litigation, in part, on the grounds that (a) the

Covered Products are not defective, and (b) leaks of the Covered Products were caused by

superseding or intervening individualized factors, such as improper installation methods, and other

issues related to installation, and issues relating to the operating and environmental conditions at

each installation site;

WHEREAS, Plaintiffs and Class Counsel have conducted an investigation of the facts and

law relating to the matters alleged in the Litigation. Without conceding any lack of merit of any of

their claims, Plaintiffs and Class Counsel have concluded that it is in the best interests of the

Settlement Class to settle the Litigation on the terms set forth herein, and that the Settlement with

NIBCO set forth in this Agreement is fair, reasonable, adequate, and in the best interests of Plaintiffs and the Settlement Class;

WHEREAS, NIBCO has denied and continues to deny the claims and conduct alleged by Plaintiffs, and any fault, wrongdoing, illegal conduct, or liability whatsoever on its part, and denies any alleged defect in the Covered Products, and further has asserted numerous defenses to the facts and causes of action alleged in the Litigation. This Settlement shall not be construed as or deemed to be evidence of an admission by NIBCO of any fault, wrongdoing, or liability whatsoever, of any defect in the Covered Products, or that any of the allegations in the Litigation are true. Without conceding any lack of merit in its defenses, NIBCO considers it desirable to enter into this Agreement to avoid further expense, to dispose of burdensome and protracted litigation, and to avoid the uncertain outcome of proceeding in the Litigation;

WHEREAS, the Parties engaged in extensive, difficult, complex, and arm's-length negotiations regarding the settlement of Plaintiffs' and the Settlement Class Members' claims regarding the Covered Products. The Settlement was finally achieved only after a full-day mediation session on September 16, 2020, before Ross Hart (the "Mediator") and after further numerous communications among counsel for the Parties over the course of several weeks;

WHEREAS, Plaintiffs and NIBCO agree that this Settlement Agreement shall not be deemed or construed to be an admission, concession, or evidence of any violation of any federal, state, or local statute, regulation, rule, or other law, or principle of common law or equity, or of any liability or wrongdoing whatsoever, by NIBCO, or of the truth of any of the claims that the Plaintiffs have asserted against NIBCO;

WHEREAS, the Parties desire and intend by this Agreement to settle finally and completely, and effectuate a final resolution of the Released Claims of all Settlement Class

Members, and to provide for a complete full and final release of the Released Claims in favor of the Released Parties, as described below in detail;

NOW, THEREFORE, it is hereby agreed and stipulated by and among Plaintiffs, individually and on behalf of the Settlement Class, and NIBCO, through its undersigned counsel, and intending to be legally bound, that the allegations asserted in the Litigation shall be settled, fully and finally compromised and released, and dismissed on their merits with prejudice, according to the terms and conditions set forth herein.

## A.   DEFINITIONS

1.   As used in this Settlement Agreement, the following terms have the meanings set forth below.

a.   The term **"Attorneys' Fee, Cost, and Service Award"** means any and all attorneys' fees, costs, and expenses, including any fees and costs for experts and consultants, for Class Counsel, or other counsel in the Litigation, as well as any service payments to Plaintiffs that may be awarded by the Court in recognition of their time, cost, and effort in the Litigation on behalf of the members of the Settlement Class.

b.   The term **"Claim"** means a claim made by a Claimant via the submission of a Claim Form to the Settlement Administrator pursuant to this Settlement Agreement.

c.   The term **"Claimant"** means a Settlement Class Member who submits a Claim Form seeking a remedy pursuant to this Settlement Agreement.

d.   The term **"Claim Form"** shall mean the form approved by the Court for use by Claimants to make Claims pursuant to this Settlement Agreement, which is to be substantially in the form of **Exhibit 1** hereto. The Claim Form shall require each Claimant's agreement to be bound by the Release set forth in this Settlement Agreement.

e.      The term **"Claim Period"** means the time period from the date of the Court's Preliminary Approval Order to May 16, 2025.

f.      The term **"Clamps"** means stainless steel clamps manufactured or sold by NIBCO in the United States for use in PEX applications during the time period from January 1, 2005 to the present, and used in residential or commercial structures. The term "Clamps" does not include any clamps that were manufactured or sold by NIBCO and that were used in industrial applications, irrigation applications, radiant heating applications, or international applications; as components in equipment or appliances; or in RVs.

g.      The term **"Class Counsel"** means all attorneys of record for Plaintiffs in *Matson v. NIBCO Inc.*, No. 19-cv-01137-RBF-JKP (W.D. Tex.), and *Garrett. v. NIBCO Inc.*, No. 19-cv-01137-RDP (D. Ala.).

h.      The term **"Class Settlement Fund"** means the total settlement payment of up to Seven Million Six Hundred Fifty Thousand Dollars ($7,650,000.00), to be paid by NIBCO for the benefit of the Settlement Class, to be funded pursuant to the schedule set forth in Paragraph 5 below, and to be used to pay all Claims of Eligible Claimants and Settlement Administration Costs that are approved by the Court. The Class Settlement Fund is separate from, and will not be depleted at all by, the payment of the Attorneys' Fee, Cost, and Service Award (as set forth in Paragraph 41).

i.      The term **"Class Representatives"** means the named Plaintiffs in the Litigation.

j.      The term **"Co-Lead Class Counsel"** means Austin Tighe of Nix Patterson LLP; Robert E. Linkin of Munck Wilson Mandala, LLP; J. David Rowe of DuBois Bryant &

Campbell LLP; Brandon J. Grable of Grable Grimshaw Mora; and Kirby D. Farris of Farris, Riley & Pitt, LLP.

      k.      The term **"Counsel for NIBCO"** means J. Gordon Cooney, Jr. and Franco A. Corrado of Morgan, Lewis & Bockius LLP; Kevin Kuhlman of Lathrop GPM LLP; Missy Atwood of Germer, PLLC; and Gregory S. Ritchey of The Ritchey Law Firm, PLLC.

      l.      The term **"Court"** means the United States District Court for the Western District of Texas.

      m.      The term **"Covered Products"** means Tubing, Fittings, and Clamps, all as defined herein.

      n.      The term **"Effective Date"** means: (a) the expiration date of the time for filing notice of any appeal from the Final Approval Order by the Court if no appeal is filed; or (b) if an appeal is filed, the latest of (i) the date of final affirmance of that Final Approval Order, (ii) the expiration of the time for a petition for writ of certiorari to review the Final Approval Order if affirmed, the denial of certiorari, or, if certiorari is granted, the date of final affirmance of the Final Approval Order following review pursuant to that grant; or (iii) the date of final dismissal of any appeal from the Final Approval Order or the final dismissal of any proceeding on certiorari to review the Final Approval Order that has the effect of confirming the Final Approval Order. For avoidance of doubt, the Effective Date shall not have been reached until the Court enters a Final Approval Order and there has been the successful exhaustion of all appeal periods without appeal or resolution of any appeals or certiorari proceedings in a manner upholding the Final Approval Order.

o.      The term **"Eligible Claimant"** means a Claimant who has submitted a valid and timely Claim Form as determined by the Settlement Administrator subject to all rights of the Parties under the Settlement Agreement.

p.      The term **"Final Approval Hearing"** means the hearing conducted by the Court to determine whether to approve this Settlement, to determine the fairness, adequacy, and reasonableness of this Settlement, and to certify the Settlement Class for purposes of the Settlement.

q.      The term **"Final Approval Order"** means the Final Approval Order of the Court approving the Settlement and certifying the Settlement Class, which is to be agreed upon by the Parties and submitted with Plaintiffs' Motion for Final Approval.

r.      The term **"Final Judgment"** means the Court's final judgment, which is to be agreed upon by the Parties and submitted with Plaintiffs' Motion for Final Approval.

s.      The term **"Fittings"** means ASTM F1807 yellow brass fittings manufactured or sold by NIBCO in the United States for use in PEX applications during the time period from January 1, 2005 to the present, and used in residential or commercial structures. The term "Fittings" does not include any fittings that were manufactured or sold by NIBCO and that were used in industrial applications, irrigation applications, radiant heating applications, or international applications; as components in equipment or appliances; or in RVs.

t.      The term **"Litigation"** means *Matson v. NIBCO Inc.*, No. 19-cv-01137-RBF-JKP (W.D. Tex.), and *Garrett. v. NIBCO Inc.*, No. 19-cv-01137-RDP (D. Ala.).

u.      The term **"Multiple Qualifying Leaks"** means the occurrence of at least three (3) Qualifying Leaks in the structure, with each leak occurring either in three separate Covered Products at any time, or, if two (2) or more leaks occur in the same Tubing, Fitting, or

3310484.1

7

Clamp, such leaks in the same Tubing, Fitting, or Clamp must have occurred at separate times after repair.

   v.  The term **"Notice of Settlement"** means the long-form Notice of Class Action Settlement substantially in the form attached as **Exhibit 2** hereto, subject to the approval of the Court in its Preliminary Approval Order.

   w.  The term **"Net Settlement Fund"** means the Class Settlement Fund minus any Court-approved amounts for Settlement Administration Costs.

   x.  The term **"NIBCO"** means NIBCO Inc. and its predecessors, parent and sister companies, successors, subsidiaries, affiliates, agents, insurers, and assigns.

   y.  The term **"Notice Date"** means no later than thirty (30) days after the Preliminary Approval Date, representing the date on which the Settlement Administrator is to have substantially implemented notice in accordance with the Notice Plan approved by the Court in the Preliminary Approval Order.

   z.  The term **"Notice Plan"** shall have the meaning ascribed to it in Paragraphs 25.a. to 25.e. of this Agreement.

   aa.  The term **"Objection and Opt-Out Deadline"** means the date forty-five (45) days after the Notice Date or as otherwise set forth in the Court's Preliminary Approval Order.

   bb.  The term **"Parties"** means Plaintiffs and NIBCO.

   cc.  The term **"Person"** or **"Persons"** means any individual or entity, public or private.

   dd.  The term **"Plaintiffs"** means any person listed as a named plaintiff in the operative Complaints in *Matson v. NIBCO Inc.*, No. 19-cv-01137-RBF-JKP (W.D. Tex.), and/or *Garrett. v. NIBCO Inc.*, No. 19-cv-01137-RDP (D. Ala.).

ee.     The term **"Preliminary Approval Date"** means the date on which the Court enters the Preliminary Approval Order.

ff.     The term **"Preliminary Approval Order"** means the Preliminary Approval Order of the Court preliminarily approving the Settlement, substantially in the form attached as **Exhibit 3**, hereto.

gg.     The term **"Qualifying Leak"** means:

i.     With respect to Tubing: A physical escape of water from Tubing causing damage.

ii.     With respect to Fittings: A physical escape of water from a Fitting causing damage.

iii.     With respect to Clamps: A physical escape of water from a Clamp causing damage.

iv.     A Qualifying Leak does not occur where, following the procedure set forth in Paragraph 15 below, the Settlement Administrator, NIBCO, and Co-Lead Class Counsel all agree that based on available evidence, a physical escape of water from a Covered Product causing damage was solely and exclusively the result of: (1) a penetration of the Tubing, Fittings, and/or Clamps from a foreign object such as a nail or other physical abuse; (2) improper attachment of the Tubing, Fittings, and/or Clamps to plumbing components or appliances; (3) improper stress on the Tubing, Fittings, and/or Clamps due to improper installation; (4) leaks due to an improperly set or malfunctioning pressure-reducing valve not manufactured or sold by NIBCO; (5) leaks due to age of fixture sealant components supplied or provided by a plumber; or (6) any installation issue in violation of NIBCO's installation guidelines and/or unrelated to the design, manufacture, performance, or selection of the Tubing, Fittings, and/or Clamps. If it is

3310484.1

determined that a Qualifying Leak has not occurred because the physical escape of water causing damage was solely and exclusively the result of one or more of the causes set forth in (1) through (6) above with respect to a particular Claimant, then that Claimant shall have the benefits of the carve-out of the release provisions in Paragraph 35, meaning that Claimant shall not be precluded by the Release from filing claims against its installer or third parties.

hh.     The term **"Release"** means the release set forth in Paragraph 34.

ii.     The term **"Released Claims"** means the claims released as set forth in Paragraphs 34 and 35.

jj.     The term **"Released Parties"** is defined in Paragraph 34.

kk.     The term **"Releasing Parties"** is defined in Paragraph 34.

ll.     The term **"Reasonably Proven Property Damage"** means the reasonably proven and unreimbursed reasonable costs paid by a Claimant in connection with: (a) the repair or replacement of the pertinent section(s) of Tubing, Fittings, and/or Clamps as a direct result of a Qualifying Leak; (b) the repair or replacement of other property damaged as a direct result of a Qualifying Leak; and (c) the material and labor costs reasonably necessary to bring the structure and its contents back to the same finish and quality as existed before the Qualifying Leak, as determined by the Settlement Administrator based on its review of the Claimant's receipts, invoices, expense records, checks, credit card statements, or any other verifiable indicia of such costs incurred.  Reasonably Proven Property Damage does not include: (a) any claimed economic losses arising from loss of use and/or loss of value of the property; or (b) any amounts paid by a Person other than the Claimant or that were paid by the Claimant and then reimbursed or refunded by another Person, *i.e.*, there shall be no double recovery.

mm.     The term **"Settlement Administrator"** means Angeion Group, which shall effectuate and administer the Notice Plan, distribute the Settlement Notice, administer the exclusion process for opt-outs, the Claim process, and distribution(s) to Eligible Claimants under the supervision of the Parties and the Court, and which firm is independent of the Plaintiffs, Class Counsel, NIBCO, and Counsel for NIBCO.  All reasonable fees and costs billed by the Settlement Administrator will be paid from the Class Settlement Fund. Reasonable fees and costs of notice and administration prior to the creation of the Class Settlement Fund will be advanced by NIBCO and paid by NIBCO.  All such amounts advanced and paid by NIBCO prior to the creation of the Class Settlement Fund will be credited towards NIBCO's payment of the Class Settlement Fund.

nn.     The term **"Settlement Administration Costs"** means the reasonable fees and expenses of the Settlement Administrator incurred in the administration of this Settlement Agreement and approved by the Court, including the reasonable costs associated with the Notice Plan and the Settlement Notice, the administering, calculating, and distributing of the Net Settlement Fund to Eligible Claimants; other fees, expenses, and costs of Claim administration, the fees, expenses, and costs incurred in connection with the taxation of the Settlement Escrow Account (including without limitation expenses of tax attorneys and accountants, if any); and all other reasonable third-party fees, expenses, and costs incurred by the Settlement Administrator or other consultants retained by agreement of the Parties or by authority of the Court to assist with claims administration in connection with prosecuting, handling, and settling the Litigation; as well as administering the terms of this Settlement Agreement.

oo.     The term **"Settlement Class"** means the following for settlement purposes only:

> All Persons that own or have owned at any time since January 1, 2005, a residential structure constructed by: (a) D.R. Horton, Inc.-Birmingham (including, but not

3310484.1

11

limited to, those for which the plumbing contracting was performed by or on behalf of Dupree Plumbing Co. Inc.) and which is located in the following cities in Alabama: Bella Vista; Bessemer; Birmingham; Calera; Chelsea; Cottondale; Hoover; Kimberly; Leeds; Maylene; McCalla; Montgomery; Northport; Odenville; Pinson; Pratville; Springville; Trussville; and Tuscaloosa; and/or (b) Continental Homes of Texas, L.P. (including, but not limited to, those for which the plumbing contracting was performed by or on behalf of Christianson Air Conditioning and Plumbing, LLC) and which is located in the following cities in Texas: Boerne; Cibolo; Converse; Live Oak; Medina County; New Braunfels; Royse City; San Antonio; San Marcos; Schertz; Sequin; and Universal City, that contains or contained NIBCO's Tubing, Fittings, or Clamps, including with respect to both (a) and/or (b), their spouses, joint owners, heirs, executors, administrators, mortgagees, tenants, creditors, lenders, predecessors, successors, trusts and trustees, and assigns ("Occupant Persons"); as well as all Persons who have standing and are entitled to assert a claim on behalf of any such Occupant Persons, such as but not limited to a contractor, distributor, seller, subrogated insurance carrier, or other Person who has claims for contribution, indemnity or otherwise against NIBCO based on claims for Qualifying Leaks of the Tubing, Fittings, or Clamps with respect to such residential structures. The Settlement Class includes all Persons who subsequently purchase or otherwise obtain an interest in a property covered by this Settlement without the need of a formal assignment by contract or court order. A list of the residential structures in Alabama and Texas included in the Settlement Class will be provided to the Settlement Administrator and made available on the Settlement Website.

Excluded from the Settlement Class are D.R. Horton, Inc.-Birmingham, Dupree Plumbing Co. Inc., Continental Homes of Texas, L.P., and Christianson Air Conditioning and Plumbing, LLC.

Also excluded from the Settlement Class is any Person (other than the named Plaintiffs in the Litigation) who, as of October 22, 2020, had pending litigation in any court or tribunal against NIBCO asserting claims based on a Covered Product.

Also excluded from the Settlement Class are: (i) NIBCO, its officers, directors, affiliates, legal representatives, employees, successors, and assigns, and entities in which NIBCO has a controlling interest; (ii) judges presiding over the Litigation; and (iii) local, municipal, state, and federal governmental entities.

   pp. The term **"Settlement Class Member"** means a member of the Settlement Class who does not submit a timely or valid Request for Exclusion from the Settlement.

   qq. The term **"Settlement Escrow Account"** means an interest-bearing escrow account selected by Co-Lead Class Counsel and Counsel for NIBCO, which shall be treated at all

times as a "Qualified Settlement Fund" for federal income tax purposes pursuant to Internal Revenue Code ("Code") Section 468B and the Regulations issued thereto.

      rr.     The term **"Settlement Notice"** means the notice or notices required by the Notice Plan approved by the Court for providing notice of this Settlement to the Settlement Class as set forth in Paragraphs 25.a. to 25.e.

      ss.     The term **"Settlement Payment"** means a settlement check sent by the Settlement Administrator to an Eligible Claimant.

      tt.     The term **"Settlement Website"** means the Settlement Website to be established by the Settlement Administrator pursuant to Paragraph 25.c.

      uu.     The term **"Taxes,"** for purposes of the Qualified Settlement Fund, means any and all applicable taxes, duties, and similar charges imposed by a government authority (including any estimated taxes, interest, or penalties) arising in any jurisdiction, if any, (1) with respect to the income or gains earned by or in respect of the Settlement Escrow Account, or (2) by way of withholding as required by applicable law on any distribution by the Settlement Administrator of any portion of the Settlement Escrow Account to Settlement Class Members or other Persons entitled to such distributions pursuant to this Settlement Agreement.

      vv.     The term **"Tubing"** means PEX tubing manufactured or sold by NIBCO in the United States using (or labeled by NIBCO as using) its 1006 formulation, including NIBCO NEXT-Pure Tubing, NIBCO DURA-PEX Tubing, and NIBCO PEX, during the time period from January 1, 2005 to the present, and used in residential or commercial structures. The term "Tubing" does not include any tubing that was manufactured or sold by NIBCO and that was used in industrial applications, irrigation applications, radiant heating applications, or international applications; as components in appliances; or in RVs.

B.      **CERTIFICATION OF THE SETTLEMENT CLASS**

2.      **Settlement Class Certification**. Pursuant to the procedure described herein, Plaintiffs will seek the Court's certification of the Settlement Class for settlement purposes only pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3).

3.      **Appointment of Co-Lead Class Counsel**. Plaintiffs will seek the Court's appointment of Co-Lead Class Counsel to represent the Settlement Class.

4.      **Preliminary Approval**.

a.      Co-Lead Class Counsel shall file in the Court a Motion for Preliminary Approval of Class Action Settlement (to which this Settlement Agreement shall be attached as an Exhibit) requesting that the Court certify the Settlement Class for settlement purposes only and enter the Preliminary Approval Order.

b.      The Motion for Preliminary Approval of Class Action Settlement shall seek to appoint Plaintiffs as representatives of the Settlement Class. Plaintiffs, who have executed this Settlement Agreement and agree to be bound by it, believe it is in the best interests of the Settlement Class.

c.      The Preliminary Approval Order shall:

i.      Find that the requirements for certification of the Settlement Class have been satisfied, appoint Plaintiffs as the representatives of the Settlement Class, appoint Co-Lead Class Counsel as counsel for the Settlement Class, and preliminarily approve the Settlement as being within the range of reasonableness such that the Settlement Notice should be sent to the members of the Settlement Class;

ii. Approve the Notice Plan and Settlement Notice and direct that it be given as set forth in Paragraphs 25.a. to 25.e. of this Settlement Agreement;

iii. Schedule the Final Approval Hearing not earlier than 105 days following the Preliminary Approval Date;

iv. Appoint Angeion Group as the Settlement Administrator;

v. Find that the Settlement Escrow Account is to be a "Qualified Settlement Fund" as defined in Section 468B-1(c) of the Treasury Regulations;

vi. Provide that any objections by any Settlement Class Member to the Settlement Agreement shall be heard and any papers submitted in support of said objections shall be considered by the Court at the Final Approval Hearing only if, on or before the Objection and Opt-Out Deadline specified in the Settlement Notice and the Preliminary Approval Order, such Settlement Class Member follows the procedures set forth in this Settlement Agreement and approved by the Court;

vii. Establish dates by which the Parties shall file and serve all papers in support of the motion for final approval of the Settlement and/or in response to any valid and timely objections and in support of attorneys' fees and expenses and service awards;

viii. Provide that all Settlement Class Members will be bound by the Final Approval Order and the Final Judgment unless such Person

timely submits to the Settlement Administrator a valid written Request for Exclusion in accordance with this Settlement Agreement and the Settlement Notice;

ix.    Provide that, pending the Final Approval Hearing and the Effective Date, all proceedings in the Litigation, other than proceedings necessary to carry out or enforce the terms and conditions of this Settlement Agreement, shall be stayed;

x.    Provide that, pending the Final Approval Hearing, Plaintiffs, or any of them, and all Settlement Class Members are enjoined from commencing or prosecuting, either directly or indirectly, any action asserting any of the Released Claims against any of the Released Parties, unless they have submitted a timely and valid Request for Exclusion from the Settlement; and

xi.    Issue other related orders to effectuate the preliminary approval of the Settlement Agreement.

d.    On or before the date the Motion for Preliminary Approval of Class Action Settlement is filed, the *Matson* Plaintiffs will file a motion for leave to amend the operative Complaint in *Matson* to add Plaintiff Garrett for purposes of the Settlement, which NIBCO will not oppose. Within two (2) business days of executing this Settlement Agreement, the Parties shall also file a motion to stay the *Garrett* action pending the Effective Date. Within five (5) business days after the Effective Date, the Parties will file a stipulation dismissing the *Garrett* action with prejudice.

3310484.1

e.      Following the entry of the Preliminary Approval Order, the Notice Plan shall be effectuated in the manner directed and approved by the Court. The Parties agree that the methods of Settlement Notice described in this Settlement Agreement are valid and effective and that they provide reasonable and the best practicable notice to the Settlement Class.

f.      Upon entry of the Preliminary Approval Order, Plaintiffs, Class Counsel, NIBCO, and Counsel for NIBCO agree to use reasonable and good faith efforts to effectuate the Court's final approval of this Settlement Agreement, including filing the necessary motion papers and scheduling any necessary hearings for a date and time that are convenient for the Court.

## C.      CONSIDERATION TO THE SETTLEMENT CLASS

### 5.      Creation of Settlement Fund.

a.      **Payment Upon Effective Date.**  Within 10 business days after the Effective Date, NIBCO will deposit or cause to be deposited into the Settlement Escrow Account the cash sum of Seven Hundred Fifty Thousand Dollars ($750,000.00).

b.      **Additional Payments.**   During the Claim Period, NIBCO shall make additional payments into the Settlement Escrow Account up to the total of the Class Settlement Fund (less any amounts credited to NIBCO for reasonable fees and costs of notice and administration advanced prior to the creation of the Class Settlement Fund) sufficient to maintain a balance in the Settlement Escrow Account throughout the entire Claim Period of at least Seven Hundred Fifty Thousand Dollars ($750,000.00). The Settlement Administrator shall give NIBCO twenty-one (21) days written notice (which notice shall also be given to Co-Lead Class Counsel) of the need to make any such additional payment to maintain that balance in the Settlement Escrow Account.

3310484.1

a.      Interest earned on monies in the Settlement Escrow Account shall accrue to the benefit of the Settlement Class and shall be available to pay Eligible Claimants.

b.      Any and all Taxes on the income of the Settlement Escrow Account shall be timely paid out of the Settlement Escrow Account.

c.      The Settlement Escrow Account shall be treated as a Qualified Settlement Fund from the earliest date possible, and the Parties agree to any "relation-back election" (as defined in Treas. Reg. § 468B-1(j)(2)) required to treat the Settlement Escrow Account as a Qualified Settlement Fund from the earliest date possible. The Settlement Administrator shall timely and properly prepare and deliver the necessary documentation for signature by all necessary parties and thereafter cause the appropriate filings to occur.

d.      The Settlement Escrow Account shall be taxed on its modified gross income, excluding the sums, or cash equivalents of things, transferred to it. In computing the Settlement Escrow Account's modified gross income, deductions shall be allowed for, *inter alia*, administrative costs and other incidental deductible expenses incurred in connection with the operation of the Settlement Escrow Account, including, without limitation, state and local taxes, and legal, accounting and actuarial fees relating to the operation of the Settlement Escrow Account. All such computations of the Settlement's modified gross income, as well as any exclusions or deductions thereto, shall be compliant and consistent with Treas. Reg. § 468B-2(b)(1)-(4).

e.      The Settlement Administrator shall be responsible for filing federal, state, and local tax returns for the Settlement Escrow Account and paying from the Settlement Escrow Account any Taxes owed with respect to the Qualified Settlement Fund.  In accordance with § 468B-2(l)(2) of the Treasury Regulations, the Settlement Administrator shall be responsible for filing all federal, state, and local information returns and ensuring compliance with reporting

requirements with regards to any distributions from the Qualified Settlement Fund. The Settlement Administrator shall apply for an employer identification number for the Escrow Account pursuant to Internal Revenue Service Form SS-4, and in accordance with Treas. Reg. § 468B-2(k)(4). In no event shall Plaintiffs, Class Counsel, Counsel for NIBCO or any of the Released Parties have any obligation, responsibility, or liability arising from or relating to the administration, maintenance, preservation, investment, use, allocation, adjustment, distribution, disbursement, or disposition of any funds in the Settlement Escrow Account.

        f.      For the purpose of § 468B of the Code, the "transferor" shall be NIBCO. NIBCO shall supply to the Settlement Administrator the statement required by Treas. Reg. § 468B-3(e) by February 15 of the calendar year following the calendar year in which a transfer is made to the Settlement Escrow Account under this Settlement.

        g.      The Settlement Administrator shall be empowered to take all such actions as it deems necessary to ensure that the Settlement Escrow Account is treated as a "qualified settlement fund" under § 468B of the Code.  Further, the Settlement Administrator may petition the Court to amend, either in whole or in part, any administrative provision of this Settlement Agreement that causes unanticipated tax consequences or liabilities inconsistent with the foregoing.

        h.      In accordance with Treas. Reg. § 468B-2(j), the taxable year of the Settlement Escrow Account shall be the calendar year, and the Settlement Escrow Account shall use an accrual method of accounting, within the meaning of § 446(c) of the Code.

        6.      **Uncashed Settlement Payment Checks**. All checks issued by the Settlement Administrator to Eligible Claimants shall remain valid for 180 days. Any check sent to an Eligible Claimant during the Claim Period that is not cashed within 180 days shall be void but a new check

3310484.1

19

shall be reissued to the applicable Eligible Claimant upon request during the Claim Period. After 180 days following the expiration of the Claim Period, any uncashed check shall be eligible for escheatment to the applicable state governmental body pursuant to state law without the need to wait for the conclusion of any state dormancy period. Any and all escheatment obligations are those of the Settlement Administrator and not the Parties. The Settlement Administrator may send check-cashing reminders to Eligible Claimants who have not yet cashed their check and may call Eligible Claimants to remind them to cash their checks.

7.    **No Other Payments.** Other than its contributions to the Class Settlement Fund as set forth above, NIBCO shall have no obligation to make any additional payment in connection with the Settlement, except as set forth in Paragraphs 15.b. and 17 below.

8.    **End of Claim Period.**  Following the close of the Claim Period and after all timely Claims have been determined and paid as set forth herein, including any gross-up for all Eligible Class Members as set forth in Paragraphs 10.a., 10.b., and 10.c., any remaining amounts under the Class Settlement Fund but not paid into the Settlement Escrow Account shall remain with NIBCO, and any funds remaining in the Settlement Escrow Account but not allocated to an Eligible Claimant (including as set forth in Section 6 above) will be returned to NIBCO as all Eligible Claimants will have received their complete remedy under this Agreement.

9.    **NIBCO's Dealings with Settlement Class Members.** If contacted during the Claim Period regarding this Settlement Agreement or a Claim by a Settlement Class Member or a Claimant regarding this Settlement, then NIBCO will use reasonable efforts to refer that Person to the Settlement Administrator by providing to them the name of the Settlement Administrator, the domain name of the Settlement Website, and the established toll free number regarding the Settlement.

10.     **Settlement Remedies**. The Settlement shall provide the following remedies to Eligible Claimants from the Settlement Escrow Account:

a.     **Past Property Damage Claims.**  Past Property Damage Claims are those that are based upon Qualifying Leaks that occurred between January 1, 2005 and the Effective Date. Such Claims must be submitted to the Settlement Administrator within 100 days after the Effective Date though the Settlement Administrator may extend the 100-day period for a particular Claimant upon a showing of good cause as determined by the Settlement Administrator. An explanation in a Claim Form under oath reasonably demonstrating that the Claimant was precluded from submitting a Claim Form due to circumstances beyond the Claimant's control shall constitute good cause. Eligible Claimants with Past Property Damage Claims shall receive up to 75% of their Reasonably Proven Property Damage. The Claimant must have taken reasonable steps to mitigate (*i.e.*, limit or stop) the effects of the Qualifying Leak as determined by the Settlement Administrator, with consultation as necessary with Co-Lead Class Counsel and NIBCO.  In order to ensure that the Net Settlement Fund is not depleted during the Claim Period, Eligible Claimants shall receive an initial payment of 50%, and at the end of the Claim Period, Eligible Claimants shall receive a second *pro rata* payment, which depending on the claim rate and the amount remaining in the Net Settlement Fund shall make the total payment up to 75% of their Reasonably Proven Property Damage. Class Counsel shall monitor the Net Settlement Fund and if appropriate, on the one-year anniversary of the Effective Date, may make a recommendation to the Court regarding whether an interim payment can be made during the Claim Period, based upon the number of Claims and the amount remaining in the Net Settlement Fund, provided that in no event shall Eligible Claimants receive more than 75% of their Reasonably Proven Property Damage.

b.   **Future Property Damage Claims.** Future Property Damage Claims are those that are based upon Qualifying Leaks that occur after the Effective Date and during the Claim Period. Such Claims must be submitted to the Settlement Administrator within 100 days after the Qualifying Leak occurs, though the Settlement Administrator may extend this 100-day period for a particular Claimant upon a showing of good cause as determined by the Settlement Administrator. An explanation in a Claim Form under oath reasonably demonstrating that the Claimant was precluded from submitting a Claim Form due to circumstances beyond the Claimant's control shall constitute good cause. Eligible Claimants with Future Property Damage Claims shall receive up to 75% of their Reasonably Proven Property Damage. The Claimant must have taken reasonable steps to mitigate (*i.e.*, limit or stop) the effects of the Qualifying Leak as determined by the Settlement Administrator, with consultation as necessary with Co-Lead Counsel, and NIBCO. In order to ensure that the Net Settlement Fund is not depleted during the Claim Period, Eligible Claimants shall receive an initial payment of 50%, and at the end of the Claim Period, Eligible Claimants shall receive a second *pro rata* payment, which depending on the claim rate and the amount remaining in the Net Settlement Fund shall make the total payment up to 75% of their Reasonably Proven Property Damage. Class Counsel shall monitor the Net Settlement Fund and if appropriate, on the one-year anniversary of the Effective Date, may make a recommendation to the Court regarding whether an interim payment can be made during the Claim Period, based upon the number of Claims and the amount remaining in the Net Settlement Fund, provided that in no event shall Eligible Claimants receive more than 75% of their Reasonably Proven Property Damage.

c.    **Re-Plumb Claims for Claimants with Multiple Qualifying Leaks**.  An Eligible Claimant who demonstrates that their residential structure has experienced Multiple Qualifying Leaks, each one occurring in such a manner that replumbing all or part of the structure would mitigate future events, has the option of requesting a payment relating to a complete re-plumb of relevant PEX Tubing, Clamps, and Fittings. Such Claims must be submitted to the Settlement Administrator within 100 days after the Effective Date if the third Qualifying Leak occurred before the Effective Date, or otherwise must be submitted within 100 days after the third Qualifying Leak occurs, though the Settlement Administrator may extend these periods for a particular Claimant upon a showing of good cause as determined by the Settlement Administrator. An explanation in a Claim Form under oath reasonably demonstrating that the Claimant was precluded from submitting a Claim Form due to circumstances beyond the Claimant's control shall constitute good cause. The amount of the payment (the "Re-Plumb Calculation") shall be calculated at a rate of $722.50 per plumbing fixture present in the residential structure (e.g., the Re-Plumb Calculation for a home with 13 fixtures would be $9,392.50). A schedule of qualifying fixtures and half-fixtures is attached hereto as **Exhibit 4** and shall be used by the Settlement Administrator in determining the amount of an Eligible Claimant's Re-Plumb Calculation under this Paragraph and sub-parts. The Re-Plumb calculation shall also include calculation, where applicable and necessary, for replacement of the main water service line at a rate of $828.75.

i.    Class Counsel has identified and negotiated with Repipe Specialists of Texas to act as the preferred provider of re-plumbs for the Texas communities in the Settlement Class definition and MilesParker Group LLC to act as the preferred provider of re-plumbs in the Alabama communities in the Settlement Class definition (together, the "Preferred Providers").  The Preferred Providers have performed numerous re-plumbs in the

communities in the Settlement Class definition. The rates provided for in Paragraph 10.c. and sub-parts are based on the favorable rates that Class Counsel has been able to negotiate with the Preferred Providers, who are ready and able to complete the re-plumbs in the communities in the Settlement Class at the amounts stated in Paragraph 10.c. for the duration of the Settlement. These rates reflect an approximate 15% discount on rates the Preferred Providers would charge homeowners in the respective geographic areas included in the Settlement Class and, thus, offer a further benefit to Settlement Class Members. Copies of the agreements between the Preferred Providers and the Settlement Administrator ("Preferred Provider Agreements") are attached hereto as **Exhibit 5**.

ii.   An Eligible Claimant for a re-plumb is entitled, but not required, to select the applicable Preferred Provider to perform the re-plumb; however, the rate of reimbursement for a re-plumb will be calculated based on the same rates of $722.50 per plumbing fixture rate and $828.75 per main water service line, even if the Eligible Claimant chooses a service provider other than the Preferred Provider for their community. Eligible Claimants who select the Preferred Provider agree to the Scope of Work attached as **Exhibit 6** hereto.

iii.  Subject to the provisions in Paragraph 10.c.iv. concerning the mechanics of payment when the Preferred Provider is selected to complete an eligible re-plumb, Eligible Claimants shall receive an initial payment of 50% of the Re-Plumb Calculation, and at the end of the Claim Period, Eligible Claimants shall receive a second pro rata payment, which, depending on the claim rate and the amount remaining in the Net Settlement Fund, shall make the total payment up to 75% of their Re-Plumb Calculation. Class Counsel shall monitor the Net Settlement Fund and if appropriate, on the one-year anniversary of the Effective Date, may make a recommendation to the Court regarding whether an interim payment can be made

3310484.1

during the Claim Period, based upon the number of Claims and the amount remaining in the Net Settlement Fund, provided that in no event shall Eligible Claimants receive more than 75% of their Reasonably Proven Property Damage. If an Eligible Claimant is compensated for a Re-Plumb Claim, that Eligible Claimant and their structure are no longer eligible to make any Future Property Damage Claims. To the extent an Eligible Claimant's structure has experienced Multiple Qualifying Leaks and the Eligible Claimant paid for a complete re-plumb of Covered Products in the Eligible Claimant's structure, the Eligible Claimant may request payment consistent with the terms and limitations of Paragraph 10.c.

iv.  An Eligible Claimant electing to use the Preferred Provider is entitled to make a Re-Plumb Claim without the Eligible Claimant having first incurred any out-of-pocket costs for a re-plumb, based upon the following procedures and conditions:

1. The Claimant submits a completed Claim Form to the Settlement Administrator.

2. If the Claim is approved, then the Preferred Provider and the Eligible Claimant will be notified so that the Preferred Provider can perform a site inspection and certify the fixture count for the re-plumb. The Preferred Provider will be responsible for communicating the certified fixture count to the Settlement Administrator for purposes of determining the Re-Plumb Calculation.

3. Before the re-plumb is commenced, the Claimant agrees to pay the Preferred Provider 50% of the Re-Plumb Calculation. The Preferred Provider will offer third-party financing for this payment subject to credit approval.

4. The Settlement Administrator will pay 50% of the Re-Plumb Calculation directly to the Preferred Provider within 15 days of the submission of the following by the Preferred Provider: (i) an invoice, (ii) an affidavit certifying the number of

plumbing fixtures, (iii) a permit, and (iv) a Certificate of Completion signed by the Claimant (or an Attempts Form signed by a representative of the Preferred Provider certifying under oath that the work has been completed and demonstrating three (3) good faith attempts to obtain a Certificate of Completion).

5. In some instances, there may be minor code upgrades required in order for the Preferred Provider to complete the re-plumb in a manner that will pass inspection. Class Counsel understands from the Preferred Provider that these generally are low cost. The Eligible Claimant agrees to pay these amounts before the re-plumb commences, and they can be included in the financing if the Eligible Claimant chooses to finance his/her portion of the Re-Plumb Calculation.

6. Any additional *pro rata* payments from the Net Settlement Fund (up to the total of 75% referenced above) will be paid directly to the Eligible Claimant.

v. Eligible Claimants who have experienced Multiple Qualifying Leaks, each one occurring in such a manner that re-plumbing all or part of the structure would mitigate future events, have the option to select a cash payment of $3,000.00 in lieu of a re-plumb remedy in exchange for the Eligible Claimant's agreement that the Eligible Claimant(s) and their structure are no longer eligible to make any Future Property Damage Claims.

vi. Notwithstanding the requirement that a Claimant's structure must have experienced Multiple Qualifying Leaks, each one occurring in such a manner that replumbing all or part of the structure would mitigate future events, a Claimant who has paid for a complete re-plumb of Covered Products in the Claimant's structure after at least (1) Qualifying Leak can seek consideration as an exception and request payment consistent with the terms and limitations of Paragraph 10.c. upon a showing of good cause as determined by the

3310484.1

26

Settlement Administrator and approved by NIBCO and Class Counsel that the Claimant's unique circumstances warranted such re-plumb to mitigate future leaks.

11.     **Invalid Claims**. If information provided by a Claimant to the Settlement Administrator when submitting a Claim Form conclusively establishes (as determined by the Settlement Administrator) that the Claim is not eligible for a remedy under the Settlement Agreement, then the Settlement Administrator shall deny the Claim, though the Settlement Administrator shall explain the appeal mechanism to the Claimant. A copy of the form denial of claim letter to be used by the Settlement Administrator is attached hereto as **Exhibit 7**.

12.     **Allocation for Multiple Claimants**. There shall be no double recoveries for the same Reasonably Proven Property Damage. In the event that there are multiple Eligible Claimants who file a Claim Form relating to the same Qualifying Leak(s), the Settlement Administrator will determine the proportionate share of recovery based on the total amount allowed for such Claim based upon what each Eligible Claimant documented they paid out of pocket and for which they were not reimbursed. Once a payment for a particular Qualifying Leak has been made no further recoveries for that Qualifying Leak will be permitted. The Settlement Administrator will hold all payments on all Qualifying Leaks until 30 days after the deadline to file a Claim based on the date of such Qualifying Leak to ensure that no other timely Claim for that Qualifying Leak has been received.

13.     **Claim Review**. If the Settlement Administrator suspects fraud or misleading conduct with respect to any Claim, the Settlement Administrator will immediately bring the Claim to the attention of Co-Lead Class Counsel and Counsel for NIBCO, who shall meet and confer with the Settlement Administrator concerning the Claim, and who reserve the right to bring the Claim to the attention of the Court.

3310484.1

14.     **Proof of Qualifying Leaks**. Proof of a Qualifying Leak(s) shall be made by Claimants through their submission to the Settlement Administrator of any reasonable proof, including, by way of examples only, the failed product itself, plumber or contractor records, photographs, videos, invoices, receipts, credit card statements, inspection records, insurance records, or any other document or information that supports the Claimant's position: (a) that the leak is a Qualifying Leak from a Covered Product; (b) the best-known or estimated date of installation and first in-service date (if different); and (c) the date(s) of the Qualifying Leak(s). In addition to the aforementioned requirements for establishing a valid Claim, for any Future Property Damage Claim, the Claimant shall be required by the Claim Form to submit photographs of the failed component or submit a reason why photographs are not available for submission, and any valid reason (*e.g.*, the reason photographs are not available for submission) shall be acceptable.

15.     **Review of Claims**.

a.      The Settlement Administrator, NIBCO, or Co-Lead Class Counsel, with prior written notification to all parties in this sentence, may request at any time if they have a reasonable belief that a submitted Claim Form does not involve a Qualifying Leak or is otherwise fraudulent, that the Settlement Administrator conduct a further review of that Claim.

b.      If NIBCO after its own review (and at its own expense outside of the Class Settlement Fund) believes that a particular Claim does not involve a Qualifying Leak, then it shall submit that opinion to Co-Lead Class Counsel. If Co-Lead Class Counsel agrees, then the Settlement Administrator shall reject the Claim using the form letter attached hereto as **Exhibit 7**, which shall provide an appeal right to the Claimant. Co-Lead Class Counsel shall not unreasonably withhold their agreement. If Co-Lead Class Counsel does disagree they shall reasonably articulate their particular reason(s) for disagreement, and if Co-Lead Class Counsel does not respond with

3310484.1

their position within fourteen (14) calendar days, then they will be deemed to have agreed and the Claim will be rejected.

      16.    **Right of Appeal**.

          a.    If a Claimant wishes to appeal the Settlement Administrator's rejection of a Claim on the basis of whether the Claim presents a Qualifying Leak, then the Claim will be submitted to an Independent Engineering Consultant who shall be agreed upon by the Parties, presented to the Court in Plaintiffs' Motion for Final Approval (the "Independent Engineering Consultant"), and appointed by the Court in its Final Approval Order. The Claimant and NIBCO will both have the opportunity to present five-page statements and any supporting documentation or physical evidence to the Independent Engineering Consultant setting forth their position about whether the Claim involves a Qualifying Leak and should therefore be deemed eligible or ineligible for compensation under the terms of the Settlement Agreement. NIBCO shall have the burden of establishing that a leak was not a Qualifying Leak if it initiated the challenge. The decision of the Independent Engineering Consultant shall be final. If at any time the Independent Engineering Consultant is unable to continue in his or her role, then the Parties shall meet and confer to determine a mutually agreeable replacement.

          b.    If a Claimant wishes to appeal to the Settlement Administrator the Settlement Administrator's rejection of a Claim on any grounds other than whether the Claim presents a Qualifying Leak, the Claimant may do so, and may also present further evidence to the Settlement Administrator, but the decision of the Settlement Administrator after reviewing the appeal will be final.

      17.    **Payment of Independent Engineering Consultant**. NIBCO shall pay all fees and costs of the Independent Engineering Consultant outside of the Class Settlement Fund for all

challenges initiated by NIBCO under Paragraphs 15.b and 16. Fees and costs for other challenges shall be paid from the Class Settlement Fund. If NIBCO contends that Co-Lead Class Counsel's agreement requested under Paragraph 15 was unreasonably withheld, then a Special Master to be agreed upon by the Parties, presented to the Court in Plaintiffs' Motion for Final Approval, and appointed by the Court in its Final Approval Order (the "Special Master"), shall decide whether the Claim should be submitted to the Independent Engineering Consultant. NIBCO shall pay the costs of the Special Master if it invokes this provision outside of and in addition to the Class Settlement Fund. If at any time the Special Master is unable to continue in his or her role, then the Parties shall meet and confer to determine a mutually agreeable replacement.

18.    **Existing Warranties**. The exclusive remedy for Plaintiffs and Settlement Class Members for Past Property Damage Claims and Future Property Damage Claims with respect to Qualifying Leaks through the duration of the Claim Period shall be a Claim from the Net Settlement Fund. Any claim by a Settlement Class Member under NIBCO's Limited Warranty after the Claim Period must be valid, timely and in accordance with the requirements of applicable law, and must comply with the express provisions of the Limited Warranty in all respects. Plaintiffs and Settlement Class Members shall be informed in the Settlement Notice and thereby acknowledge that NIBCO contends that its Limited Warranty does not extend coverage to design defects, imposes conditions precedent such as notice of a leak and submission of the allegedly failed product for inspection, and limits recovery. Any Limited Warranty that has expired or expires during the Claim Period remains expired and provides no further benefit. For the avoidance of doubt, nothing in this Settlement extends or tolls the duration of any Limited Warranty for any period of time before, during, or after the Claim Period. Any challenge to any adverse determination by NIBCO of a claim to NIBCO submitted under the Limited Warranty for a leak

that occurs after the close of the Claim Period shall be submitted to the Special Master, who shall retain exclusive jurisdiction over such matters. The Special Master shall have the authority to decide whether the Limited Warranty is applicable to the Settlement Class Member's warranty claim, whether the Settlement Class Member satisfied all conditions in the Limited Warranty, and, if so, whether NIBCO breached the Limited Warranty, and, if so, the amount of any remedy to the Settlement Class Member in accordance with the terms of the Limited Warranty. Conclusions of law or fact reached by the Special Master may be reviewed by the Court upon request of the Claimant or NIBCO. Any conclusions of law reached by the Special Master will be reviewed *de novo*. Findings of fact will be subject to a clearly erroneous standard of review. For these purposes, NIBCO shall pay the cost of the Special Master outside of and in addition to the Class Settlement Fund.

**D.**    **SETTLEMENT ADMINISTRATOR AND NOTICE PLAN**

19.    **Appointment of Settlement Administrator**. The Settlement Administrator will be appointed by the Court in the Preliminary Approval Order. The Settlement Administrator shall be responsible for administering the Claim process and taking other actions as set forth in this Agreement. The reasonable fees and expenses of the Settlement Administrator shall be paid from the Class Settlement Fund. The Settlement Administrator shall provide Co-Lead Class Counsel and Counsel for NIBCO with a Declaration that will be filed with Plaintiffs' Motion for Preliminary Approval and that shall set forth a detailed estimate and a "not to exceed" price for performing all tasks and duties regarding this Settlement. The Settlement Administrator's subsequent invoices through the Final Approval Hearing shall be approved by the Court in its Final Approval Order.

20.     **Claim Process**. Any Settlement Class Member who wishes to submit a Claim must timely complete, sign (by hard copy or electronic signature), and submit a Claim Form and provide the Settlement Administrator with all requested information. All Claim Forms shall be submitted to the Settlement Administrator under oath. A Claim Form that does not meet each of these requirements is deficient and shall be responded to by the Settlement Administrator using the form Notice of Deficiency Letter attached hereto as **Exhibit 8**. The Claimant shall have at least one opportunity to cure any deficiency(ies) with their Claim Form. The Settlement Administrator shall receive, process, and make determinations regarding all Claim Forms as promptly as possible and subject to the provisions of Paragraph 12 above. Claim Forms shall be processed in the order that they are received to the extent practicable. Co-Lead Class Counsel and Counsel for NIBCO shall have the right to review the Claim files of the Settlement Administrator at any time. The Settlement Administrator shall have the right to confer with Co-Lead Class Counsel and Counsel for NIBCO with respect to any Claim.

21.     **No Liability for Claims Administered Pursuant to Agreement**. No Person shall have any claim against NIBCO, Counsel for NIBCO, Plaintiffs, Class Counsel, the Released Parties, and/or the Settlement Administrator based on any determinations, distributions, or awards made with respect to any Claim. This provision does not affect or limit in any way the right of review of any disputed Claim as provided in this Settlement Agreement. The applicable dispute procedures set forth in Paragraphs 15-20 shall be the sole and exclusive means of resolving disputes based on any determinations, distributions, or awards made with respect to any Claim. For the avoidance of doubt, in no event shall Plaintiffs, Class Counsel, NIBCO, or Counsel for NIBCO, have any liability for claims of wrongful or negligent conduct on the part of the Settlement Administrator, the Independent Engineering Consultant, the Special Master, or their agents.

3310484.1

22.    **Settlement Administrator Duties**. The Settlement Administrator shall:

a.    Use personal information acquired as the result of this Agreement solely for purposes of evaluating and paying Claims under this Agreement.

b.    Assign a manager to oversee the protection and appropriate management of personal information and review its internal system to manage the protection of personal information to ensure consistent performance and constant improvement.

c.    Take security countermeasures to prevent unauthorized access to personal information and the loss, destruction, falsification and leakage of personal information.

d.    If outsourcing the handling of personal information, determine that outsourced companies take steps to ensure appropriate management of the information to prevent leaks of personal or confidential information, and prohibit reuse of information for other purposes.

e.    Respond immediately with appropriate measures when necessary to disclose, correct, stop using, or eliminate contents of information.

f.    Within one hundred and twenty (120) days after the completion of the Claims Period and any check-cashing period following the Claims Period, and in compliance with applicable retention law, destroy all personal information obtained in connection with this Settlement in a manner most likely to guarantee that such information not be obtained by unauthorized Persons.

23.    **Settlement Administrator Accounting**. The Settlement Administrator shall maintain a complete and accurate accounting of all receipts, expenses (including settlement administration costs), and payments made pursuant to this Agreement. The accounting shall be made available on reasonable notice to Co-Lead Class Counsel and Counsel for NIBCO.

24.    **Removal of Settlement Administrator**. If the Settlement Administrator fails to perform adequately, the Parties may agree to remove the Settlement Administrator by petitioning the Court to do so.

25.    **Notice Plan**. The Notice Plan utilized to provide notice of this Settlement to the Settlement Class shall be approved in the Court's Preliminary Approval Order. The cost of the Notice Plan shall be paid out of the Class Settlement Fund. The Notice Plan shall be effectuated by the Settlement Administrator and shall include, at a minimum:

a.    **Notice of Settlement**. The Notice of Settlement substantially in the form attached hereto as **Exhibit 2** and a Claim Form substantially in the form attached hereto as **Exhibit 1** shall be mailed, first class postage prepaid, to the residential structures in Alabama and Texas included in the Settlement Class.  NIBCO, Class Counsel, and the Settlement Administrator will discuss the appropriate scope of any remaining notice by mail. The Notice of Settlement shall also be sent by the Settlement Administrator to all homeowners insurance companies that the Settlement Administrator can identify.  The Notice of Settlement will be accompanied by a cover letter substantially in the form attached hereto as **Exhibit 9**.

b.    **Publication**. The Settlement Administrator shall design and implement a plan for notification of the Settlement to Settlement Class Members through print and digital/internet publication designed to target the communities where the residential structures in the Settlement Class are located.  The short form publication notice will be substantially in the form attached hereto as **Exhibit 10**.

c.    **Settlement Website**. Upon filing the Motion for Preliminary Approval, the Settlement Administrator shall establish and make live the Settlement Website, which shall be an Internet      website      concerning      the      Settlement      utilizing      the      domain      name

www.AlabamaTexasPEXsettlement.com. The Settlement Website shall be maintained by the Settlement Administrator until one hundred eighty (180) days after the conclusion of the Claim Period and the time period for cashing all Settlement Payment checks has expired. The domain name of the Settlement Website shall be included in all Settlement Notices. The Settlement Website shall provide, at a minimum: (i) information concerning deadlines for filing a Claim Form, and the dates and locations of relevant Court proceedings, including the Final Approval Hearing; (ii) the toll-free phone number applicable to the Settlement; (iii) copies of the Settlement Agreement, the Notice of Settlement, the Claim Form, Court Orders regarding this Settlement, and other relevant Court documents, including Co-Lead Class Counsel's Motion for Approval of Attorneys' Fees, Costs, and Service Awards; and (iv) information concerning the submission of Claim Forms, including the ability to submit Claim Forms electronically using an electronic signature service such as DocuSign through the Settlement Website.

   d. **Toll-Free Number**. The Settlement Administrator shall establish a toll-free telephone number and facility that will provide members of the Settlement Class with information and direct them to the Settlement Website upon filing the Motion for Preliminary Approval. The toll-free telephone number shall be included in all notices described in Paragraphs 25.a. to 25.d. The telephone facility shall be capable of (i) receiving requests for Claims Forms (**Exhibit 1**), the Notice of Settlement (**Exhibit 2**), this Settlement Agreement, or any other materials described in Paragraphs 25.a. to 25.c., and (ii) providing general information concerning deadlines for filing a Claim Form, opting out of or objecting to the Settlement, and the dates and locations of relevant Court proceedings, including the Final Approval Hearing. The toll free number(s) shall be maintained by the Settlement Administrator during the time period that the Settlement Website is active.

e.      **CAFA Notice**. Pursuant to 28 U.S.C. § 1715, NIBCO, through the Settlement Administrator, shall mail all required notices in accordance with their obligations thereunder.

26.      **Proof of Compliance with Notice Plan**. The Settlement Administrator shall provide Co-Lead Class Counsel and Counsel for NIBCO with a declaration detailing all of its efforts regarding the Notice Plan and of its timely completion of the Notice Plan and its reach to the members of the Settlement Class, to be filed as an exhibit to Plaintiffs' Motion for Final Approval of Class Action Settlement.

27.      **Requests for Notice and Claim Forms**. The Settlement Administrator shall provide through mail and/or email the Notice of Settlement (**Exhibit 2**) and Claim Form (**Exhibit 1**) to any Person requesting them at any time during the Claim Period.

28.      **Settlement Administrator Database**. The Settlement Administrator shall maintain and preserve records of all of its activities, including logs of all telephone calls, emails, faxes, mailings, visits to the Settlement Website, and all other contacts with actual and potential members of the Settlement Class, in a computerized database with easily retrievable records. The database shall also include a running tally of the number of and types of materials mailed or disseminated by the Settlement Administrator. The Settlement Administrator shall provide Co-Lead Class Counsel and Counsel for NIBCO with quarterly written reports throughout the Claim Period summarizing all statistics and actions taken by the Settlement Administrator in connection with administering the Settlement.

## E.   **OPT-OUTS AND OBJECTIONS**

29.   **Requests for Exclusion**.

a.   Settlement Class Members may submit a Request for Exclusion from (*i.e.*, "opt-out" of) the Settlement pursuant to Federal Rule of Civil Procedure 23(c)(2)(B)(v).   A member of the Settlement Class who submits a Request for Exclusion cannot object to the Settlement and is not eligible to receive any Settlement Payment.

b.   To validly request exclusion from the Settlement Class, a member of the Settlement Class must submit a written request to opt out to the Settlement Administrator so that it is postmarked by the Objection and Opt-Out Deadline stating that "I wish to exclude myself from the Settlement Class in the NIBCO Litigation Class Action Settlement" (or substantially similar clear and unambiguous language).  That written request shall contain the Settlement Class member's printed name, address, telephone number, email address, and date of birth. The Request for Exclusion must contain the actual written signature of the Settlement Class member seeking to exclude himself or herself from the Settlement Class.

c.   Requests for Exclusion cannot be made on a group or class basis, except that joint owners of the same residence or structure may opt out by using the same form so long as it is individually signed by each joint owner.

d.   Those Persons falling within the definition of the Settlement Class as "Persons who have standing and are entitled to assert a claim on behalf of any such Occupant Persons" need not file a separate Request for Exclusion for each structure for which they meet this definition so long as they identify each such structure for which they are opting out in their Request for Exclusion; provided, however, that any such Persons cannot opt out for purposes of some structures but remain in the Settlement Class for others.

e.      The Settlement Administrator will provide copies of all Requests for Exclusion to counsel for the Parties on a weekly basis by email.

f.      Any Settlement Class Member who does not submit a valid and timely written Request for Exclusion as provided in Paragraphs 29.a to 29.d. shall be bound by all subsequent proceedings, orders and judgments in this Litigation, including, but not limited to, the Release, the Final Approval Order, and the Final Judgment, even if such Settlement Class Member has litigation pending, or subsequently initiates litigation, against any Released Party relating to the Released Claims.

g.      A member of the Settlement Class who opts out can, on or before the Objection and Opt-Out Deadline, withdraw their Request for Exclusion by submitting a written request to the Settlement Administrator stating their desire to revoke their Request for Exclusion along with their written signature.

h.      Any statement or submission purporting or appearing to be both an objection and opt-out shall be treated as a Request for Exclusion.

i.      Not later than four (4) days after the Objection and Opt-Out Deadline, the Settlement Administrator shall provide to Co-Lead Class Counsel and NIBCO a complete list of opt-outs together with copies of the opt-out requests and any other related information. In the sole discretion of NIBCO, it may void the Settlement Agreement if the number of residential structures opted out reaches eighty-five (85). NIBCO must advise Class Counsel and the Court, in writing, of this election within ten (10) business days of receiving the list of Requests for Exclusion from the Settlement Administrator following the Objection and Opt-Out Deadline. If NIBCO chooses to void the Settlement in this manner, then the Settlement Agreement will be vacated, rescinded,

cancelled, and annulled, and the Parties will return to the status quo ex ante, as if they had not entered into the Settlement Agreement.

30.    **Objections**. Any Settlement Class Member who does not submit a written Request for Exclusion may present a written objection to the Settlement explaining why he or she believes that the Settlement Agreement should not be approved by the Court as fair, reasonable and adequate. A Settlement Class Member who wishes to submit an objection must deliver to the Settlement Administrator so that it is postmarked by the Objection and Opt-Out Deadline, a detailed written statement of the objection(s) and the aspect(s) of the Settlement being challenged, as well as the specific reasons, if any, for each such objection, including any evidence and legal authority that the Settlement Class Member wishes to bring to the Court's attention.

a.    That written statement shall contain (a) the Settlement Class Member's printed name, address, telephone number, and date of birth; (b) evidence showing that the objector is a Settlement Class Member, including the address of the structure that contains or contained a Covered Product and proof that the structure contains or contained a Covered Product (photographs, contemporaneous installation records, *etc.*); (c) any other supporting papers, materials, or briefs that the Settlement Class Member wishes the Court to consider when reviewing the objection; (d) the actual written signature of the Settlement Class Member making the objection; and (e) a statement whether the objecting Settlement Class Member and/or his or her counsel intend to appear at the Final Approval Hearing.

b.    A Settlement Class Member may object on his or her own behalf or through an attorney; however, even if represented, the Settlement Class Member must individually sign the objection and all attorneys who are involved in any way asserting objections on behalf of the Settlement Class Member must be listed on the objection papers. Counsel for the Parties may take

the deposition of any objector prior to the Final Approval Hearing in a location convenient for the objector.

        c.      The Settlement Administrator shall provide counsel for the Parties with copies of any objections received by it on a weekly basis by email.

        d.      Any objector who files and serves a timely written objection as described above may appear at the Final Approval Hearing, either in person at their own expense or through personal counsel hired at the objector's expense, to object to the fairness, reasonableness, or adequacy of any aspect of the Settlement on the basis set forth in his or her objection. As noted above, objectors or their attorneys who intend to make an appearance at the Final Approval Hearing must state their intention to appear in the objection delivered to the Settlement Administrator.

        e.      Any Settlement Class Member who fails to comply with the provisions of Paragraphs 30.a.-d. shall waive and forfeit any and all rights that he, she, or it may have to appear separately and/or to object to the Settlement, and shall be bound by all the terms of this Settlement Agreement and by all proceedings, orders and judgments in the Litigation, including, but not limited to, the Release, the Final Approval Order, and the Final Judgment, even if such Settlement Class Member has litigation pending or subsequently initiates litigation, against any Released Party relating to the Released Claims.

    31.    The exclusive means for any challenge to this Settlement shall be through the provisions of Paragraphs 30.a.-d. Without limiting the foregoing, any challenge to the Settlement, the Final Approval Order, the Final Judgment, or any Attorneys' Fee, Cost, and Service Award Order shall be pursuant to appeal under the Federal Rules of Appellate Procedure and not through a collateral attack.

3310484.1

32.     An objector shall be entitled to all of the benefits of the Settlement if this Settlement Agreement and the terms contained herein are approved, as long as the objector complies with all requirements of this Settlement Agreement applicable to Settlement Class Members, including the timely and complete submission of a Claim Form and other requirements herein.  A Settlement Class Member who objects can, on or before the Objection and Opt-Out Deadline, withdraw their objection by submitting a written request to the Settlement Administrator stating their desire to withdraw their objection along with their signature.

33.     If a Settlement Class Member or counsel for the Settlement Class Member who submits an objection to this Settlement has objected to a class action settlement on any prior occasion, the objection shall also disclose all cases in which they have filed an objection by caption, court, and case number, and for each case, the disposition of the objection.

**F.     RELEASE OF CLAIMS**

34.     **Release**. Upon the Effective Date, all Settlement Class Members, as well as any Person who receives any payment from the Net Settlement Fund, on behalf of themselves and their agents, heirs, executors and administrators, successors, assigns, insurers, attorneys, representatives, and any and all Persons who seek to claim through or in the name or right of any of them (but excluding any Persons who timely opted out of the Settlement with regard to the buildings or geographic scope for which they opted out) (the "Releasing Parties"), release and forever discharge (as by an instrument under seal without further act by any Person, and upon good and sufficient consideration), NIBCO, its administrators, insurers, reinsurers, agents, firms, parent companies/corporations, sister companies/corporations, subsidiaries and affiliates, and any sales agents and distributors, wholesalers, retailers, plumbers, homebuilders, developers, contractors, engineers, architects, and any other product or service provider or any other party in the chain of

distribution who distributed, specified, recommended, sold, and/or installed the Tubing, Fittings, and/or Clamps, and all of the foregoing Persons' respective predecessors, successors, assigns and present and former officers, directors, shareholders, employees, agents, attorneys, and representatives (collectively, the "Released Parties"), from each and every claim of liability, on any legal or equitable ground whatsoever, including relief under federal law or the laws of any state, regarding or related to NIBCO's Tubing, Fittings, and/or Clamps, including without limitation their design, manufacture, purchase, use, marketing, promotions, sale, or certification, and including without limitation all past, present, or future claims, damages, or liability on any legal or equitable ground whatsoever, and regardless of whether such claims might have been or might be brought directly, or through subrogation or assignment or otherwise, on account of or related to the Tubing, Fittings, and/or Clamps, which were alleged or could have been alleged in the Complaints filed in the Litigation. The Release is as a result of membership as a Settlement Class Member, status as Releasing Parties, the Court's approval process herein, and the occurrence of the Effective Date, and is not conditional on receipt of payment by any particular member of the Settlement Class or Releasing Party. Without in any way limiting its scope, and, except to the extent otherwise specified in the Settlement Agreement, the Release covers by example and without limitation, any and all claims for reasonable attorneys' fees, costs, expert fees, consultant fees, interest, litigation fees, costs, or any other fees, costs, and/or disbursements incurred by any attorneys, Class Counsel, Plaintiffs, Settlement Class Members, or any Releasing Party who claim to have assisted in conferring the benefits under this Settlement upon the Settlement Class. This Settlement Agreement and the Release provided for herein shall not and are not intended to release the claims of the Releasing Parties against the suppliers of raw materials, components, or ingredients used in the manufacture of the Tubing, Fittings, and/or Clamps, which the Releasing

3310484.1

42

Parties hereby fully and forever assign, transfer, and convey to NIBCO.  For purposes of any claims by NIBCO against the suppliers of raw materials, components, or ingredients used in the manufacture of the Tubing, Fittings, and/or Clamps, should such supplier seek to join any Releasing Party in such a claim, NIBCO shall defend, indemnify, and hold harmless the Releasing Party from any and all claims of any such supplier against the Releasing Party.

35.    **Exclusions from Release**. All personal injury claims are expressly excluded from the Release; for the avoidance of doubt, however, claims for emotional distress and/or mental anguish are subject to the Release in Paragraph 34 and not part of this personal injury exclusion. In addition, subject to the terms of Paragraph 34, the Parties further agree that certain limited claims as specified below, which a Releasing Party has brought or may in the future bring against an installer, plumber, homebuilder, contractor, or other product or service provider, or any other party in the chain of distribution who purchased, specified, recommended, sold, and/or installed the Tubing, Fittings, and/or Clamps, related solely and exclusively to the alleged faulty installation of the Tubing, Fittings, and/or Clamps, are expressly not released as to such Persons. This limited exception shall include only claims alleging that a party or parties other than NIBCO are wholly responsible for a leak of the Tubing, Fittings, or Clamps, including, without limitation, as a result of (1) a penetration of the Tubing, Fittings, and/or Clamps from a foreign object such as a nail or other physical abuse; (2) improper attachment of the Tubing, Fittings, and/or Clamps to plumbing components or appliances; (3) improper stress on the Tubing, Fittings, and/or Clamps due to improper installation; (4) leaks due to an improperly set or malfunctioning pressure-reducing valve not manufactured or sold by NIBCO; (5) leaks due to age of fixture sealant components supplied or provided by a plumber; or (6) any installation issue in violation of NIBCO's installation guidelines and/or unrelated to the design, manufacture, performance, or selection of the Tubing,

Fittings, and/or Clamps.  However, if a court finds, via dispositive motion or otherwise, that NIBCO was at least partially responsible, then this limited exception shall not apply and the claim is released under Paragraph 34.  Nothing in this Paragraph shall permit any Releasing Party to bring any other claims released herein, including without limitation claims for improper, insufficient, or negligent advice, recommendation, solicitation, purchase, selection, or sale of the Tubing, Fittings, and/or Clamps, and in no event shall any claim whose prosecution is permitted by this Paragraph allege, purport to allege or depend on any wrongful act, error or omission, loss, or liability, whether strict, or due to fault or otherwise, by NIBCO. The Releasing Parties and NIBCO do not intend to create and do not believe that the reservation provided in this Paragraph creates any basis for a claim of indemnification, contribution, or any other claim, however denominated, by a nonparty against the Released Parties, with the exception that, as described in Paragraph 34, parties who opted out of the Settlement do not release their ability to assert indemnification, contribution, and any other claim however denominated against Released Parties. This provision is intended solely to preserve a Releasing Party's ability to seek relief against the non-released individuals or entities for liability unrelated to NIBCO as expressly specified in this Paragraph.  In addition, the Releasing Parties agree that in any action brought by a Releasing Party alleging that a party or parties other than NIBCO are wholly responsible for a leak of the Tubing, Fittings, or Clamps, including, but not limited to, based on a leak that is not a Qualifying Leak, should any such third party sued by a Releasing Party file a claim or cause of action against any Released Party for contribution, indemnification, or any other claim, however denominated, arising out of or related to the Tubing, Fittings, and/or Clamps, the Releasing Parties shall hold NIBCO and the Released Parties harmless, agree to a judgment in NIBCO's and the Released Parties' favor dismissing all claims asserted by the Releasing Party or anyone claiming by,

through, or under the Releasing Party, and to the extent that the claims against NIBCO or the Released Parties are not released, then reduce or remit any judgment against such third party by the percentage, amount, or share necessary under applicable law to fully discharge and relieve NIBCO and the Released Parties of liability to such third party for claims for contribution, indemnification, or any other claim, however denominated, including attorneys' fees and costs such Person may seek against NIBCO and the Released Parties. If a Releasing Party files a claim or cause of action against any third party alleging that a party or parties other than NIBCO are wholly responsible for a leak of the Tubing, Fittings, or Clamps, including, but not limited to, based on a leak that is not a Qualifying Leak, the Releasing Party must not include any claim or allegation for design defects, manufacturing defects, marketing defects, or any other claim that is a "products liability action," as contemplated by Section 82.001(2) of the Texas Civil Practice and Remedies Code. The Releasing Party also must include the following language in the complaint, petition, or other document asserting the claim: "This is not a 'products liability action' as defined in Section 82.001(2) of the Texas Civil Practice & Remedies Code. The plaintiff does not allege design, manufacturing, or marketing defects in the plumbing system or any of its component parts. The plaintiff expressly waives any products liability action it may have associated with NIBCO's Tubing, Fittings, and/or Clamps. The plaintiff's claims are not product-based, but instead are based on services provided by the defendants. The plaintiff solely seeks damages resulting from the negligent installation of the plumbing system into the home." In any event, however, the Releasing Parties' obligation is limited to releasing, reducing, or remitting in an amount no more than the amount of the judgment against NIBCO or the Released Parties. If any third party sued by a Releasing Party obtains a judgment against NIBCO or any Released Party for contribution, indemnification, or any other claim, however denominated, the Releasing Party agrees that the

Releasing Party shall reduce or remit its judgment against such third party by the amount of such third party's judgment against NIBCO and the Released Party not to exceed the amount of that portion of the judgment for which such third party obtains contribution, indemnification, or other relief, however denominated, so as to fully satisfy such third party's judgment against NIBCO and the Released Party including attorneys' fees and costs such third party may seek against NIBCO and the Released Party. In any settlement between any of the Releasing Parties and any Person arising out of or related to NIBCO's Tubing, Fittings, and/or Clamps, the Releasing Parties shall be deemed to have obtained a release in favor of all Released Parties.

36.     **Good Faith Settlement**. The Releasing Parties agree that the provisions of this Agreement and any claim thereunder constitute a good faith settlement under California Code of Civil Procedure Sections 877 and 877.6, Hawaii Revised Statutes 663-15.5, and comparable laws in other states. Plaintiffs and Class Counsel will not oppose a motion by NIBCO in a subsequent action contending that this is a good faith settlement.

37.     **Assumption of Risk**. Each of the Releasing Parties hereby does, and shall be deemed to, assume the risk that facts additional, different, or contrary to the facts that each believes or understands to exist, may now exist or may be discovered after this Agreement becomes effective. Each of the Releasing Parties agrees that any such additional, different, or contrary facts shall in no way limit, waive, or reduce the foregoing Release, which shall remain in full force and effect.

38.     **California Civil Code and Any Counterparts from Other States**. All Releasing Parties will be deemed by the Final Approval Order and the Final Judgment to acknowledge and waive Section 1542 of the California Civil Code, which provides that: "**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY**

**DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."** Plaintiffs and the Settlement Class Members, on behalf of all Releasing Parties, expressly waive and relinquish any and all rights and benefits that they may have under, or that may be conferred upon them by, the provisions of Section 1542 of the California Civil Code, or any other law of any state or territory that is similar, comparable or equivalent to Section 1542, to the fullest extent they may lawfully waive such rights or benefits pertaining to the Released Claims. In connection with such waiver and relinquishment, the Settlement Class Members hereby acknowledge that the Releasing Parties are aware that they or their attorneys may hereafter discover claims or facts in addition to or different from those that they now know or believe exist with respect to Released Claims, but that it is their intention to hereby fully, finally, and forever settle and release all of the Released Claims known or unknown, suspected or unsuspected, that they have against the Released Parties. In furtherance of such intention, the Release herein given by the Releasing Parties to the Released Parties shall be and remain in effect as a full and complete general release notwithstanding the discovery or existence of any such additional different claims or facts. Each of the Parties expressly acknowledges that it has been advised by its attorneys of the contents and effect of Section 1542, and with knowledge, each of the Parties hereby expressly waives whatever benefits it may have had pursuant to such section. Plaintiffs acknowledge, and the Releasing Parties shall be deemed by operation of the Final Approval Order and the Final Judgment to have acknowledged, that the foregoing waiver was expressly bargained for and a material element of the Settlement of which this Release is a part.

3310484.1

39.     **No Assignment of Claims**. Plaintiffs represent and warrant that they are the sole and exclusive owners of all claims that they personally are releasing under the Settlement Agreement. Plaintiffs further acknowledge that they have not assigned, pledged, or in any manner whatsoever sold, transferred, assigned or encumbered any right, title, interest or claim arising out of or in any way whatsoever pertaining to the Litigation, including without limitation any claim for benefits, proceeds, or value under the Litigation, and that Plaintiffs are not aware of anyone other than themselves claiming any interest, in whole or in part, in the Litigation or in any benefits, proceeds, or values under the Litigation.

40.     **Dismissal with Prejudice**. Upon the Effective Date, the Released Claims of the Settlement Class Members and Releasing Parties will be dismissed with prejudice.

## G.     ATTORNEYS' FEES, COSTS AND SERVICE AWARDS

41.     **Payment of Attorneys' Fees and Costs**. Only after agreeing to the material terms set forth in this Settlement Agreement and the structure of relief for the Settlement Class, the Parties negotiated the maximum amount of Attorneys' Fees, Cost, and Service Award that Class Counsel and Plaintiffs would seek, to be paid separately by NIBCO, and subject to the approval of the Court.

a.     Within the time period established by the Court, and no later than thirty (30) days prior to the Objection and Opt Out Deadline, Class Counsel will file a Motion for Approval of Attorneys' Fees, Cost and Service Awards, which shall be included on the Settlement Website. The Attorneys' Fee, Cost, and Service Award shall be paid separately from, and in addition to, the Class Settlement Fund.

b.     Class Counsel in the Litigation shall apply for an award of attorneys' fees and reimbursement of costs not to exceed Two Million Three Hundred Thirty Thousand Dollars

($2,330,000).  The Parties agree that NIBCO shall not pay, or be obligated to pay, any amounts in excess of those stated in this Paragraph for attorneys' fees and costs.  Class Counsel shall provide W-9 Forms prior to such payment.

    c.  Plaintiffs certify and agree that they had no expectation of a service award when agreeing to this Settlement, and that the decision of whether or not to award a service award will be left to the discretion of the Court.  With that understanding, NIBCO agrees that it will not oppose a request for a service award of up to $10,000 for Plaintiffs David and Barbara Matson (which represents a per-household limitation) and up to $10,000 for Plaintiff Yolanda Garrett in recognition of their time, costs, and effort in the Litigation. The Parties agree that NIBCO shall not pay, or be obligated to pay, any amounts in excess of those stated in this Paragraph for service awards. Plaintiffs shall provide W-9 Forms prior to such payment.

    d.  Any Attorneys' Fee, Cost, and Service Award shall be set forth in an order separate from the Final Approval Order and the Final Judgment so that any appeal of the Attorneys' Fee, Cost, and Service Award shall not constitute an appeal of the Final Approval Order or the Final Judgment. Any order or proceedings relating solely to the application for an Attorneys' Fee, Cost, and Service Award, or any appeal solely from any Attorneys' Fee, Cost, and Service Award, or reversal or modification of any such Attorneys' Fee, Cost, and Service Award, will not operate to terminate or cancel this Settlement Agreement, or affect or delay the Effective Date.

    e.  The Attorneys' Fee, Cost, and Service Awards approved by the Court shall be paid within ten (10) business days after the Effective Date and shall be paid to Co-Lead Class Counsel who shall distribute attorneys' fees and costs to Class Counsel as Co-Lead Class Counsel deems appropriate. Under no circumstances will NIBCO be liable to Class Counsel, or any other attorney or law firm, for, because of, relating to, concerning, or as a result of any payment or

3310484.1

49

allocation of attorneys' fees made in accordance with this Settlement Agreement; and Class

Counsel, and each of them, release NIBCO from any and all disputes or claims because of, relating

to, concerning, or as a result of any payment or allocation of attorneys' fees and costs made in

accordance with this Settlement Agreement.

      f.     Class Counsel shall not be entitled to any compensation from any Released

Party for fees or expenses beyond that provided in Paragraph 41 and its sub-parts, including,

without limitation, any fees or expenses incurred in their cooperation in the administration of this

Settlement Agreement.

**H.**    **FINAL APPROVAL**

    42.    **Motion for Final Approval of Settlement**. Pursuant to the schedule set by the

Court in its Preliminary Approval Order and at least ten (10) days prior to the Final Approval

Hearing, Co-Lead Class Counsel shall file a motion and supporting papers requesting that the

Court grant final approval of this Settlement Agreement and for entry of a Final Approval Order

and Final Judgment to be agreed upon by the Parties and filed with the Motion for Final Approval.

      a.     Determining that the Court has personal jurisdiction over all Plaintiffs and

Settlement Class Members, that the Court has subject matter jurisdiction

over the claims asserted in this Litigation, and that venue is proper;

      b.     Finally approving the Settlement Agreement and settlement as fair,

reasonable, and adequate pursuant to Federal Rule of Civil Procedure 23;

      c.     Finally approving and certifying the Settlement Class for settlement

purposes only;

      d.     Finding that the Notice Plan, Settlement Notice, and dissemination

methodology complied with all laws, including, but not limited to, the Due

Process Clause of the United States Constitution, and was fair, adequate, and sufficient, as the best practicable notice under the circumstances, and as reasonably calculated to apprise members of the Settlement Class of the Litigation, the Settlement Agreement, their objection rights, and their exclusion rights;

e.   Dismissing the Litigation with prejudice and without costs (except as provided for in this Settlement Agreement as to costs);

f.   Expressly including the Release set forth in the Settlement Agreement and making the Release effective as of the Effective Date;

g.   Listing all opt-outs;

h.   Certifying that the notification requirements of the Class Action Fairness Act, 28 U.S.C. § 1715, have been met;

i.   Authorizing the Parties to implement the terms of the Settlement Agreement;

j.   Permanently enjoining Plaintiffs and all other Settlement Class Members and those subject to their control, from commencing, maintaining, or participating in, or permitting another to commence, maintain, or participate in on their behalf, any Released Claims against the Released Parties;

k.   Retaining jurisdiction relating to the administration, consummation, enforcement, and interpretation of the Settlement Agreement, the Final Approval Order, and the Final Judgment, and for any other necessary purpose; and

3310484.1

l.    Issuing related Orders to effectuate the final approval of the Settlement Agreement and its implementation.

43.    **Exclusive Remedy, Dismissal of Action and Jurisdiction of Court.** All Settlement Class Members who do not properly file a timely and valid written Request for Exclusion from the Settlement Class submit to the jurisdiction of the Court and will be bound by the terms of this Agreement, including, without limitation, the Release set forth herein. This Agreement sets forth the sole and exclusive remedy for any and all pending or future claims of Settlement Class Members or other Claimants against NIBCO and the Released Parties arising from the alleged failure of the Covered Products as set forth above. Upon entry of the Final Approval Order, each Settlement Class Member who has not validly and timely opted out of the Settlement Class and any Person that has made or can or is entitled to make a claim through or in the name or right of a Settlement Class Member shall be barred from initiating, asserting, continuing, or prosecuting any such claims against NIBCO and any Released Party. Upon the Effective Date, the cases comprising the Litigation will be dismissed with prejudice.

## I.    **OTHER TERMS AND CONDITIONS**

44.    **No Admission of Liability.** This Agreement is made for the sole purpose of attempting to consummate a settlement of the Litigation on a class-wide basis. This Agreement is made in compromise of disputed claims and shall not be construed as an admission of liability by NIBCO or any Released Party. Because this is a class action settlement, this Agreement must receive preliminary and final approval by the Court. It is an express condition of this Agreement that the Court shall enter the Final Approval Order and Final Judgment and that the Agreement reach the Effective Date. In the event that the Effective Date does not occur, this Agreement shall be terminated and only those provisions necessary to effectuate such termination and to restore

3310484.1

fully the Parties to their respective positions before entry of this Agreement shall be given effect and enforced. In such event, the Parties shall bear their own costs (except the costs of the Notice Plan and of the Settlement Administrator up to the date that the Agreement is terminated, which shall be borne solely by the Class Settlement Fund) and attorneys' fees in all respects, including without limitation with regard to the efforts to obtain any Court approval under this Agreement.

45. **Exclusive and Continuing Jurisdiction**. The Court shall retain exclusive and continuing jurisdiction to interpret and enforce the terms, conditions, and obligations of this Agreement and its own orders and judgments.

a. In the event of a breach by Plaintiffs, NIBCO, or a Settlement Class Member of this Agreement, the Court may exercise all of its equitable powers to enforce this Agreement and the Final Approval Order and Final Judgment irrespective of the availability or adequacy of any remedy at law. Such powers include, among others, the power of specific performance and injunctive relief.

b. NIBCO, Class Counsel, and Plaintiffs agree, and Settlement Class Members and Claimants will be deemed to have agreed, to submit irrevocably to the exclusive jurisdiction of the Court for the resolution of any matter covered by this Settlement Agreement, the Release, the Final Approval Order, or the Final Judgment, or the applicability of this Settlement Agreement, the Release, the Final Approval Order, or the Final Judgment.

c. All applications to the Court with respect to any aspect of this Settlement Agreement, the Release, the Final Approval Order, or the Final Judgment shall be presented to and be determined by the Court for resolution.

d. In the event that the provisions of this Settlement Agreement, the Release, the Final Approval Order, or the Final Judgment are asserted by any Released Party as a ground for

a defense, in whole or in part, to any claim or cause of action, or are otherwise raised as an objection in any other suit, action, or proceeding by any Releasing Party or any other Person covered by the Release, it is hereby agreed that the Released Party shall be entitled to seek an immediate stay of that suit, action, or proceeding until after the Court has entered an order or judgment determining any issues relating to the defense or objections based on such provisions. Plaintiffs and Class Counsel will not oppose such relief.

46.     **Stay of Proceedings**. The proposed Preliminary Approval Order shall request that all further proceedings in the Litigation be stayed except as necessary to approve and effectuate the Settlement.

47.     **Defendant's Attorneys' Fees and Costs**. NIBCO shall bear its own attorneys' fees and costs in the Litigation.

48.     **Representation by Counsel**. The Parties are represented by competent counsel, and they have had an opportunity to consult and have consulted with counsel prior to executing this Agreement. Each Party represents that it understands the terms and consequences of executing this Agreement, and executes it and agrees to be bound by the terms set forth herein knowingly, intelligently, and voluntarily.

49.     **Mutual Full Cooperation**. The Parties agree to cooperate with each other in good faith to accomplish the terms of this Agreement, including the execution of such documents and such other action as may reasonably be necessary to implement the terms of this Agreement and obtain the Court's final approval of the Agreement including the entry of an order dismissing the Litigation with prejudice.

50.     **No Tax Advice**. Neither the Parties nor their counsel intend anything contained herein to constitute legal advice regarding the taxability of any amount paid hereunder, and no

Person shall rely on anything contained in this Agreement to provide tax advice, and shall obtain his, her, or its own independent tax advice with respect to any payment under this Agreement.

51.     **Notices**. Unless otherwise specifically provided herein, all notices, demands, or other communications given hereunder shall be in writing by mail or email and addressed as follows:

        To Plaintiffs and the Settlement Class:

        Austin Tighe
        Nix Patterson, LLP
        3600 N Capital of Texas Highway
        Suite B350
        Austin, Texas 78746
        Email: atighe@nixlaw.com

        Kirby D. Farris
        Farris, Riley & Pitt, LLP
        1700 Financial Center
        505 20th Street North
        Birmingham, AL 35203
        Email:  kfarris@frplegal.com

        To NIBCO:

        J. Gordon Cooney, Jr.
        Franco A. Corrado
        MORGAN, LEWIS & BOCKIUS LLP
        1701 Market Street
        Philadelphia, Pennsylvania 19103
        Email:gordon.cooney@morganlewis.com
           franco.corrado@morganlewis.com

52.     **Drafting of Agreement**. The language of all parts of this Agreement shall be construed as a whole, according to its fair meaning, and not strictly for or against any Party. No Party shall be deemed the drafter of this Agreement. The Parties acknowledge that the terms of this Agreement are contractual and are the product of negotiations between the Parties and their

counsel. Each Party and its counsel cooperated in the drafting and preparation of this Agreement, and this Agreement shall not be construed against any Party because of their role in drafting it.

53.     **Governing Law**. This Agreement shall be governed by the laws of the State of Texas, without regard to its conflict of laws rules, precedent, or case law.

54.     **Modification**. This Agreement may not be changed, altered, or modified, except in writing and signed by all Parties hereto. The Agreement may not be discharged except by performance in accordance with its terms or by a writing signed by the Parties hereto.

55.     **Integration**. This Agreement and its Exhibits contain the entire agreement between the Parties relating to the Settlement and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a Party or its counsel, are merged herein. Each Party represents and warrants that it is not relying on any representation not expressly included in this Agreement. No rights hereunder may be waived except in writing.

56.     **Extensions**.  The Parties reserve the right, subject to the Court's approval, to agree to any reasonable extensions of time that might be necessary to carry out any of the provisions of this Settlement Agreement.

57.     **Use in Other Proceedings**. The Parties expressly acknowledge and agree that this Settlement Agreement and its Exhibits, along with all related drafts, motions, pleadings, conversations, negotiations, and correspondence, constitute an offer of compromise and a compromise within the meaning of Federal Rule of Evidence 408 and any equivalent rule of evidence in any state. In no event shall this Settlement Agreement, any of its provisions or any negotiations, statements or court proceedings relating to its provisions in any way be construed as, offered as, received as, used as, or deemed to be evidence of any kind in the Litigation, in any other action, or in any judicial, administrative, regulatory or other proceeding, except in a proceeding to

enforce this Settlement Agreement or the rights of the Parties, their counsel, or the Released Parties. Without limiting the foregoing, neither this Settlement Agreement nor any related negotiations, statements, or court proceedings shall be construed as, offered as, received as, used as or deemed to be evidence or an admission or concession of any liability or wrongdoing whatsoever on the part of any Person, including, but not limited to, the Released Parties, Plaintiffs, or the Settlement Class or as a waiver by the Released Parties, Plaintiffs, or the Settlement Class of any applicable privileges, claims or defenses.

58.     **Subheadings**. Sub-headings in this Agreement are for purposes of clarity only and are not intended to modify the terms of this Agreement's text, which are controlling.

59.     **Waiver**. The waiver by any party to this Agreement, of any breach of its terms shall not be deemed or construed to be a waiver of any other breach of this Agreement, whether prior, subsequent, or contemporaneous.

60.     **Signatures**. Each Person executing this Agreement on behalf of any Party warrants that such Person has the authority to do so. This Agreement shall be binding upon, and inure to the benefit of, the agents, heirs, executors, administrators, successors, and assigns of the Parties.

61.     **Counterparts**. This Agreement may be executed in any number of counterparts, including by electronic signature, each of which shall be deemed to be an original. All counterparts shall constitute one Agreement, binding on all Parties hereto, regardless of whether all Parties are signatories to the same counterpart, but the Agreement will be without effect until and unless all Parties to this Agreement have executed a counterpart.

[THE REMAINDER OF THIS PAGE HAS INTENTIONALLY BEEN LEFT BLANK]

**AGREED AND ENTERED INTO BY THE PARTIES AND THEIR RESPECTIVE**

**COUNSEL ON THE DATES SET FORTH BELOW:**

Dated: December 21, 2020

*Austin Tighe*
Austin Tighe
Nix Patterson, LLP
3600 N Capital of Texas Highway
Suite B350
Austin, Texas 78746

Dated: December 22, 2020

Kirby D. Farris
Farris, Riley & Pitt, LLP
1700 Financial Center
505 20th Street North
Birmingham, Alabama 35203

Dated: December __, 2020

By:  Edward A. Sullivan III
Position: Vice President, General Counsel &
          Secretary

On behalf of NIBCO, Inc.

Dated: December __, 2020

J. Gordon Cooney, Jr.
Franco A. Corrado
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, Pennsylvania 19103

Dated: December __, 2020

Kevin Kuhlman
LATHROP GPM LLP
2345 Grand Boulevard, Suite 2200
Kansas City, Missouri 64108

Attorneys for NIBCO, Inc.

3310484.1

58

AGREED AND ENTERED INTO BY THE PARTIES AND THEIR RESPECTIVE

COUNSEL ON THE DATES SET FORTH BELOW:

Dated: December ___, 2020

_____
Austin Tighe
Nix Patterson, LLP
3600 N Capital of Texas Highway
Suite B350
Austin, Texas 78746

Dated: December ___, 2020

_____
Kirby D. Farris
Farris, Riley & Pitt, LLP
1700 Financial Center
505 20th Street North
Birmingham, Alabama 35203

Dated: December 21, 2020



By: Edward A. Sullivan III
Position: Vice President, General Counsel &
Secretary

On behalf of NIBCO, Inc.

Dated: December ___, 2020

_____
J. Gordon Cooney, Jr.
Franco A. Corrado
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, Pennsylvania 19103

Dated: December ___, 2020

_____
Kevin Kuhlman
LATHROP GPM LLP
2345 Grand Boulevard, Suite 2200
Kansas City, Missouri 64108

Attorneys for NIBCO, Inc.

**AGREED AND ENTERED INTO BY THE PARTIES AND THEIR RESPECTIVE**

**COUNSEL ON THE DATES SET FORTH BELOW:**

Dated: December ___, 2020

                                    Austin Tighe
                                    Nix Patterson, LLP
                                    3600 N Capital of Texas Highway
                                    Suite B350
                                    Austin, Texas 78746

Dated: December ___, 2020

                                    Kirby D. Farris
                                    Farris, Riley & Pitt, LLP
                                    1700 Financial Center
                                    505 20th Street North
                                    Birmingham, Alabama 35203

Dated: December ___, 2020

                                    By:  Edward A. Sullivan III
                                    Position: Vice President, General Counsel &
                                                    Secretary

                                    On behalf of NIBCO, Inc.

Dated: December 21, 2020

                                    J. Gordon Cooney, Jr.
                                    Franco A. Corrado
                                    MORGAN, LEWIS & BOCKIUS LLP
                                    1701 Market Street
                                    Philadelphia, Pennsylvania 19103

Dated: December ___, 2020

                                    Kevin Kuhlman
                                    LATHROP GPM LLP
                                    2345 Grand Boulevard, Suite 2200
                                    Kansas City, Missouri 64108

                                    Attorneys for NIBCO, Inc.

**AGREED AND ENTERED INTO BY THE PARTIES AND THEIR RESPECTIVE**

**COUNSEL ON THE DATES SET FORTH BELOW:**

Dated: December ___, 2020

_____
Austin Tighe
Nix Patterson, LLP
3600 N Capital of Texas Highway
Suite B350
Austin, Texas 78746

Dated: December ___, 2020

_____
Kirby D. Farris
Farris, Riley & Pitt, LLP
1700 Financial Center
505 20th Street North
Birmingham, Alabama 35203

Dated: December ___, 2020

_____
By:  Edward A. Sullivan III
Position: Vice President, General Counsel &
           Secretary

On behalf of NIBCO, Inc.

Dated: December ___, 2020

_____
J. Gordon Cooney, Jr.
Franco A. Corrado
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, Pennsylvania 19103

Dated: December 21, 2020

_____ 12/21/20
Kevin Kuhlman
LATHROP GPM LLP
2345 Grand Boulevard, Suite 2200
Kansas City, Missouri 64108

Attorneys for NIBCO, Inc.

3310484.1

58

Dated: December 22, 2020

_____
David Matson
Plaintiff

Dated: December 22, 2020

_____
Barbara Matson
Plaintiff

Dated: December __, 2020

_____
Yolanda Garrett
Plaintiff

3310484.1

Dated: December ___, 2020

_____
David Matson
Plaintiff

Dated: December ___, 2020

_____
Barbara Matson
Plaintiff

Dated: December 22, 2020

_____
Yolanda Garrett
Plaintiff

3310484.1

# EXHIBIT 1

**Alabama Texas PEX Settlement Administrator**
1650 Arch Street, Suite 2210
Philadelphia, PA 19103

**Claim Form Instructions**
**for Settlement Class Members**

| PEXAT |
|:---:|
| **Instructions** |

**ATTENTION: NIBCO PEX CLASS ACTION SETTLEMENT CLASS MEMBERS:**

Use this Claim Form if: (a) you owned or occupied a residential structure in certain Alabama and Texas cities that contains or contained NIBCO 1006 Tubing ("Tubing"), NIBCO F1807 Fittings ("Fittings"), and/or NIBCO Stainless Steel Clamps ("Clamps")[1] and have experienced at least one leak from the Tubing, Fittings, and/or Clamps that resulted in a physical escape of water causing damage; and/or (b) you paid for repairs or damages resulting from a Qualifying Leak from NIBCO Tubing, Fittings, or Clamps in such residential structures.

**The list of residential structures included in the Settlement can be found at the Settlement Website, www.AlabamaTexasPEXsettlement.com. Please do not submit a Claim Form to this Settlement if the leak occurred in a structure not included on this list.**

A physical escape of water that is the result of penetration by a foreign object and/or certain installation issues is not eligible for a remedy. The Settlement Agreement defines these exclusions at Paragraph 1.gg.iv. To determine whether you are eligible to submit a Claim Form, or for more information regarding the Settlement, visit the Settlement Website, www.AlabamaTexasPEXsettlement.com. If you need more space for your responses, please attach additional sheets.

*Claim Form Deadline.*

Claim Forms can be submitted starting immediately.

Claim Forms are due 100 days after the Effective Date for Qualifying Leak(s) that occurred between January 1, 2005 and the Effective Date. **The Effective Date is not yet known, but will be posted on the Settlement Website once it is known.**

Claim Forms are due 100 days after the Qualifying Leak occurs if the Qualifying Leak occurs after the Effective Date and on or before May 16, 2025.

*How To Complete This Claim Form.*

1. Please type or print your responses in ink.
2. All questions must be answered. Use "N/A" when the question does not apply. You must respond to any request by the Settlement Administrator for additional information. If you fail to respond, your claim may not be processed and you may waive your rights to receive a monetary award under the Settlement.
3. Please complete a separate Claim Form for each property for which you are submitting a Claim.
4. Please keep a copy of your submitted Claim Form and all supporting materials. Do not submit your only copy of the supporting documents. Materials submitted will not be returned. All copies of documentation submitted in support of your claim should be clear, legible, and complete.
5. There are three ways to submit your Claim Form and supporting materials: (a) by mail; (b) by email to the following email address: info@AlabamaTexasPEXsettlement.com; or (c) via the Settlement Website, www.AlabamaTexasPEXsettlement.com.
6. If you are mailing your Claim Form and supporting materials, please include the completed Claim Form and all supporting materials in one envelope and send to the following address:

---

[1]The definition of any capitalized term not defined herein can be found in the Settlement Agreement, which can be downloaded at the Settlement Website: www.AlabamaTexasPEXsettlement.com.

1

**Alabama Texas PEX Settlement**
ATTN: CLAIMS
1650 Arch Street, Suite 2210
Philadelphia, PA 19103

If you have any questions, please contact the Settlement Administrator by email at info@AlabamaTexasPEXsettlement.com or by telephone at 1-855-976-0649, or write to the address above.

**It is your responsibility to notify the Settlement Administrator of any change of address that occurs after you submit your Claim.**

*What to expect after you submit your Claim Form.*

1.  Please note that no acknowledgment will be made of the receipt of a Claim Form. If you wish to be assured that your Claim Form and documentation were received by the Settlement Administrator, please use a shipping method that provides delivery confirmation.

2.  Please note that it will take several months for the Settlement Administrator to process your Claim Form. This work will be completed as quickly as possible, given the need to investigate and evaluate each Claim Form.

3.  The Settlement Administrator will evaluate all of the information and documentation that you submit in order to determine your eligibility for monetary benefits under the Settlement, and will contact you to request additional information if the information you provided is insufficient to process your Claim.

<table>
<tr><td>

**For Internal Use Only**

</td><td>

**Alabama Texas PEX Settlement Administrator**
1650 Arch Street, Suite 2210
Philadelphia, PA 19103

</td><td>

**PEXAT**

</td></tr>
</table>

## I. CLAIMANT CONTACT INFORMATION/MAILING ADDRESS

Provide your name and contact information below. It is your responsibility to notify the Settlement Administrator of any changes to your contact information after the submission of your Claim Form. If you are making a Claim on behalf of a business or entity, then please include your name and contact information immediately below and the identity of that business or entity where indicated further below. Please provide the information that should be used to contact you about your Claim, if necessary, or for the distribution of any potential Settlement Payment.

**First Name**            **Last Name**

**Mailing Address**

**City**            **State**            **Zip Code**

( )   -            ( )   -            ( )   -
**Home Phone**            **Cell Phone**            **Work Phone**

**Email Address**

**Please enter your Notice ID #**
**if you received a Notice by mail or email.**

**Please place a check in the applicable box. Are you a:**

☐ 1. Homeowner      ☐ 5. Insurer

☐ 2. Tenant      ☐ 6. Owner of Commercial or Rental Property

☐ 3. Builder      ☐ 7. Attorney

☐ 4. Plumber      ☐ 8. Other: _____

If Making a Claim for a Business or Entity, Please Identify the Name of the Business or Entity:

_____

Your Position or Title: _____

3

## II. DESCRIPTION OF PROPERTY WHERE THE QUALIFYING LEAK(S) OCCURRED

### A.   PROPERTY STREET ADDRESS

Property Street Address:

City: _____   State: _____   Zip Code: _____

### B.   PROPERTY OWNERSHIP

**LIST ALL PROPERTY OWNERS.**  If there are additional owners, please attach a list with each additional owner's full name.

1.  Name of Property Owner: _____

    Name of Additional Property Owner (if applicable): _____

    Name of Additional Property Owner (if applicable): _____

2.  Are you the current owner of the property?  ____ YES  ____ NO

    If not, what dates did you own the property? _____

3.  If you are a builder, contractor, distributor, seller, subrogated insurance carrier, or other Person who has claims for contribution, indemnity or otherwise for amounts you paid due to leaks at the properties of others, please provide the name and contact information for your insured or person for whom you paid a claim. **(You must provide documentation and evidence of payment in order for your Claim to be complete.)**

Full Name: _____

Current Mailing Address: _____

City: _____   State: _____   Zip Code: _____

Daytime Phone Number: _____   Evening Phone Number: _____

Email: _____

### C.   HOMEOWNERS INSURANCE

If an insurance claim was made concerning the Qualifying Leak(s), then please identify the insurance company and provide the claim number: _____.

## III. IDENTIFICATION AND INSTALLATION OF TUBING, FITTINGS, and CLAMPS

### A.   DESCRIPTION OF NIBCO PEX TUBING, FITTINGS, and/or CLAMPS

Do not submit a Claim Form unless you have or had the Tubing, Fittings, and/or Clamps in your structure. You can access photos and a description of these products at www.AlabamaTexasPEXsettlement.com. Only covered NIBCO Products are eligible for relief under the terms of this Settlement. The Tubing, Fittings, and Clamps were used for a variety of applications including, without limitation, hot and cold water distribution in plumbing applications in residences. **Please note that the Tubing, Fittings, and Clamps at issue in this Settlement are likely no longer on the market. The Tubing was sold between 2005 and approximately 2013. The Fittings were sold between 2005 and approximately 2015. The Clamps were sold between August 2005 and approximately August 2015.**

### B. PROOF OF A COVERED PRODUCT

How have you determined that your structure contains or contained Tubing, Fittings, or Clamps?  (Check all that apply.)

_____  Leaked Tubing
_____  Leaked Fitting
_____  Leaked Clamp
_____  Inspection report
_____  Bills of sale, purchase orders
_____  Builder or plumbing records
_____  Correspondence identifying Tubing, Fittings, and/or Clamps in the property
_____  Report from plumber, engineer, architect or home inspector identifying Tubing, Fittings, and/or Clamps in the property.
_____  Builder, plumber or contractor letter stating upon personal knowledge that Tubing, Fittings, and/or Clamps were used in the property.
_____  Photographs
_____  Other Documentation (describe): _____

**Enclosures Required**:  For each document you checked above, please enclose a copy (not an original) with this completed Claim Form. When submitting samples or photographs of Covered Products, please ensure the identifying markings are clearly visible.

## IV. DESCRIPTION OF LOSS

**A.**   **Failed Product(s)**

1.   Which Covered Product(s) do you allege leaked (check all that apply)?

_____ Tubing

_____ Fitting(s)

_____ Clamp(s)

2.   Have you replaced the Product(s) that is/are the subject of the leak? _____ Yes   _____ No

3.   Have you repaired any alleged damage to your property as a result of the leak?
_____ Yes   _____ No

If Yes, describe the repairs and damage (if multiple leaks, describe repairs/damages for each leak):

_____

_____

       4.     List the approximate date that each alleged Qualifying Leak occurred and the **unreimbursed** amount that you spent on damages or repairing the leak:

Date:_____/_____/_____     Amount Paid Out-of-Pocket by You: $ _____

Date:_____/_____/_____     Amount Paid Out-of-Pocket by You: $ _____

Date:_____/_____/_____     Amount Paid Out-of-Pocket by You: $ _____

Date:_____/_____/_____     Amount Paid Out-of-Pocket by You: $ _____

*List additional leaks on another page, if needed.*

       5.     Have you been reimbursed for any replacement/repair costs from your insurance company or any other third party? _____ Yes _____ No

If Yes, state: Reimbursement Amount: $ _____

           Source of Reimbursement: _____

       6.     Do you have Covered Product(s) that experienced a leak on or after the Effective Date?

          _____ Yes _____ No

If yes, then please provide either a photograph of the failed Product(s) or a reason why a photograph is not available for submission.

If providing a photograph of the failed Product(s), check here _____.

If not providing a photograph of the failed Product(s), please explain the reason why not here:

_____

## V. RE-PLUMB CLAIMS

**Please fill out this section only if you have experienced Multiple Qualifying Leaks and are seeking, or have already completed, a re-plumb of the affected property.**

       1.     Identify the number of Qualifying Leaks that have occurred at your property: _____

       2.     Please select **one** option:

_____ I am requesting a re-plumb of, or reimbursement for a re-plumb of, the Tubing, Fittings, and/or Clamps in my structure and elect to use the Preferred Provider.  I agree to follow the procedures identified in the Settlement Agreement and the Statement of Work.

_____ I am requesting a re-plumb of, or reimbursement for a re-plumb of, the Tubing, Fittings, and/or Clamps in my structure and used or will use my own provider.

_____ I am requesting a one-time $3,000 payment in lieu of a re-plumb.

**If you <u>did not</u> select the one-time $3,000 payment option, then please complete the remainder of this Section:**

3.    Please provide the number of plumbing fixtures[2] in your home or building: _____

4.    Have you already completely re-plumbed your property as a result of the leak(s)?

_____ Yes _____ No

If Yes, describe: _____

_____

5.    For any work described above, please state the **unreimbursed** amount paid out-of-pocket by you:

$_____

**(you must submit invoice(s) and proof of payment to recover a re-plumb payment)**

6.    Have you been reimbursed for any re-plumb costs from your insurance company or any other third party? _____ Yes _____ No  If Yes, state:

Reimbursement Amount: $_____

Source of Reimbursement: _____

**Please note that if you are deemed eligible by the Settlement Administrator for a Re-Plumb Claim, or accept the one-time $3,000 payment instead of a re-plumb payment, you will no longer be eligible to make any Future Property Damage Claims or Re-Plumb Claims.**

## VI. WORK AUTHORIZATION

**By signing and returning this Claim Form, I accept the terms of the Settlement and authorize the Claims Administrator to schedule inspection, repairs, and/or a re-plumb of the property, as applicable.**

## VII. SETTLEMENTS

Have you entered into any oral or written settlement of the claims identified above, or received the benefit of any payments to you or on your behalf as a result of those claims? _____ Yes _____ No

If Yes, identify the other party or parties to the settlement: _____

If Yes, also state the date and amount of settlement:

---

[2] The Schedule of Qualifying Fixtures is available for reference on the Settlement Website under "Important Documents".

_____     $ _____
MM       DD       YYYY                        Amount of Settlement

If Yes, please attach a copy of the Release or Settlement Agreement, if any.

## VIII.  ADDITIONAL INFORMATION

If you have any additional information which you would like us to consider in evaluating your claim, please attach that information as a separate document.

## IX.  RELEASE, CERTIFICATION, AND AGREEMENT TO BE BOUND

I/we declare that the information that I/we have supplied in this Claim Form is true and correct to the best of my/our knowledge and belief and that this document is signed pursuant to 28 U.S.C. § 1746 under penalty of perjury.  By signing below, I/we hereby certify that I/we have read the Release in Paragraph 34 of the Settlement Agreement and agree to be bound by the Release and the terms of the Settlement Agreement.

_____          Date: _____
*Signature of Claimant*                                    MM       DD       YYYY

_____          Date: _____
*Signature of Claimant*                                    MM       DD       YYYY

**THIS FORM WILL BE USED BY THE SETTLEMENT ADMINISTRATOR TO DETERMINE YOUR ELIGIBILITY TO RECOVER UNDER THIS SETTLEMENT AND TO DETERMINE THE VALUE, IF ANY, OF YOUR SETTLEMENT RECOVERY.**

### ACCURATE CLAIMS PROCESSING TAKES TIME.

### THANK YOU FOR YOUR PATIENCE.

### REMINDER CHECKLIST

1.   Please check to make sure you have answered all of the questions on the Claim Form.

2.   Please sign and date under penalty of perjury.

3.   Remember to enclose copies of all required supporting documentation.

4.   Keep a copy of the completed Claim Form and supporting documentation for your records.

5.   If you desire an acknowledgment of receipt of your Claim Form, please use a form of mailing that will provide you with a return receipt.

6.   If you move, or if the Notice of Settlement was sent to you at an old or incorrect address, please provide us with your new mailing address.

7.   If you have any questions, contact the Settlement Administrator by calling 1-855-976-0649, by emailing info@AlabamaTexasPEXsettlement.com, or by writing to:

PEX System Settlement
ATTN: CLAIMS
1650 Arch Street, Suite 2210
Philadelphia, PA 19103

# EXHIBIT 2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

|  |  |
|---|---|
| DAVID MATSON, et al., Individually and on Behalf of All Similarly Situated,<br><br>      Plaintiffs,<br><br>V.<br><br>NIBCO INC.,<br><br>      Defendant. | CASE NO.  SA-19-CV-00717-JKP |

## NOTICE OF CLASS ACTION SETTLEMENT

*A federal court authorized this Notice. This is not a solicitation from a lawyer.*

**Attention:** **If (a) you owned or occupied a residential structure in certain Alabama and Texas cities set forth below, that contains or contained NIBCO 1006 Tubing ("Tubing"), NIBCO F1807 Fittings ("Fittings"), and/or NIBCO Stainless Steel Clamps ("Clamps")[1]; and/or (b) you paid for repairs or damages resulting from a Qualifying Leak from NIBCO Tubing, Fittings, or Clamps in such residential structures, then you should read this Notice of Class Action Settlement because you may be entitled to benefits from a class action settlement.**

- A settlement has been proposed in a class action lawsuit against Defendant NIBCO Inc. ("NIBCO") in which it was alleged that NIBCO PEX 1006 Tubing, NIBCO F1807 Fittings, and/or NIBCO Stainless Steel Clamps (the "Covered Products") are defective and can leak causing water damage. NIBCO denies these allegations and rejects the claim that there is anything wrong with these products, but has agreed to the settlement described in this Notice.

- If you are a Settlement Class Member (defined below), you may qualify for monetary benefits under the proposed Settlement for past or future reasonably proven and unreimbursed reasonable costs incurred in connection with: (a) the repair or replacement of the pertinent section(s) of Tubing, Fittings, and/or Clamps as a direct result of a Qualifying Leak (defined below); (b) the repair or replacement of other property damaged as a direct result of a Qualifying Leak; and (c) the material and labor costs reasonably

---

[1]The definition of any capitalized term not defined herein can be found in the Settlement Agreement which can be downloaded at the Settlement Website: www.AlabamaTexasPEXsettlement.com.

necessary to bring the residential or commercial structure and its contents back to the same finish and quality as existed before the Qualifying Leak. You may also qualify for a re-plumb remedy if you have experienced or experience Multiple Qualifying Leaks.

- The proposed Settlement has been preliminarily approved by the Court. This Notice provides information about the Litigation, the Settlement, and your options as a Settlement Class Member. Please read this Notice carefully because it affects your legal rights. A federal court authorized the sending of this Notice to you. This is not a solicitation.

| Your Legal Rights and Options In This Settlement | |
|---|---|
| **Submit a Claim Form** | To receive cash reimbursement for Reasonably Proven Property Damage due to a Qualifying Leak and/or a re-plumb remedy, you must submit a Claim Form by the deadlines described below and listed on the Settlement Website, www.AlabamaTexasPEXsettlement.com. |
| **Request Exclusion / Opt-Out Deadline: [INSERT]** | This option, described in detail below, allows you to sue or continue to sue NIBCO and certain others regarding claims that the Covered Products are defective. If you opt-out, you will not be bound by any of the terms of the Settlement but you will also not be entitled to submit a Claim Form for monetary benefits from the Settlement. |
| **Object Deadline: [INSERT]** | You are entitled to submit a written objection telling the Court what you do not like about the Settlement pursuant to the procedures described in detail below. You cannot request exclusion and object. |
| **Attend the Final Approval Hearing Scheduled for [INSERT]** | You are entitled to attend the Final Approval Hearing at which time the Court will consider whether to grant final approval of the Settlement. |
| **Do Nothing** | If you are a Settlement Class Member and do nothing, you will be bound by the terms of the Settlement if it is approved by the Court, whether or not you submit a Claim Form, and you will be subject to the release of claims set forth in the Settlement. |

- The date and time of the Final Approval Hearing is subject to modification by the Court so please check the Settlement Website at www.AlabamaTexasPEXsettlement.com for updates.

3310286.1

2

## 1.  WHY WAS THIS NOTICE ISSUED?

The United States District Court for the Western District of Texas, the federal court overseeing the Litigation and that preliminarily approved the Settlement, authorized this Notice to inform you about the Settlement and your options before it decides whether to grant final approval of the Settlement. Further information about the Settlement can be found at www.AlabamaTexasPEXsettlement.com.

## 2.  WHAT IS THE LAWSUIT ABOUT?

In this Litigation, the Plaintiffs alleged individual and class action claims against NIBCO asserting that the Covered Products are defective and prone to leak causing water damage. There are two class action lawsuits that are being settled. The term "Litigation" means *Matson v. NIBCO Inc.*, No. 19-cv-01137-RBF-JKP (W.D. Tex.), and *Garrett. v. NIBCO Inc.*, No. 19-cv-01137-RDP (D. Ala.).

NIBCO denies the claims and allegations in the Litigation, including that the Covered Products are defective. NIBCO further denies that it violated any law, engaged in any wrongdoing, or owes any liability in this case to Plaintiffs or anyone else. NIBCO is settling to avoid the expense, inconvenience, risk, and disruption of further litigation. The Settlement is not an admission of any liability.

The Court has not decided that NIBCO violated any laws. This Notice is not an expression of any opinion by the Court on the claims alleged in the Litigation.

**Please note that the Settlement does not include any claims for personal injury and does not release any such claims of Settlement Class Members to the extent such claims exist.**

## 3.  BACKGROUND OF THE LITIGATION

The original Complaint in the Litigation was filed on June 19, 2019.  During the litigation the Parties engaged in an alternative dispute resolution ("ADR") process which included protracted "arms-length" negotiations that ultimately led to a lengthy mediation session overseen by a professional mediator. Through this extensive process, which included ADR-related discovery, and further numerous communications among counsel for the Parties over the course of many months, the Parties finally reached the Settlement described and summarized in this Notice, and memorialized in the Settlement Agreement, which can be read at the Settlement Website, www.AlabamaTexasPEXsettlement.com.

## 4.  WHO IS INCLUDED IN THE SETTLEMENT?

The term "Settlement Class" is defined in the Settlement Agreement as:

> All Persons that own or have owned at any time since January 1, 2005, a residential structure constructed by: (a) D.R. Horton, Inc.-Birmingham (including, but not limited to, those for which the plumbing contracting was performed by or on behalf of Dupree Plumbing Co. Inc.) and which is located in the following

3310286.1

3

cities in Alabama:  Bella Vista; Bessemer; Birmingham; Calera; Chelsea; Cottondale; Hoover; Kimberly; Leeds; Maylene; McCalla; Montgomery; Northport; Odenville; Pinson; Pratville; Springville; Trussville; and Tuscaloosa; and/or (b) Continental Homes of Texas, L.P. (including, but not limited to, those for which the plumbing contracting was performed by or on behalf of Christianson Air Conditioning and Plumbing, LLC) and which is located in the following cities in Texas:  Boerne; Cibolo; Converse; Live Oak; Medina County; New Braunfels; Royse City; San Antonio; San Marcos; Schertz; Sequin; and Universal City, that contains or contained NIBCO's Tubing, Fittings, or Clamps, including with respect to both (a) and/or (b), their spouses, joint owners, heirs, executors, administrators, mortgagees, tenants, creditors, lenders, predecessors, successors, trusts and trustees, and assigns ("Occupant Persons"); as well as all Persons who have standing and are entitled to assert a claim on behalf of any such Occupant Persons, such as but not limited to a contractor, distributor, seller, subrogated insurance carrier, or other Person who has claims for contribution, indemnity or otherwise against NIBCO based on claims for Qualifying Leaks of the Tubing, Fittings, or Clamps with respect to such residential structures. The Settlement Class includes all Persons who subsequently purchase or otherwise obtain an interest in a property covered by this Settlement without the need of a formal assignment by contract or court order.  A list of the residential structures in Alabama and Texas included in the Settlement Class will be provided to the Settlement Administrator and made available on the Settlement Website.

Excluded from the Settlement Class are D.R. Horton, Inc.-Birmingham, Dupree Plumbing Co. Inc., Continental Homes of Texas, L.P., and Christianson Air Conditioning and Plumbing, LLC.

Also excluded from the Settlement Class is any Person (other than the named Plaintiffs in the Litigation) who, as of October 22, 2020, had pending litigation in any court or tribunal against NIBCO asserting claims based on a Covered Product.

Also excluded from the Settlement Class are: (i) NIBCO, its officers, directors, affiliates, legal representatives, employees, successors, and assigns, and entities in which NIBCO has a controlling interest; (ii) judges presiding over the Litigation; and (iii) local, municipal, state, and federal governmental entities.

The term "Tubing" means PEX tubing manufactured or sold by NIBCO in the United States using (or labeled by NIBCO as using) its 1006 formulation, including NIBCO NEXT-Pure Tubing, NIBCO DURA-PEX Tubing, and NIBCO PEX, during the time period from January 1, 2005 to the present, and used in residential or commercial structures. The term "Tubing" does not include any tubing that was manufactured or sold by NIBCO and that was used in industrial applications, irrigation applications, radiant heating applications, or international applications; as components in appliances; or in RVs.

The term "Fittings" means ASTM F1807 yellow brass fittings manufactured or sold by NIBCO in the United States for use in PEX applications during the time period from January 1, 2005 to the present, and used in residential or commercial structures. The term "Fittings" does not include any

fittings that were manufactured or sold by NIBCO and that were used in industrial applications, irrigation applications, radiant heating applications, or international applications; as components in equipment or appliances; or in RVs.

The term "Clamps" means stainless steel clamps manufactured or sold by NIBCO in the United States for use in PEX applications during the time period from January 1, 2005 to the present, and used in residential or commercial structures. The term "Clamps" does not include any clamps that were manufactured or sold by NIBCO and that were used in industrial applications, irrigation applications, radiant heating applications, or international applications; as components in equipment or appliances; or in RVs.

## 5.  HOW DO I KNOW IF MY RESIDENCE OR BUILDING HAS THESE PRODUCTS?

NIBCO PEX Tubing bears NIBCO's brand and the "1006" designation, among other identifying pieces of information. NIBCO's Fittings are stamped "NIBCO F 1807" and can be located at joints in the PEX tubing. The Fittings can be secured to the pipe by stainless steel Clamps.  The Settlement Website will include additional suggestions and pictures to help you identify the Tubing, Fittings, and Clamps.

The Tubing has not been manufactured since 2012, and the Fittings and Clamps have not been manufactured since 2015 (though most Fittings and Clamps were sold by the end of 2012).

## 6.  HOW MUCH IS THE TOTAL SETTLEMENT FUND?

If the Court grants final approval of the Settlement, NIBCO will pay money into a Settlement Fund to reimburse Eligible Claimants who submit a timely and valid Claim Form based upon their unreimbursed costs spent on repairs and damages resulting from Qualifying Leaks from the Covered Products (as further defined below) and to pay for re-plumb remedies for those who qualify as a result of the occurrence of Multiple Qualifying Leaks. The Settlement Fund will also be used to pay settlement administration costs.  The maximum amount that NIBCO will pay pursuant to the Settlement is Seven Million Six Hundred Fifty Thousand Dollars ($7,650,000.00). At the end of the Claim Period (defined as the time period from [INSERT DATE OF PRELIMINARY APPROVAL ORDER] to May 16, 2025), any portion of the Settlement Fund not used to pay Eligible Claimants will remain with or be returned to NIBCO.

## 7.  WHAT REMEDIES ARE AVAILABLE UNDER THE SETTLEMENT?

The Settlement shall provide the following remedies to Eligible Claimants who submit a valid and timely Claim Form to the Settlement Administrator:

**Past Property Damage Claims.**  Past Property Damage Claims are those that are based upon Qualifying Leaks that occurred between January 1, 2005 and the Effective Date. Such Claims must be submitted to the Settlement Administrator within 100 days after the Effective Date though the Settlement Administrator may extend the 100-day period for a particular Claimant upon a showing of good cause as determined by the Settlement Administrator.  An explanation in a Claim Form under oath reasonably demonstrating that the Claimant was precluded from submitting a

Claim Form due to circumstances beyond the Claimant's control shall constitute good cause. Eligible Claimants with Past Property Damage Claims shall receive an initial payment of 50% of their Reasonably Proven Property Damage with the potential for a supplemental payment up to 75% of their Reasonably Proven Property Damage. The Claimant must have taken reasonable steps to mitigate (*i.e.*, limit or stop) the effects of the Qualifying Leak.

**Future Property Damage Claims.** Future Property Damage Claims are those that are based upon Qualifying Leaks that occur after the Effective Date and before the end of the Claim Period. Such Claims must be submitted to the Settlement Administrator within 100 days after the Qualifying Leak occurs, though the Settlement Administrator may extend this 100-day period for a particular Claimant upon a showing of good cause as determined by the Settlement Administrator. An explanation in a Claim Form under oath reasonably demonstrating that the Claimant was precluded from submitting a Claim Form due to circumstances beyond the Claimant's control shall constitute good cause. Eligible Claimants with Future Property Damage Claims shall receive an initial payment of 50% of their Reasonably Proven Property Damage with the potential for a supplemental payment up to 75% of their Reasonably Proven Property Damage. The Claimant must have taken reasonable steps to mitigate (*i.e.*, limit or stop) the effects of the Qualifying Leak.

**Re-Plumb Claims for Claimants with Multiple Leaks.** An Eligible Claimant who demonstrates that their residential structure has experienced, or experiences before the end of the Claim Period, Multiple Qualifying Leaks, each one occurring in such a manner that replumbing all or part of the structure would mitigate future events, has the option of requesting a payment relating to a complete re-plumb of relevant PEX Tubing, Clamps, and Fittings. Such Claims must be submitted to the Settlement Administrator within 100 days after the Effective Date if the third Qualifying Leak occurred before the Effective Date, or otherwise must be submitted within 100 days after the third Qualifying Leak occurs, though the Settlement Administrator may extend these periods for a particular Claimant upon a showing of good cause as determined by the Settlement Administrator. An explanation in a Claim Form under oath reasonably demonstrating that the Claimant was precluded from submitting a Claim Form due to circumstances beyond the Claimant's control shall constitute good cause. The amount of the payment (the "Re-Plumb Calculation") shall be calculated at a rate of $722.50 per plumbing fixture present in the residential structure (e.g., the Re-Plumb Calculation for a home with 13 fixtures would be $9,392.50). Eligible Claimants shall receive an initial payment of 50% of the Re-Plumb Calculation with the potential for a supplemental payment up to 75% of the Re-Plumb Calculation. A schedule of qualifying fixtures and half-fixtures is attached to the Settlement Agreement and shall be used by the Settlement Administrator in determining the amount of an Eligible Claimant's Re-Plumb Calculation under this Paragraph and sub-parts. The Re-Plumb calculation shall also include calculation, where applicable and necessary, for replacement of the main water service line at a rate of $828.75.

- Class Counsel has identified and negotiated with Repipe Specialists of Texas to act as the preferred provider of re-plumbs for the Texas communities in the Settlement Class definition and MilesParker Group LLC to act as the preferred provider of re-plumbs in the Alabama communities in the Settlement Class definition (together, "Preferred Providers"). The Preferred Providers have performed numerous re-plumbs in the communities in the Settlement Class definition. The per-fixture rates provided for are

based on the favorable rates that Class Counsel has been able to negotiate with the Preferred Providers, who are ready and able to complete the re-plumbs in the respective communities in the Settlement Class at the amounts stated in the preceding paragraph. These rates reflect an approximate 15% discount on rates the Preferred Providers would charge homeowners in the geographic areas included in the Settlement Class and, thus, offer a further benefit to Settlement Class Members.

- An Eligible Claimant for a re-plumb is entitled, but not required, to select the Preferred Provider to perform the re-plumb; however, the rate of reimbursement for a re-plumb will be calculated based on the same rates of $722.50 per plumbing fixture rate and $828.75 per main water service line even if the Eligible Claimant chooses a service provider other than the Preferred Provider and that service provider charges more than the Re-Plumb Calculation set forth above. Eligible Claimants who select the Preferred Provider are required to follow the additional claim procedure set forth in the Settlement Agreement and explained on the Settlement Website.

- Eligible Claimants who have experienced, or experience during the Claim Period, Multiple Qualifying Leaks, each one occurring in such a manner that re-plumbing all or part of the structure would mitigate future events, have the option to select a cash payment of $3,000.00 in lieu of a re-plumb remedy in exchange for the Eligible Claimant's agreement that the Eligible Claimant(s) and their structure are no longer eligible to make any Future Property Damage Claims.

## 8.  WHAT IS THE DEFINITION OF A QUALIFYING LEAK?

The term "Qualifying Leak" means:

i.      With respect to Tubing: A physical escape of water from Tubing causing damage.

ii.     With respect to Fittings: A physical escape of water from a Fitting causing damage.

iii.    With respect to Clamps: A physical escape of water from a Clamp causing damage.

iv.     A Qualifying Leak does not occur where, based on the available evidence, the Settlement Administrator, NIBCO, and Co-Lead Class Counsel all agree that based on available evidence, a physical escape of water from a Covered Product causing damage was solely and exclusively the result of: (1) a penetration of the Tubing, Fittings, and/or Clamps from a foreign object such as a nail or other physical abuse; (2) improper attachment of the Tubing, Fittings, and/or Clamps to plumbing components or appliances; (3) improper stress on the Tubing, Fittings, and/or Clamps due to improper installation; (4) leaks due to an improperly set or malfunctioning pressure-reducing valve not manufactured or sold by NIBCO; (5) leaks due to age of fixture sealant components supplied or provided by a plumber; or (6) any installation issue in violation of NIBCO's installation guidelines and/or unrelated to the design, manufacture, performance, or selection of the Tubing, Fittings, and/or Clamps. If it is determined that a Qualifying Leak has not occurred because the physical escape of water causing damage was solely and exclusively the result of one or more of the causes set forth in (1) through (6) above with respect to a particular

Claimant, then that Claimant shall have the benefits of the carve-out of the release provisions in Paragraph 35 of the Settlement Agreement, subject to certain limited exceptions set forth in Paragraph 35, meaning that Claimant shall not be precluded by the Release from filing claims against its installer or third parties.

If a Claimant wishes to appeal the Settlement Administrator's rejection of a Claim on the basis of whether the Claim presents a Qualifying Leak, then the Claim will be submitted to an Independent Engineering Consultant appointed by the Court. The Claimant and NIBCO will both have the opportunity to present five-page statements and supporting materials to the Independent Engineering Consultant setting forth their position about whether the Claim should be deemed eligible or ineligible for compensation under the Settlement. NIBCO shall have the burden of establishing that a leak was not a Qualifying Leak if it initiates the challenge. The decision of the Independent Engineering Consultant shall be final.

## 9.  HOW DO I SUBMIT A CLAIM FORM?

To be eligible to receive any of the remedies described above, you must complete and submit a valid and timely Claim Form. The Claim Period ends on May 16, 2025.  Your Claim Form and supporting documentation may be submitted:

- online through the claim portal located on the Settlement Website, www.AlabamaTexasPEXsettlement.com;

- by email to the Settlement Administrator using the email address info@AlabamaTexasPEXsettlement.com; or

- by U.S. Mail to the Settlement Administrator using the address: Alabama Texas PEX Settlement, Attn: CLAIMS, 1650 Arch Street, Philadelphia, PA 19103.

Claim Forms are available for download at www.AlabamaTexasPEXsettlement.com, and are also available by email or by writing to the Settlement Administrator using the information above.

If the Qualifying Leak occurred between January 1, 2005 and the Effective Date, the deadline for submitting a Claim Form is 100 days after the Effective Date. If the Qualifying Leak is experienced after the Effective Date and during the Claim Period, the deadline for submitting a claim form is 100 days after the Qualifying Leak occurs. Re-Plumb Claims for those who have experienced or do experience Multiple Qualifying Leaks prior to the end of the Claim Period (see Question 7 above) must be submitted to the Settlement Administrator within 100 days after the Effective Date if the third Qualifying Leak occurred before the Effective Date, or otherwise must be submitted within 100 days after the third Qualifying Leak occurs.

Please check the Settlement Website at www.AlabamaTexasPEXsettlement.com for updates regarding the Effective Date and corresponding Claim Form Deadline dates. **In any event, please file your Claim Form as soon as possible.**

## 10.  WHAT ARE THE RELEASED CLAIMS?

**Release.** Upon the Effective Date, all Settlement Class Members, as well as any Person who receives any payment from the Net Settlement Fund, on behalf of themselves and their agents, heirs, executors and administrators, successors, assigns, insurers, attorneys, representatives, and any and all Persons who seek to claim through or in the name or right of any of them (but excluding any Persons who timely opted out of the Settlement with regard to the buildings or geographic scope for which they opted out) (the "Releasing Parties"), release and forever discharge (as by an instrument under seal without further act by any Person, and upon good and sufficient consideration), NIBCO, its administrators, insurers, reinsurers, agents, firms, parent companies/corporations, sister companies/corporations, subsidiaries and affiliates, and any sales agents and distributors, wholesalers, retailers, plumbers, homebuilders, developers, contractors, engineers, architects, and any other product or service provider or any other party in the chain of distribution who distributed, specified, recommended, sold, and/or installed the Tubing, Fittings, and/or Clamps, and all of the foregoing Persons' respective predecessors, successors, assigns and present and former officers, directors, shareholders, employees, agents, attorneys, and representatives (collectively, the "Released Parties"), from each and every claim of liability, on any legal or equitable ground whatsoever, including relief under federal law or the laws of any state, regarding or related to NIBCO's Tubing, Fittings, and/or Clamps, including without limitation their design, manufacture, purchase, use, marketing, promotions, sale, or certification, and including without limitation all past, present, or future claims, damages, or liability on any legal or equitable ground whatsoever, and regardless of whether such claims might have been or might be brought directly, or through subrogation or assignment or otherwise, on account of or related to the Tubing, Fittings, and/or Clamps, which were alleged or could have been alleged in the Complaints filed in the Litigation. The Release is as a result of membership as a Settlement Class Member, status as Releasing Parties, the Court's approval process herein, and the occurrence of the Effective Date, and is not conditional on receipt of payment by any particular member of the Settlement Class or Releasing Party. Without in any way limiting its scope, and, except to the extent otherwise specified in the Settlement Agreement, the Release covers by example and without limitation, any and all claims for reasonable attorneys' fees, costs, expert fees, consultant fees, interest, litigation fees, costs, or any other fees, costs, and/or disbursements incurred by any attorneys, Class Counsel, Plaintiffs, Settlement Class Members, or any Releasing Party who claim to have assisted in conferring the benefits under this Settlement upon the Settlement Class. This Settlement Agreement and the Release provided for herein shall not and are not intended to release the claims of the Releasing Parties against the suppliers of raw materials, components, or ingredients used in the manufacture of the Tubing, Fittings, and/or Clamps, which the Releasing Parties hereby fully and forever assign, transfer, and convey to NIBCO.  For purposes of any claims by NIBCO against the suppliers of raw materials, components, or ingredients used in the manufacture of the Tubing, Fittings, and/or Clamps, should such supplier seek to join any Releasing Party in such a claim, NIBCO shall defend, indemnify, and hold harmless the Releasing Party from any and all claims of any such supplier against the Releasing Party.

**Exclusions from Release**. All personal injury claims are expressly excluded from the Release; for the avoidance of doubt, however, claims for emotional distress and/or mental anguish are subject to the Release in Paragraph 34 and not part of this personal injury exclusion. In addition, subject to the terms of Paragraph 34, the Parties further agree that certain limited claims as specified

below, which a Releasing Party has brought or may in the future bring against an installer, plumber, homebuilder, contractor, or other product or service provider, or any other party in the chain of distribution who purchased, specified, recommended, sold, and/or installed the Tubing, Fittings, and/or Clamps, related solely and exclusively to the alleged faulty installation of the Tubing, Fittings, and/or Clamps, are expressly not released as to such Persons. This limited exception shall include only claims alleging that a party or parties other than NIBCO are wholly responsible for a leak of the Tubing, Fittings, or Clamps, including, without limitation, as a result of (1) a penetration of the Tubing, Fittings, and/or Clamps from a foreign object such as a nail or other physical abuse; (2) improper attachment of the Tubing, Fittings, and/or Clamps to plumbing components or appliances; (3) improper stress on the Tubing, Fittings, and/or Clamps due to improper installation; (4) leaks due to an improperly set or malfunctioning pressure-reducing valve not manufactured or sold by NIBCO; (5) leaks due to age of fixture sealant components supplied or provided by a plumber; or (6) any installation issue in violation of NIBCO's installation guidelines and/or unrelated to the design, manufacture, performance, or selection of the Tubing, Fittings, and/or Clamps. However, if a court finds, via dispositive motion or otherwise, that NIBCO was at least partially responsible, then this limited exception shall not apply and the claim is released under Paragraph 34. Nothing in this Paragraph shall permit any Releasing Party to bring any other claims released herein, including without limitation claims for improper, insufficient, or negligent advice, recommendation, solicitation, purchase, selection, or sale of the Tubing, Fittings, and/or Clamps, and in no event shall any claim whose prosecution is permitted by this Paragraph allege, purport to allege or depend on any wrongful act, error or omission, loss, or liability, whether strict, or due to fault or otherwise, by NIBCO. The Releasing Parties and NIBCO do not intend to create and do not believe that the reservation provided in this Paragraph creates any basis for a claim of indemnification, contribution, or any other claim, however denominated, by a nonparty against the Released Parties, with the exception that, as described in Paragraph 34, parties who opted out of the Settlement do not release their ability to assert indemnification, contribution, and any other claim however denominated against Released Parties. This provision is intended solely to preserve a Releasing Party's ability to seek relief against the non-released individuals or entities for liability unrelated to NIBCO as expressly specified in this Paragraph. In addition, the Releasing Parties agree that in any action brought by a Releasing Party alleging that a party or parties other than NIBCO are wholly responsible for a leak of the Tubing, Fittings, or Clamps, including, but not limited to, based on a leak that is not a Qualifying Leak, should any such third party sued by a Releasing Party file a claim or cause of action against any Released Party for contribution, indemnification, or any other claim, however denominated, arising out of or related to the Tubing, Fittings, and/or Clamps, the Releasing Parties shall hold NIBCO and the Released Parties harmless, agree to a judgment in NIBCO's and the Released Parties' favor dismissing all claims asserted by the Releasing Party or anyone claiming by, through, or under the Releasing Party, and to the extent that the claims against NIBCO or the Released Parties are not released, then reduce or remit any judgment against such third party by the percentage, amount, or share necessary under applicable law to fully discharge and relieve NIBCO and the Released Parties of liability to such third party for claims for contribution, indemnification, or any other claim, however denominated, including attorneys' fees and costs such Person may seek against NIBCO and the Released Parties. If a Releasing Party files a claim or cause of action against any third party alleging that a party or parties other than NIBCO are wholly responsible for a leak of the Tubing, Fittings, or Clamps, including, but not limited to, based on a leak that is not a Qualifying Leak, the Releasing Party must not include any claim or

allegation for design defects, manufacturing defects, marketing defects, or any other claim that is a "products liability action," as contemplated by Section 82.001(2) of the Texas Civil Practice and Remedies Code. The Releasing Party also must include the following language in the complaint, petition, or other document asserting the claim: "This is not a 'products liability action' as defined in Section 82.001(2) of the Texas Civil Practice & Remedies Code. The plaintiff does not allege design, manufacturing, or marketing defects in the plumbing system or any of its component parts. The plaintiff expressly waives any products liability action it may have associated with NIBCO's Tubing, Fittings, and/or Clamps. The plaintiff's claims are not product-based, but instead are based on services provided by the defendants. The plaintiff solely seeks damages resulting from the negligent installation of the plumbing system into the home." In any event, however, the Releasing Parties' obligation is limited to releasing, reducing, or remitting in an amount no more than the amount of the judgment against NIBCO or the Released Parties. If any third party sued by a Releasing Party obtains a judgment against NIBCO or any Released Party for contribution, indemnification, or any other claim, however denominated, the Releasing Party agrees that the Releasing Party shall reduce or remit its judgment against such third party by the amount of such third party's judgment against NIBCO and the Released Party not to exceed the amount of that portion of the judgment for which such third party obtains contribution, indemnification, or other relief, however denominated, so as to fully satisfy such third party's judgment against NIBCO and the Released Party including attorneys' fees and costs such third party may seek against NIBCO and the Released Party. In any settlement between any of the Releasing Parties and any Person arising out of or related to NIBCO's Tubing, Fittings, and/or Clamps, the Releasing Parties shall be deemed to have obtained a release in favor of all Released Parties.

## 11. WHO IS CLASS COUNSEL?

In its Preliminary Approval Order, the Court appointed Austin Tighe of Nix Patterson LLP; Robert E. Linkin of Munck Wilson Mandala, LLP; J. David Rowe of DuBois Bryant & Campbell LLP; Brandon J. Grable of Grable Grimshaw Mora; and Kirby D. Farris of Farris, Riley & Pitt, LLP, as Co-Lead Class Counsel to represent Plaintiffs and the Settlement Class Members. You will not be charged for these lawyers. If you wish to be represented by your own lawyer, you may hire one at your own expense. The contact information for Co-Lead Class Counsel is set forth below:

> Austin Tighe
> Nix Patterson, LLP
> 3600 N. Capital of Texas Highway, Suite B350
> Austin, Texas 78746
> (512) 328-5333
> atighe@nixlaw.com

> Robert E. Linkin
> Munck Wilson Mandala, LLP
> 2801 Via Fortuna, Suite 630
> Austin, Texas 78746
> (737) 201-1616
> rlinkin@munckwilson.com

> J. David Rowe

DuBois, Bryant 7 Campbell, LLP
303 Colorado Street, Suite 2300
Austin, Texas 78701
(512) 457-8000
drowe@dbcllp.com

Kirby Farris
Farris, Riley, & Pitt, LLP
The Financial Center
505 20th Street N., Suite 1700
Birmingham, Alabama 35203
kfarris@frplegal.com

## 12. CLASS COUNSEL'S ATTORNEYS' FEES AND COSTS.

Within the time period established by the Court and no later than thirty (30) days prior to the Objection and Opt Out Deadline, Class Counsel will file a Motion for Approval of Attorneys' Fees, Cost and Service Awards to be paid separately by NIBCO, meaning that it shall not be paid out of or deducted from, the $7,650,000.00 Class Settlement Fund. To be clear, no Settlement Class Member will pay any attorneys' fees for Class Counsel. NIBCO will pay Class Counsel's attorneys' fees. Class Counsel in the Litigation shall apply for the following: (a) attorneys' fees and reimbursement of costs not to exceed Two Million Three Hundred Thirty Thousand Dollars ($2,330,000) and (b) a service award of up to $10,000 for Plaintiffs David and Barbara Matson (which represents a per-household limitation) and up to $10,000 for Plaintiff Yolanda Garrett in recognition of their time, costs, and effort in the Litigation. These amounts will be paid separately by NIBCO, meaning that these amounts shall not be paid out of or deducted from the $7,650,000.00 Class Settlement Fund.

## 13. HOW DO I OPT OUT OF THE SETTLEMENT?

Settlement Class Members may submit a Request for Exclusion from (*i.e.*, "opt-out" of) the Settlement to preserve their own individual rights to sue or continue to sue NIBCO and certain others with respect to the Covered Products. A member of the Settlement Class who timely and validly submits a Request for Exclusion cannot object to the Settlement and is not eligible to receive any Settlement Payment.

To validly request exclusion from the Settlement Class, a member of the Settlement Class must submit a written request to opt out to the Settlement Administrator so that it is postmarked by the [INSERT Objection and Opt-Out Deadline] stating that "I wish to exclude myself from the Settlement Class in the NIBCO Litigation Class Action Settlement" (or substantially similar clear and unambiguous language). That written request shall contain the Settlement Class member's printed name, address, telephone number, email address, and date of birth. The Request for Exclusion must contain the actual written signature of the Settlement Class member seeking to exclude himself or herself from the Settlement Class. Requests for Exclusion cannot be made on a group or class basis, except that joint owners of the same residence or structure may opt out by using the same form so long as it is individually signed by each joint owner.

All Requests for Exclusion must be sent to the Settlement Administrator at the following address: **Class Action Opt-Outs, Attn: Alabama Texas PEX Settlement, 1650 Arch Street, Philadelphia, PA 19103**.

Those Persons falling within the definition of the Settlement Class as "Persons who have standing and are entitled to assert a claim on behalf of any such Occupant Persons" need not file a separate Request for Exclusion for each residential structure for which they meet this definition so long as they identify each such structure for which they are opting out in their Request for Exclusion; provided, however, that any such Persons cannot opt out for purposes of some structures but remain in the Settlement Class for others.

Any Settlement Class Member who does not submit a valid and timely written Request for Exclusion shall be bound by all subsequent proceedings, orders and judgments in this Litigation, including, but not limited to, the Release, the Final Approval Order, and the Final Judgment, even if such Settlement Class Member has litigation pending, or subsequently initiates litigation, against NIBCO or any Released Party relating to the Released Claims.

## 14. HOW TO OBJECT TO THE SETTLEMENT?

Any Settlement Class Member *who does not submit a written Request for Exclusion* may present a written objection to the Settlement explaining why he or she believes that the Settlement Agreement should not be approved by the Court. A Settlement Class Member who wishes to submit an objection must deliver to the Settlement Administrator so that it is postmarked by [INSERT Objection and Opt-Out Deadline], a detailed written statement of the objection(s) and the aspect(s) of the Settlement being challenged, as well as the specific reasons, if any, for each such objection, including any evidence and legal authority that the Settlement Class Member wishes to bring to the Court's attention. All written Objections must be sent to the Settlement Administrator at the following address: **Class Action Objections, Attn: Alabama Texas PEX Settlement, 1650 Arch Street, Philadelphia, PA 19103**.

That written statement must contain (a) the Settlement Class Member's printed name, address, telephone number, and date of birth; (b) evidence showing that the objector is a Settlement Class Member, including the address of the residence or structure that contains or contained a Covered Product and proof that the residence or structure contains or contained a Covered Product (photographs, contemporaneous installation records, *etc.*); (c) any other supporting papers, materials, or briefs that the Settlement Class Member wishes the Court to consider when reviewing the objection; (d) the actual written signature of the Settlement Class Member making the objection; and (e) a statement whether the objecting Settlement Class Member and/or his or her counsel intend to appear at the Final Approval Hearing. If a Settlement Class Member or counsel for the Settlement Class Member who submits an objection to this Settlement has objected to a class action settlement on any prior occasion, the objection shall also disclose all cases in which they have filed an objection by caption, court and case number, and for each case, the disposition of the objection.

A Settlement Class Member may object on his or her own behalf or through an attorney; however, even if represented, the Settlement Class Member must individually sign the objection and all

attorneys who are involved in any way asserting objections on behalf of the Settlement Class Member must be listed on the objection papers. <u>Counsel for the Parties may take the deposition of any objector prior to the Final Approval Hearing in a location convenient for the objector.</u>

Any objector who files and serves a timely written objection as described above may appear at the Final Approval Hearing, either in person at their own expense or through personal counsel hired at the objector's expense, to object to the fairness, reasonableness, or adequacy of any aspect of the Settlement on the basis set forth in his or her objection. As noted above, objectors or their attorneys who intend to make an appearance at the Final Approval Hearing must state their intention to appear in the objection delivered to the Settlement Administrator.

## 15. WHEN AND WHERE IS THE FINAL APPROVAL HEARING?

The Court will hold a Final Approval Hearing on [Hearing Date] at [XX:XX a.m./p.m.], at the United States District Court for the Western District of Texas at 655 E. Cesar E. Chavez Blvd., San Antonio, Texas 78206, in Courtroom [INSERT], before Judge Jason K. Pulliam, to consider whether the Settlement is fair, adequate, and reasonable, and whether it should be finally approved. If there are objections, the Court will consider them at that time. The Court will also consider at this time Class Counsel's Motion for Attorneys' Fees, Costs and Service Awards.

**Important:** The date and time of the Final Approval Hearing is subject to modification by the Court so please check the Settlement Website at www.AlabamaTexasPEXsettlement.com for updates.

Please note that Class Counsel is working on your behalf and will answer any questions that the Court may have about the Settlement. You are welcome to attend the Final Approval Hearing but your appearance is not necessary to receive any benefits available under the Settlement.

## 16. HOW DO I GET MORE INFORMATION?

This Notice only summarizes the Settlement. The full Settlement Agreement and Exhibits (including copies of this Notice and the Claim Form) are located on the Settlement Website, www.AlabamaTexasPEXsettlement.com.

If you need more information or have any questions, you may contact the Settlement Administrator via the Settlement Website, www.AlabamaTexasPEXsettlement.com, by toll-free telephone at 1-855-976-0649, or by email at info@AlabamaTexasPEXsettlement.com.

**PLEASE DO NOT WRITE OR CALL THE COURT, THE CLERK OF THE COURT, NIBCO, OR COUNSEL FOR NIBCO FOR INFORMATION ABOUT THE SETTLEMENT OR THIS LAWSUIT.**

# EXHIBIT 3

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | |
|---|---|
| DAVID MATSON, *et al*, Individually and on Behalf of All Similarly Situated,<br><br>     Plaintiffs,<br><br>V.<br><br>NIBCO INC.,<br><br>     Defendant. | CASE NO.  SA-19-CV-00717-JKP |

**[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL TO CLASS ACTION
SETTLEMENT, PROVISIONALLY CERTIFYING SETTLEMENT CLASS,
DIRECTING NOTICE TO THE SETTLEMENT CLASS,
AND SCHEDULING FINAL APPROVAL HEARING**

Plaintiffs in the above-captioned litigation ("Plaintiffs") and Defendant NIBCO Inc. ("NIBCO" or "Defendant"), have participated in mediation and executed a proposed Settlement Agreement (the "Settlement Agreement" or "Settlement"). Pursuant to the Settlement Agreement, Plaintiffs have moved for entry of an order granting preliminary approval of the Settlement.

The Court hereby adopts and incorporates the terms of the Settlement Agreement for the purposes of this Preliminary Approval Order, including the Definitions set forth in the Settlement Agreement. A copy of the Settlement Agreement has been filed with the Court and is also located at the Settlement Website, www.AlabamaTexasPEXsettlement.com.

Having reviewed the Settlement Agreement and considered the submissions in support of preliminary approval of the Settlement, the Court now orders as follows:

**I.      CERTIFICATION OF SETTLEMENT CLASS**

The Settlement Agreement provides for a class action settlement of the claims alleged in this Litigation. The Court has considered the:

(1) allegations, information, arguments, and authorities provided by the Parties in connection with the pleadings previously filed in this case;

(2) information, arguments, and authorities provided by Plaintiffs in their brief in support of their motion for entry of an order granting preliminary approval to the Settlement;

(3) the terms of the Settlement Agreement, including, but not limited to, the definition of the Settlement Class and the benefits to be provided to the Settlement Class; and

(4) the Settlement's elimination of any potential manageability issue that may otherwise have existed if the Litigation continued to be litigated.

Based on those considerations, the Court hereby finds as follows for settlement purposes only at this time:

A.      That the prerequisites for a class action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure have been satisfied. The Court finds, in the specific context of this Settlement, that the following requirements are met: (a) the number of Settlement Class Members is in the thousands and is so numerous that joinder of all Settlement Class Members is impracticable; (b) there are questions of law and fact common to the Settlement Class Members; (c) Plaintiffs' claims are typical of the claims of the Settlement Class Members they seek to represent for purposes of the Settlement; (d) Plaintiffs and Class Counsel have fairly and adequately represented the interests of the Settlement Class and will continue to do so; (e) questions of law and fact common to the Settlement Class Members predominate over any questions affecting any individual Settlement Class Member; and (f) a class action provides a fair and efficient method for settling the controversy under the criteria set forth in Rule 23.

B.      The Court also concludes that, because the Litigation is being settled rather than litigated, the Court need not consider manageability, efficiency, or judicial economy issues that might otherwise be presented by the trial of a class action involving the issues in the Litigation.

C.      Pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), the Court hereby provisionally certifies the following Settlement Class for settlement purposes only:

> All Persons that own or have owned at any time since January 1, 2005, a residential structure constructed by: (a) D.R. Horton, Inc.-Birmingham (including, but not limited to, those for which the plumbing contracting was performed by or on behalf of Dupree Plumbing Co. Inc.) and which is located in the following cities in Alabama:  Bella Vista; Bessemer; Birmingham; Calera; Chelsea; Cottondale; Hoover; Kimberly; Leeds; Maylene; McCalla; Montgomery; Northport; Odenville; Pinson; Pratville; Springville; Trussville; and Tuscaloosa; and/or (b) Continental Homes of Texas, L.P. (including, but not limited to, those for which the plumbing contracting was performed by or on behalf of Christianson Air Conditioning and Plumbing, LLC) and which is located in the following cities in Texas:  Boerne; Cibolo; Converse; Live Oak; Medina County; New Braunfels; Royse City; San Antonio; San Marcos; Schertz; Sequin; and Universal City, that contains or contained NIBCO's Tubing, Fittings, or Clamps, including with respect to both (a) and/or (b), their spouses, joint owners, heirs, executors, administrators, mortgagees, tenants, creditors, lenders, predecessors, successors, trusts and trustees, and assigns ("Occupant Persons"); as well as all Persons who have standing and are entitled to assert a claim on behalf of any such Occupant Persons, such as but not limited to a contractor, distributor, seller, subrogated insurance carrier, or other Person who has claims for contribution, indemnity or otherwise against NIBCO based on claims for Qualifying Leaks of the Tubing, Fittings, or Clamps with respect to such residential structures. The Settlement Class includes all Persons who subsequently purchase or otherwise obtain an interest in a property covered by this Settlement without the need of a formal assignment by contract or court order.  A list of the residential structures in Alabama and Texas included in the Settlement Class will be provided to the Settlement Administrator and made available on the Settlement Website.
>
> Excluded from the Settlement Class are D.R. Horton, Inc.-Birmingham, Dupree Plumbing Co. Inc., Continental Homes of Texas, L.P., and Christianson Air Conditioning and Plumbing, LLC.
>
> Also excluded from the Settlement Class is any Person (other than the named Plaintiffs in the Litigation) who, as of October 22, 2020, had pending litigation in any court or tribunal against NIBCO asserting claims based on a Covered Product.

Also excluded from the Settlement Class are: (i) NIBCO, its officers, directors, affiliates, legal representatives, employees, successors, and assigns, and entities in which NIBCO has a controlling interest; (ii) judges presiding over the Litigation; and (iii) local, municipal, state, and federal governmental entities.

D.     Plaintiffs David Matson, Barbara Matson, and Yolanda Garrett are appointed as the Class Representatives of the Settlement Class.

E.     Austin Tighe of Nix Patterson LLP; Robert E. Linkin of Munck Wilson Mandala, LLP; J. David Rowe of DuBois Bryant & Campbell LLP; Brandon J. Grable of Grable Grimshaw Mora; and Kirby D. Farris of Farris, Riley & Pitt, LLP are appointed as Co-Lead Class Counsel.

## II.     **PRELIMINARY APPROVAL OF THE TERMS OF THE SETTLEMENT**

A.     The Settlement requires NIBCO to make payments up to the aggregate amount of Seven Million Six Hundred Fifty Thousand Dollars ($7,650,000.00) (the "Class Settlement Fund") into an interest-bearing account ("the Settlement Escrow Account").

B.     On a preliminary basis, the Settlement appears sufficiently fair, reasonable, and adequate to authorize dissemination of notice to the Settlement Class as set forth in the Settlement Agreement, taking into account the factors required by the _Reed_ test of the 5th Circuit and Federal Rule of Civil Procedure 23(e)(2), which are including but not limited to: (1) the value and certainty of the benefits to be provided by the Settlement to Settlement Class Members who submit valid and timely Claim Forms; (2) the defenses asserted by NIBCO; (3) the risks to Plaintiffs and Settlement Class Members that NIBCO would successfully defend against class certification and/or against the merits of the claims alleged in this Litigation, whether litigated by Settlement Class Members themselves or on their behalf in a class action; (4) the length of time that would be required for Settlement Class Members or any of them to obtain a final judgment through one or

more trials and appeals, and (5) the equality of treatment of Settlement Class Members relative to one another.

       C.     Moreover, the Court finds on a preliminary basis that the Settlement falls within the range of reasonableness because the Settlement has key indicia of fairness, in that (1) the Parties have reached the Settlement investigating the strengths and weaknesses of the claims, (2) the extensive negotiations were contentious, arm's-length, and facilitated by professional mediator Ross Hart, Esq., (3) there is no evidence of collusion in reaching this Settlement; and (4) the proponents of the Settlement are experienced in similar litigation.

       D.     Accordingly, the Settlement is hereby preliminarily approved.

**III.**    **APPOINTMENT OF THE SETTLEMENT ADMINISTRATOR AND APPROVAL OF NOTICE PLAN**

As set forth in the Settlement Agreement, the Parties have submitted a proposed Notice Plan, including, without limitation, a Notice of Settlement and Claim Form, a Cover Letter, a proposed short form publication notice, provisions for providing notice of the Settlement through digital media, and a Settlement Website, www.AlabamaTexasPEXsettlement.com. Having reviewed each, the Court finds and concludes as follows:

       A.     The notices attached as Exhibits to the Settlement Agreement fairly, accurately, and reasonably inform Settlement Class Members of: (1) appropriate information about the nature of this Litigation and the essential terms of the Settlement Agreement; (2) appropriate information about how to obtain additional information regarding this matter and the Settlement, in particular, through the Settlement Website, www.AlabamaTexasPEXsettlement.com; and (3) appropriate information about how to object to, or exclude themselves from, the Settlement if they wish to do so. The Settlement Notice also fairly and adequately informs Settlement Class Members that if they do not comply with the specified procedures and the deadline for objections, they will lose

any opportunity to have any objection considered at the Final Approval Hearing or to otherwise contest approval of the Settlement or appeal from any order or judgment entered by the Court in connection with the Settlement.

B.      The Notice of Settlement and Claim Form, the short form publication notice, and the other notice methods described in the Notice Plan as set forth in the Settlement Agreement satisfy the requirements of due process; Rule 23 of the Federal Rules of Civil Procedure; and the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, and any other applicable laws. The notice methods described above constitute the best notice practicable under the circumstances, and this Court finds that they shall constitute due and sufficient notice to all persons entitled thereto.

C.      Accordingly, the Court hereby approves the proposed Notice Plan and orders that the form and content of the proposed Notice of Settlement, the Cover Letter, the short form publication notice, and the Claim Form are hereby approved, and shall be provided to the Settlement Class by the Settlement Administrator as set forth in the Settlement Agreement.

D.      Defendant shall notify the appropriate Federal and State officials under the Class Action Fairness Act of 2005 and 28 U.S.C. § 1715. Proof of compliance will be filed with the Motion for Final Approval.

E.      Angeion Group, LLC ("Angeion") is hereby appointed by the Court as the Settlement Administrator, whose reasonable fees and costs are to be paid from the Class Settlement Fund in accordance with the Settlement Agreement.

F.      The Settlement Administrator shall perform and comply with all notice and administration duties ascribed to it in the Settlement Agreement, this Preliminary Approval Order, and subsequent orders that may be entered by this Court in this case.

## IV.   REQUESTS FOR EXCLUSION AND OBJECTIONS

A.      All Settlement Class Members have the right to either opt out of or object to the Settlement pursuant to the procedures and schedule set forth in the Settlement Agreement, which is also set forth in the Notice of Settlement and on the Settlement Website at www.AlabamaTexasPEXsettlement.com.

B.      A member of the Settlement Class who submits a timely and valid Request for Exclusion cannot object to the Settlement and is not eligible to receive a Settlement Payment.

1.      To validly request exclusion from the Settlement Class, a Settlement Class Member must submit a written Request for Exclusion to the Settlement Administrator so that it is postmarked by the date seventy-five (75) days after the Preliminary Approval Date, stating that "I wish to exclude myself from the Settlement Class in the NIBCO Litigation Class Action Settlement" (or substantially similar clear and unambiguous language). That written request shall contain the Settlement Class Member's printed name, address, telephone number, email address, and date of birth. The Request for Exclusion must contain the actual written signature of the Settlement Class Member(s) seeking to exclude himself, herself or themselves from the Settlement Class.

2.      Requests for Exclusion cannot be made on a group or class basis, except that joint owners of the same structure may opt out by using the same form so long as it is individually signed by each joint owner.

3.      Those Persons falling within the definition of the Settlement Class as "Persons who have standing and are entitled to assert a claim on behalf of any such Occupant Persons" need not file a separate Request for Exclusion for each structure for which they meet this definition so long as they identify each such structure for which they are opting out in their Request

for Exclusion; provided, however, that any such Persons cannot opt out for purposes of some structures but remain in the Settlement Class for others.

4.     Any Settlement Class Member who does not submit a valid and timely written Request for Exclusion shall be bound by all subsequent proceedings, orders and judgments in this Litigation, including, but not limited to, the Release, the Final Approval Order, and the Final Judgment, even if such Settlement Class Member has litigation pending, or subsequently initiates litigation, against any Released Party relating to the Released Claims.

5.     Any statement or submission purporting or appearing to be both an objection and opt-out shall be treated as a Request for Exclusion.

C.     Any Settlement Class Member who does not submit a written Request for Exclusion may present a written objection to the Settlement explaining why he or she believes that the Settlement Agreement should not be approved by the Court as fair, reasonable and adequate. A Settlement Class Member who wishes to submit an objection must deliver to the Settlement Administrator so that it is postmarked by the date seventy-five (75) days after the Preliminary Approval Date, a detailed written statement of the objection(s) and the aspect(s) of the Settlement being challenged, as well as the specific reasons, if any, for each such objection, including any evidence and legal authority that the Settlement Class Member wishes to bring to the Court's attention.

1.     That written statement shall contain: (a) the Settlement Class Member's printed name, address, telephone number, and date of birth; (b) evidence showing that the objector is a Settlement Class Member including the address of the structure that contains or contained a Covered Product and proof that the residence or structure contains or contained a Covered Product (photographs, contemporaneous installation records, *etc.*); (c) any other supporting papers,

materials, or briefs that the Settlement Class Member wishes the Court to consider when reviewing the objection; (d) the actual written signature of the Settlement Class Member making the objection; and (e) a statement whether the objecting Settlement Class Member and/or his or her counsel intend to appear at the Final Approval Hearing.

> 2.     A Settlement Class Member may object on his or her own behalf or through an attorney, however, even if represented, the Settlement Class Member must individually sign the objection and all attorneys involved must be listed on the objection papers.

> 3.     Counsel for the Parties may take the deposition under oath of any objector prior to the Final Approval Hearing in a location convenient for the objector on a date which is reasonably convenient for all parties and counsel involved.

> 4.     Any objector who files and serves a timely written objection may appear at the Final Approval Hearing, either in person at their own expense or through personal counsel hired at the objector's expense, to object to the fairness, reasonableness, or adequacy of any aspect of the Settlement on the basis set forth in his or her objection if they expressly state in their objection that they or their counsel intend to appear at the Final Approval Hearing.

> 5.     Any Settlement Class Member who fails to comply with these requirements shall waive and forfeit any and all rights that he, she, or it may have to appear separately and/or to object to the Settlement, and shall be bound by all the terms of the Settlement Agreement and by all proceedings, orders and judgments in the Litigation, including, but not limited to, the Release, the Final Approval Order, and the Final Judgment, even if such Settlement Class Member has litigation pending or subsequently initiates litigation, against any Released Party relating to the Released Claims.

6.      If a Settlement Class Member or counsel for the Settlement Class Member has objected to a class action settlement on any prior occasion, the objection shall also disclose all cases in which they have filed an objection by caption, court and case number, and for each case, the disposition of the objection.

## V.      FINAL APPROVAL HEARING

The Court hereby schedules a Final Approval Hearing at ____:____  ___.m. on _____, 2021, which date is approximately (and no less than) 105 days after the Preliminary Approval Date, to determine whether the certification of the Settlement Class, the designation of Plaintiffs as Class Representatives, the appointment of Co-Lead Class Counsel, and the Settlement should receive final approval. At that time, the Court will also consider Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards, which shall be filed at least thirty (30) days before the Objection and Opt-Out deadline, and posted on the Settlement Website, www.AlabamaTexasPEXsettlement.com.  Plaintiffs' Motion for Final Approval of the Settlement shall be filed ten (10) days before the Final Approval Hearing. The Final Approval Hearing may be postponed or rescheduled by order of the Court without further notice to the Settlement Class, but any rescheduled date will be posted on the Settlement Website, www.AlabamaTexasPEXsettlement.com, and available through the Settlement toll-free number.

## VI.      SETTLEMENT ESCROW ACCOUNT

A.      The Court hereby approves the establishment of the Settlement Escrow Account.

B.      The Settlement Escrow Account shall be governed by the terms set forth in the Escrow Agreement and Section 468B-1 through 468B-5 of the Treasury Regulations to maintain the Settlement Escrow Account as a "qualified settlement fund," and the Parties agree to work in good faith to maintain such status.

C.     The Court shall retain continuing jurisdiction over the Settlement Escrow Account, pursuant to Section 468B-1(c)(1) of the Treasury Regulations.

D.     The Settlement Escrow Account is to be established to resolve or satisfy one or more claims that have resulted or may result from an event that has occurred and that has given rise to at least one claim asserting liabilities.

E.     The assets of the Settlement Escrow Account are to be segregated from other assets of NIBCO, the transferor of the payments to the Settlement Escrow Account.

F.     Under the "relation back" rule provided under Section 468B-1(j)(2)(i) of the Treasury Regulations, the Court finds that NIBCO and the Settlement Administrator may jointly elect to treat the Settlement Escrow Account as coming into existence as a "qualified settlement fund" on the latter of the date the Settlement Escrow Account meets the requirements of Paragraph VI. of this Preliminary Approval Order or January 1 of the calendar year in which all of the requirements of Paragraph VI. of this Preliminary Approval Order are met. If such a relation-back election is made, the assets held in the Settlement Escrow Account on such date shall be treated as having been transferred to the Settlement Escrow Account on that date.

## VII.   STAY OF PROCEEDINGS

Pending final determination of whether the Settlement should be approved, Plaintiffs, all other Settlement Class Members, and each of them, and anyone who acts or purports to act on their behalf, shall not institute, commence, or prosecute any action that asserts Released Claims against any Released Party in any court or tribunal, unless they file a timely and valid Request for Exclusion from the Settlement.  Pending the Final Approval Hearing, the Court hereby also stays all proceedings in this case, other than those proceedings necessary to carry out or enforce the terms and conditions of the Settlement Agreement. Pursuant to 28 U.S.C. §§ 1651(a) and 2283,

the Court finds that issuance of this preliminary injunction is necessary and appropriate in aid of the Court's continuing jurisdiction and authority over this action.

## VIII.   OTHER PROVISIONS

A.     In the event that the Settlement Agreement is not finally approved by the Court or does not reach the Effective Date, or the Settlement Agreement is terminated pursuant to its terms for any reason, the Parties reserve all of their rights, including the right to continue with the Litigation and all claims and defenses pending at the time of the Settlement, including with regard to any effort to certify a litigation class. All of the following also shall apply:

1.     All orders and findings entered in connection with the Settlement Agreement shall become null and void and have no force and effect whatsoever, shall not be used or referred to for any purposes whatsoever, and shall not be admissible or discoverable in this or any other proceeding.

2.     The provisional certification of the Settlement Class pursuant to this Preliminary Approval Order shall be vacated automatically, and the Litigation shall proceed as though the Settlement Class had never been certified and such findings had never been made.

3.     Nothing contained in this Preliminary Approval Order is to be construed as a presumption, concession, or admission by or against NIBCO or Plaintiffs of any default, liability, or wrongdoing as to any facts or claims alleged or asserted in the action, or in any actions or proceedings, whether civil, criminal or administrative, including, but not limited to, factual or legal matters relating to any effort to certify the action as a class action.

4.     Nothing in this Preliminary Approval Order or pertaining to the Settlement Agreement, including any of the documents or statements generated or received pursuant to the claims administration process, shall be used as evidence in any further proceeding in this case or

any other litigation or proceeding, including, but not limited to, motions or proceedings seeking treatment of the action as a class action.

> 5.     All of the Court's prior orders having nothing whatsoever to do with Settlement Class certification shall, subject to this Preliminary Approval Order, remain in force and effect.

B.     Co-Lead Class Counsel and Counsel for NIBCO are hereby authorized to use all reasonable procedures in connection with approval and administration of the Settlement that are not materially inconsistent with this Preliminary Approval Order or the Settlement Agreement, including making, without further approval of the Court, minor changes to the Settlement Agreement, to the form or content of the Settlement Notice, or to the form or content of any other exhibits attached to the Settlement Agreement, that the Parties jointly agree are reasonable or necessary, and which do not limit the rights of Settlement Class Members under the Settlement Agreement.

C.     This Court shall maintain continuing jurisdiction over these Settlement proceedings to assure the effectuation thereof for the benefit of the Settlement Class.

IT IS SO ORDERED.


Dated: _____, 202_


_____
Jason K. Pulliam, U.S.D.J.

# EXHIBIT 4

## Exhibit 4

### Schedule of Qualifying Fixtures and Half-Fixtures for Re-Plumb Claims

A "Fixture" is serviced by both a hot and cold water line, and includes:

1. Tub/Shower Combinations
2. Shower only
3. Tub Only
4. Sink
5. Water Heater
6. Washing Machine
7. Water Softener Loop
8. Recirculating System
9. External Transition Point (defined below)

A "Half-Fixture" is serviced by either a hot water line or cold water line, and includes:

1. Pot filler
2. Water Closet/Toilet
3. Refrigerator/Ice Maker
4. Exterior Hose Bibs
5. Internal Transition Point (defined below)

A dishwasher hookup is not counted as either a Fixture or Half-Fixture and does not need to be replaced as part of a re-plumb.

The following guidelines shall be used to distinguish between an Internal Transition Point and an External Transition Point and to determine how each will be connected to the structure's PEX plumbing system:

**1.     Internal Transition Point** - That point where the main service line enters the residence through an exterior wall or rises above the interior basement floor, first floor, or the slab, and connects to the interior PEX plumbing system at either the hot water heater, a fitting, a fixture, a shut-off valve, a pressure reducing valve, a manifold, or a water meter.

**2.     External Transition Point** - That point where the main service line connects to the PEX plumbing system at a valve, or manifold, or location at or within 10 feet of the outside perimeter of the structure's foundation.

**3.     Tie-In to Transition Point** – Any connection to an Internal or External Transition Point shall be undertaken so that no Covered Products remain, whether or not reasonably accessible, and shall conform to all applicable codes and standards.  The Re-plumb contemplated in this Settlement Agreement includes any necessary work to complete the tie-in to an Internal Transition Point as part of the Half-Fixture cost or an External Transition Point as a part of the Fixture cost.

4.     **New Yard Service Line** – In the event that the City and/or County Inspectors mandate a new/replacement service water line at any residence, the transition point is further than 10 feet from the outside perimeter of the foundation, or the transition point cannot be located after reasonable effort, a New Yard Service Line shall be installed.

# EXHIBIT 5

## PREFERRED PROVIDER AGREEMENT

This Preferred Provider Agreement dated December 21, 2020 ("Provider Agreement"), is made between Repipe Specialists of Texas ("Repipe Specialists") and Angeion Group (the "Settlement Administrator").

### Recitals

A.      This Provider Agreement governs the re-plumb services and payment for those re-plumb services pursuant to the Settlement Agreement dated December INSERT, 2020, and attached hereto as Exhibit A ("Settlement Agreement"), entered into by, among others, NIBCO and Co-Lead Class Counsel, to settle the class actions captioned *Matson v. NIBCO Inc.*, No. 19-cv-01137-RBF-JKP (W.D. Tex.), and *Garrett. v. NIBCO Inc.*, No. 19-cv-01137-RDP (D. Ala.) (collectively, the "Litigation").

B.      The Settlement Agreement will be submitted to the United States District Court for the Western District of Texas (the "Court") for approval.

C.      Pursuant to the terms of the Settlement Agreement and subject in all respects to the limitations and conditions set forth therein, NIBCO has agreed to pay or cause to be paid up to Seven-Million Six Hundred Fifty Thousand Dollars and 00/100 ($7,650,000) (the "Class Settlement Fund") into a Settlement Escrow Account (as defined in Paragraph 1.qq. of the Settlement Agreement) in settlement of the Litigation.

D.      The Net Settlement Fund (as defined in Paragraph 1.w. of the Settlement Agreement), together with any interest accrued thereon, is to be used to satisfy the payment of relief under the Settlement Agreement, including payments for re-plumbs in the structures of Eligible Claimants (as defined in Paragraph 1.o. of the Settlement Agreement) as set forth in the Settlement Agreement.

E.      Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the Settlement Agreement.

### Agreement

1.      Repipe Specialists and the Settlement Administrator have reviewed the terms of the Settlement Agreement and all Exhibits thereto, including, without limitation, the Schedule of Qualifying Fixtures (Exhibit 4) and the Scope of Work (Exhibit 6).

2.      Repipe Specialists agrees to complete the re-plumbs for Eligible Claimants in the Texas communities in the Settlement Class pursuant to the pricing structure, terms, and procedures set forth in the Settlement Agreement, the Schedule of Qualifying Fixtures, and the Scope of Work, for the duration of the Settlement.

3.      The re-plumb rates in the Settlement Agreement reflect an approximate 15% discount on rates Repipe Specialists would charge homeowners in the Texas geographic areas included in the Settlement Class.

4.      The Settlement Administrator agrees to pay Repipe Specialists from the Net Settlement Fund pursuant to the protocols and payment terms set forth in the Settlement Agreement.

5.      Repipe Specialists and the Settlement Administrator expressly acknowledge and agree that the Plaintiffs and Settlement Class Members are third party beneficiaries of this Provider Agreement and shall be entitled to enforce the provisions of this Provider Agreement as if they were parties hereto.

6.      Pursuant to the Settlement Agreement and on further order(s) of the Court, the Provider Agreement shall be approved by the Court and remain subject to the jurisdiction of the Court.

7.      Repipe Specialists agrees to comply with any order of the Court.

8.      Repipe Specialists may not assign its rights, duties and obligations hereunder without the prior written consent of Co-Lead Class Counsel and NIBCO.

9.      This Provider Agreement, including all Exhibits hereto, together with the Settlement Agreement, constitutes the entire agreement and understanding of the parties hereto. All prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a party or its counsel, are merged herein. Each party represents and warrants that it is not relying on any representation not expressly included in this Provider Agreement and its Exhibits.  Any modification of this Provider Agreement or any additional obligations assumed by any party hereto shall be binding only if evidenced by a writing signed by each of the parties hereto, and require the express approval of Co-Lead Class Counsel and NIBCO. To the extent this Provider Agreement conflicts in any way with the Settlement Agreement, the provisions of the Settlement Agreement shall govern.

10.     This Provider Agreement may be executed in one or more counterparts, each of which counterparts shall be deemed to be an original and all of which counterparts, taken together, shall constitute but one and the same Provider Agreement.

11.     The failure of any of the parties hereto to enforce any provision hereof on any occasion shall not be deemed to be a waiver of any preceding or succeeding breach of such provision or any other provision.

**IN WITNESS WHEREOF**, the parties hereto have executed this Provider Agreement as of the date first above written.

ANGEION GROUP

By: _____

REPIPE SPECIALISTS OF TEXAS

By: _____
Jeff Butler, President

3

By: _____

      Steven Weisbrot, Partner

REPIPE SPECIALISTS OF TEXAS


By: _____

      Jeff Butler, President

**Exhibit A**

**Settlement Agreement**

# EXHIBIT 5a

## PREFERRED PROVIDER AGREEMENT

This Preferred Provider Agreement dated December 21, 2020 ("Provider Agreement"), is made between MilesParker Group LLC ("MilesParker Group") and Angeion Group (the "Settlement Administrator").

### Recitals

A.    This Provider Agreement governs the re-plumb services and payment for those re-plumb services pursuant to the Settlement Agreement dated December INSERT, 2020, and attached hereto as Exhibit A ("Settlement Agreement"), entered into by, among others, NIBCO and Co-Lead Class Counsel, to settle the class actions captioned *Matson v. NIBCO Inc.*, No. 19-cv-01137-RBF-JKP (W.D. Tex.), and *Garrett. v. NIBCO Inc.*, No. 19-cv-01137-RDP (D. Ala.) (collectively, the "Litigation").

B.    The Settlement Agreement will be submitted to the United States District Court for the Western District of Texas (the "Court") for approval.

C.    Pursuant to the terms of the Settlement Agreement and subject in all respects to the limitations and conditions set forth therein, NIBCO has agreed to pay or cause to be paid up to Seven-Million Six Hundred Fifty Thousand Dollars and 00/100 ($7,650,000) (the "Class Settlement Fund") into a Settlement Escrow Account (as defined in Paragraph 1.qq. of the Settlement Agreement) in settlement of the Litigation.

D.    The Net Settlement Fund (as defined in Paragraph 1.w. of the Settlement Agreement), together with any interest accrued thereon, is to be used to satisfy the payment of relief under the Settlement Agreement, including payments for re-plumbs in the structures of Eligible Claimants (as defined in Paragraph 1.o. of the Settlement Agreement) as set forth in the Settlement Agreement.

E.    Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the Settlement Agreement.

### Agreement

1.    MilesParker Group and the Settlement Administrator have reviewed the terms of the Settlement Agreement and all Exhibits thereto, including, without limitation, the Schedule of Qualifying Fixtures (Exhibit 4) and the Scope of Work (Exhibit 6).

2.    MilesParker Group agrees to complete the re-plumbs for Eligible Claimants in the Alabama communities in the Settlement Class pursuant to the pricing structure, terms, and procedures set forth in the Settlement Agreement, the Schedule of Qualifying Fixtures, and the Scope of Work, for the duration of the Settlement.

3. The re-plumb rates in the Settlement Agreement reflect an approximate 15% discount on rates MilesParker Group would charge homeowners in the Alabama geographic areas included in the Settlement Class.

4. The Settlement Administrator agrees to pay MilesParker Group from the Net Settlement Fund pursuant to the protocols and payment terms set forth in the Settlement Agreement.

5. MilesParker Group and the Settlement Administrator expressly acknowledge and agree that the Plaintiffs and Settlement Class Members are third party beneficiaries of this Provider Agreement and shall be entitled to enforce the provisions of this Provider Agreement as if they were parties hereto.

6. Pursuant to the Settlement Agreement and on further order(s) of the Court, the Provider Agreement shall be approved by the Court and remain subject to the jurisdiction of the Court.

7. MilesParker Group agrees to comply with any order of the Court.

8. MilesParker Group may not assign its rights, duties and obligations hereunder without the prior written consent of Co-Lead Class Counsel and NIBCO.

9. This Provider Agreement, including all Exhibits hereto, together with the Settlement Agreement, constitutes the entire agreement and understanding of the parties hereto. All prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a party or its counsel, are merged herein. Each party represents and warrants that it is not relying on any representation not expressly included in this Provider Agreement and its Exhibits. Any modification of this Provider Agreement or any additional obligations assumed by any party hereto shall be binding only if evidenced by a writing signed by each of the parties hereto, and require the express approval of Co-Lead Class Counsel and NIBCO. To the extent this Provider Agreement conflicts in any way with the Settlement Agreement, the provisions of the Settlement Agreement shall govern.

10. This Provider Agreement may be executed in one or more counterparts, each of which counterparts shall be deemed to be an original and all of which counterparts, taken together, shall constitute but one and the same Provider Agreement.

11. The failure of any of the parties hereto to enforce any provision hereof on any occasion shall not be deemed to be a waiver of any preceding or succeeding breach of such provision or any other provision.

**IN WITNESS WHEREOF**, the parties hereto have executed this Provider Agreement as of the date first above written.

ANGEION GROUP

By: _____
       Steven Weisbrot, Partner


MILESPARKER GROUP, LLC

By: _____
          Parker Smith, President

By: _____


MILESPARKER GROUP, LLC

By: _____
    Parker Smith, President

**Exhibit A**

**Settlement Agreement**

# EXHIBIT 6

# RESIDENCE OWNER SCOPE OF WORK

**This Scope provides Residence Owners with a summary of the Replumb offered by the Settlement.**

## Notice and Pre-Replumb

**Walkthrough –** Prior to starting the work at your residence, a member of the Contractor's team shall walk the residence with the residence owner or the agent of the residence owner to explain the scope of the Replumb, what should be reasonably expected during and from the Replumb, and to point out any foreseeable problems or issues. The Contractor may photograph or videotape the condition of the residence before the Replumb for comparison between the pre- and post-Replumb condition and is to provide the Residence Owner with all applicable warranty information (both Manufacturer and Contractor).

**Schedule –** In order to have an efficient process for all concerned it is imperative to understand that once you schedule a start date, it is set in stone. If you end up requesting to change that date within 14 days of your scheduled start date, it will require us to put your repipe at the back of the line behind all other homes with offers. In most cases this will be many, many months down the line.

**Pre-Existing Damage –** Contractor shall not be responsible for any pre-existing damage within the residence.

**Residence owner Notice (Valuables & Pets) –** The residence owner (or occupant) is responsible for securing all valuables, removing fragile or breakable items and moving draperies or other personal property and belongings that cannot be adequately covered to unaffected rooms prior to the Replumb. Further, the residence owner (or occupant) shall be responsible for confining pets, if any, or removing them from the property during the entirety of the Replumb.

**Protection of Personal Property –** The Contractor shall take all necessary measures to safeguard and protect the personal property of the occupants from damage or loss while the Replumb is in progress and the Contractor will be responsible for any such damage. The Contractor and/or its representatives shall not enter rooms in the residence where no Replumb work is occurring. The Contractor is required to place appropriate covering over floors where work is occurring, completely cover all furniture, flooring, and personal property in any room where Replumb work is occurring to protect against dust and other anticipated debris. Daily clean-up, during both the plumbing and drywall portions of the property is required.

## The Replumb Process

**Access to Residence –** Contractor will require access to the residence between the hours of 8:00 am and 6:00 p.m. Monday through Friday. Different hours may also be scheduled with

approval of the residence owner.

**Hotel & Expenses for Lack of Water –** In the event that the occupant is required to move out because of a situation within Contractor's control which results in water service not being restored to at least one bathroom (toilet, sink and shower) and the kitchen by 6:00 p.m. (or later if approved in writing in advance by residence owner) on any day associated with the Replumb, Contractor shall pay all reasonable hotel and living expenses incurred by Residence owner (or occupant).

**Transition Point –** The Replumb shall start at the exterior transition point which is the point where the interior plumbing system connects to the main service line.  The main service line is defined as:  That point where the main service line connects to the interior plumbing system at a valve or a manifold located at or near (within 10 feet) the outside perimeter of the foundation.  A trench will be opened and refilled with dirt only for this purpose and in some cases may extend to the water meter.  In some cases, and when necessary due to the local inspection authority requirements, a portion of the water main may be rerouted to go along the outside of the foundation wall.  In that case, wherever it is exposed to the outside air (not underground), it will be insulated and covered with a metal chase.

**Approved Plumbing Systems –** The Contractor will replace or bypass the existing plumbing system within the residence with the Uponor AquaPEX system that conforms to all applicable codes.

**Repair Standard –** Contractor shall perform the Replumb in a first-class workmanlike manner according to the highest standards of performance in the plumbing and drywall industry.

**Recirculation lines –** For homes with recirculation lines, the new recirculation piping shall extend to within ten (10) feet of each fixture that the existing recirculation piping serves.

**Insulation –** New water lines installed in the attic must meet local code with respect to insulation. All piping will be insulated per local code specifications.

**Drywall & Paint –** If it becomes necessary to remove or cut any drywall, such drywall shall be re-installed, taped and textured, and then repainted to match the existing texture and color. Matching shall be such that no repairs or replacements or other work are reasonably detectable. When necessary, a wall or ceiling with drywall repair will be repainted from the nearest inside or outside corner to corner. Painting shall be consistent with the other walls in the room. Ceilings will be touched up and painted as required. Drywall and painting repairs may be performed by the Contractor's crew, or Contractor may arrange for a separate subcontractor for this portion of the Replumb. Contractor is not responsible for custom paint finishes (*e.g.,* faux paint, murals, etc.). Every reasonable effort will be made to avoid cutting into walls with custom paint finishes including re-routing of the plumbing. In the event that the Contractor encounters custom paint finishes that cannot be avoided, the area of the opening utilizing the original contract color of the wall.

**Wallpaper –** Every reasonable effort will be made to avoid cutting into wallpaper, including re-routing of the plumbing. In the event that wallpaper must be cut, the area of the opening will be painted utilizing the original contract color of the wall.  Any wallpaper outside of the access hole in the wall will not be removed as part of the scope.

**Stucco –** Every reasonable effort shall be made by Contractor to avoid cuts in stucco. When cuts are necessary in stucco, all repairs shall be done by an approved installer who will follow all applicable installation guidelines recommended by the stucco manufacturer.

**Ceramic Tile -** Every reasonable effort will be made to avoid cutting into ceramic tile, including re-routing of the plumbing. If it becomes necessary to remove ceramic tile to get to the tub and/or shower valves, Contractor will provide an appropriate cover plate to cover the opening when the opening is at a plumbing fixture (*e.g.* a hot water faucet). Should additional work be required that cannot be covered by a cover plate, the Contractor will cut out the ceramic tile to gain access, install backing as necessary and re-glue the drywall and tile back in one piece, assuming this can be done without breaking any tiles. Contractor shall be responsible to ensure all water proof membranes penetrated shall be brought back to at least the waterproof rating of the pre-existing membrane. If existing tiles are broken or damaged in the process, the Contractor will replace the tile with that same tile, if available, after backing and drywall are reapplied. If the same tile is unavailable the Contractor will replace the broken tiles with decorator tiles. The Contractor will make a reasonable selection of substitutes available from which the residence owner may choose, or the residence owner may locate and designate to Contractor his/her choice of replacement tile, provided such selection is reasonably close in cost to the tile being replaced and is chosen prior to the start of the Replumb. The Contractor will not be responsible for loose ceramic tile in the shower and tub areas as a result of wet drywall behind the ceramic tile caused by residence owner's (or tenant's) neglect of their maintenance responsibility. If such neglect of maintenance is noted, Contractor shall notify the residence owner.

**Fiberglass Tub or Shower –** Every reasonable effort shall be made to avoid cutting into any fiberglass tub or shower, including re-routing of the plumbing. If it is necessary to cut into a fiberglass tub or shower enclosure, Contractor shall provide the appropriate cover plate to cover the opening if the opening is at a plumbing fixture (*e.g.* a tub or shower fixture).

**Custom Stone – (marble, cultured marble, granite, travertine, etc.) -** Every reasonable effort shall be made to avoid cutting into custom stone, including re-routing of the plumbing. If it becomes necessary to remove custom stone, stone will be replaced with customer provided stone and grout, or the area of the opening in the wall will be painted utilizing the original contract color of the wall.

**Panels & Fixtures –** Every reasonable effort will be made to avoid removing panels or fixtures (cabinets, built-ins, vents, fans, lighting, toilets, etc.). In the event that panels or fixtures must be removed in order to reach the water pipes, they will be reinstalled, caulked, touched up, and/or replaced as necessary to achieve the same or substantially similar condition prior to the

Replumb.

## Code Upgrades NOT Covered by the Replumb Process

**Vacuum Relief Valve –** This Replumb does not contemplate or include the replacement or repair of any *existing* Vacuum Relief Valve. In the event a home does not have an existing Vacuum Relief Valve on top of the water heater and is required by the city as a code upgrade, the supply and installation of the Vacuum Relief Valve will need to be paid by the Residence Owner prior to the start of the replumb at the cost of $75.

**Expansion Tank –** This Replumb does not contemplate or include the replacement or repair of any *existing* Expansion Tanks. In the event a home does not have an existing Expansion Tank and is required by the city as a code upgrade, the supply and installation of the Expansion Tank will need to be paid by the Residence Owner prior to the start of the replumb at the cost of $100.

**Pressure Regulating Valves –** This Replumb does not contemplate or include the replacement or repair of *existing* pressure regulating valves. In the event a home does not have an existing Pressure Regulating Valve and is required by the city as a code upgrade, the supply and installation of the Pressure Regulating Valve will will need to be paid by the Residence Owner prior to the start of the replumb at the cost of $175.

**Thermostatic Mixing Valve –** This Replumb does not contemplate or include the replacement or repair of any *existing* Thermostatic Mixing Valves. In the event a home does not have an existing Thermostatic Mixing Valve and is required by the city as a code upgrade, the supply and installation of the Thermostatic Mixing Valve will need to be paid by the Residence Owner prior to the start of the replumb and typically will include an access panel under a lavatory sink at the cost of $195.

## Other Items NOT Covered by the Replumb Process

**Shut-Off Valve –** This Replumb does NOT contemplate or include the replacement of the existing main water shut-off valve.

**Recirculation Pumps –** This Replumb does NOT contemplate or include the replacement or repair of any recirculation pump in any residence.

**Existing Pressure Regulating Valves –** This Replumb does NOT contemplate or include the replacement or repair of existing pressure regulating valves. In the event a Replumb fails a city and/or county inspection due to an inadequate or defective pressure regulator, then this cost must be borne by the residence owner. The Contractor, however, agrees to replace any pressure regulating valve that it believes to be defective for $175 as part of this Replumb provided that the residence owner agrees to this expense before or during the Replumb.

**Faucets, tub/shower valves, toilets, etc. –** This Replumb does NOT contemplate or include replacement or repair of any faucets, tub/shower valves or trim, toilets, washing machine lines, dishwasher lines, refrigerator lines, or any other type of fixture or line existing "after" an angle stop or direct connection to a fixture.

**Hose Bibbs –** The Replump does NOT include replacing the copper and hose bibb at the exterior wall of the home, but does include running to that point and installing a new transition fitting on the copper.

**Appliances, including Hot Water Heaters –** This Replumb does NOT contemplate or include replacement or repair of any appliances, including hot water heaters. Residence Owners shall be made aware that aged appliances and hot water heaters may be impacted by the Replumb, and that such subsequent repairs to appliances and water heaters or leaks in appliances or hot water heaters are not covered by the Contractor or the Settlement.

**Connections to Appliances –** This Replumb does NOT contemplate or include reconnecting appliances such as hoses from washing machines, vents from dryers or refrigerator lines, all of which will need to be done by the Residence Owner upon completion of the Replumb.  We strongly recommend a) buying new USA made stainless steel washing machine hoses, and b) cleaning out your dryer vents before reconnecting them.

## Post Replumb

**Final Clean Up –** Upon completion of the Replumb, the Contractor shall clean up the property by vacuuming and wiping down all work areas. This shall include cleanup of all plumbing equipment, water material and rubbish, and replacement of furniture moved by the Contractor.

**Certificate of Completion –** At the conclusion of the Replumb, Contractor must obtain a signed and dated Certificate of Completion from the owner of the Residence. Only the signature of the Residence owner or an agent with written Power of Attorney is acceptable.

**Warranties –** Before the Residence owner has signed the Certificate of Completion, Contractor will ensure that any applicable warranties have been explained to the Residence owner.

**Manufacturer's Warranty –** All warranties provided by the manufacturer(s) of the pipe and pipe fittings used by the Contractor for the Replumb run concurrent to, and in addition to the Contractor's warranty and additional details regarding the manufacturer's warranty will be provided by the Contractor based upon the new plumbing system selected.

**Contractor's Warranty –** Contractor warrants that all pipe and fittings supplied and installed during the Replumb at the Residence by the Contractor shall be free of failure as a result of workmanship for a period of twenty-five (25) years from the date of the completion of the Replumb. Contractor warrants that all other work (by way of example, including paint and drywall repairs) shall be free of failure as a result of defects in material and installation for a period of two (2) years from the date of completion of the Replumb for each residence.

## Residence Owner Callbacks Post Replumb

**Residence Owner Callbacks –** The Contractor warrants the workmanship on installation of pipe and pipe fittings that were installed during the Replumb for a period of twenty-five (25) years from the date of the completion of the Replumb. Callbacks to the Plumbing Contractor for post Replumb plumbing issues should only be for issues relating to the Replumb itself. Do not call the Contractor back on general plumbing service type issues. To help you understand when it is NOT appropriate to call, listed below is a short list (not exhaustive) of the most common call back topics that are NOT Replumb related. IF you call the plumbing contractor and it is not a Replumb related issue, you will be subject to a $125 service call fee from the plumbing contractor (collected prior to the service call) plus the cost of any work that may be done on your behalf.

### EXAMPLES OF ITEMS NOT INCLUDED AS PART OF THE REPLUMB WARRANTY

- Dripping faucets/showerheads • Leaks at the base of fixtures
- Shower cartridge issues • Loose fixtures
- Running toilets • Tile/shower enclosure leaking
- Drain line issues • Garbage disposer leaks
- Irrigation leaks or valve issues • Leaking Dishwashers
- Reverse osmosis unit issues • Refrigerator icemakers
- Water softener unit issues • Pressure reducing valve issues

# EXHIBIT 7

**ALABAMA TEXAS PEX SETTLEMENT**
**ATTN: CLAIMS**
**1650 Arch Street, Suite 2210**
**Philadelphia, PA 19103**
**Telephone: 1-855-976-0649**
**Fax: 1-215-525-0209**
**Email: info@AlabamaTexasPEXsettlement.com**
**Settlement Website: www.AlabamaTexasPEXsettlement.com**

«MailDate»

**<u>DENIAL OF CLAIM NOTICE</u>**

INSERT ADDRESS

  Re:  **<u>NIBCO Class Action Settlement for PEX Tubing, Fittings and Clamps</u>**

Dear INSERT:

   We write on behalf of Angeion Group, the Court-appointed Settlement Administrator for the above-referenced class action settlement. We have received and reviewed your Claim Form and any supporting materials provided in the NIBCO Class Action Settlement filed in *Matson, et al. v. NIBCO Inc.*, No. 19-cv-00717 (W.D. Tex.). After careful review of your Claim Form, it has been denied for the following reason(s):

-  INSERT REASON #1

-  INSERT REASON #2

-  FILL IN ADDITIONAL REASONS AS APPLICABLE

   Because your Claim Form has been denied, you are not eligible to receive any Settlement Payment.

   You have the right to appeal our determination that your Claim should be denied.

   If you believe the denial of your Claim was in error and wish to appeal, then please notify us <u>in writing within thirty (30) days</u> by letter or email. Please respond to the specific ground(s) identified above and state why you believe the decision was incorrect. You may present further evidence to us by sending it to the address at the top of this letter or uploading it through the Settlement Website at www.AlabamaTexasPEXsettlement.com. We will review the further evidence you submit and then make a final decision regarding whether to accept your Claim, and under the terms of the Settlement Agreement, the decision of the Settlement Administrator will then be final. We will notify you in writing of the decision.

   [INSERT THIS PARAGRAPH IF APPLICABLE] Please note that if you wish to appeal the denial of your Claim on the basis of whether the Claim presents a "Qualifying Leak" under the

3310200.1

terms of the Settlement Agreement as set forth above, please inform us of your decision to appeal by notifying us in writing within thirty (30) days by letter or email.  If you appeal, your Claim will be submitted to an Independent Engineering Consultant appointed by the Court. Both you and NIBCO will then have the opportunity to present five-page statements to the Independent Engineering Consultant setting forth your position about whether the Claim involves a Qualifying Leak that would be eligible for a Settlement Payment under the terms of the Settlement Agreement. The decision of the Independent Engineering Consultant shall be final.

If you have questions regarding this letter, you may call 1-855-976-0649 between 9:00 a.m. and 5:00 p.m. Eastern Time to speak with a live telephone operator.

Sincerely,

_____

**Angeion Group**
**Settlement Administrator**

3310200.1

# EXHIBIT 8

**ALABAMA TEXAS PEX SETTLEMENT**
**ATTN: CLAIMS**
**1650 Arch Street, Suite 2210**
**Philadelphia, PA 19103**
**Telephone: 1-855-976-0649**
**Fax: 1-215-525-0209**
**Email: info@AlabamaTexasPEXsettlement.com**
**Settlement Website: www.AlabamaTexasPEXsettlement.com**

«MailDate»

<u>**NOTICE OF DEFICIENT CLAIM FORM**</u>

INSERT ADDRESS

> **Re:**   <u>**NIBCO Class Action Settlement for PEX Tubing, Fittings and Clamps**</u>

Dear INSERT:

We write on behalf of Angeion Group, the Court-appointed Settlement Administrator for the above-referenced class action Settlement. We have received and reviewed your Claim Form and any supporting materials provided in the NIBCO Class Action Settlement filed in *Matson, et al. v. NIBCO Inc.*, No. 19-cv-00717 (W.D. Tex.). After careful review of your Claim Form, it has been determined that it is deficient for the following reason(s):

- INSERT REASON #1

- INSERT REASON #2

- FILL IN ADDITIONAL REASONS AS APPLICABLE

We cannot finish processing your Claim Form until the above deficiencies are cured. Please cure any deficiency noted above <u>in writing within thirty (30) days</u> either by letter or email. You may do so by sending the requested information to the address at the top of this letter or, if appropriate, uploading it through the Settlement Website at www.AlabamaTexasPEXsettlement.com. We will review the information you submit and if it cures the noted deficiency we will continue to process your Claim.

If you have questions regarding this letter, you may call 1-855-976-0649 between 9:00 a.m. and 5:00 p.m. Eastern Time to speak with a live person.

Sincerely,

_____

**Angeion Group**
**Settlement Administrator**

3310201.1

# EXHIBIT 9

*A federal court authorized this letter. This is not a solicitation from a lawyer.*

Dear _____,

You are receiving the enclosed Notice of Class Action Settlement ("Notice") because you may be entitled to benefits from a proposed Class Action Settlement ("Settlement") which was recently granted preliminary approval by the United States District Court for the Western District of Texas. You recently may have received an advertisement from another attorney making certain representations about the Settlement and encouraging you to exclude yourself and hire him instead. That letter and its representations were neither reviewed nor approved by the federal court in charge of the Settlement. That federal court authorized the issuance of this letter and enclosed notice to provide homeowners important information to consider about the Settlement. This is not a solicitation.

The Settlement would resolve class action lawsuits pending against NIBCO, Inc. ("NIBCO") which allege certain NIBCO plumbing products are defective and prone to leak, causing water damage. These claims have been asserted in two class action lawsuits pending in Federal Court in Texas and Alabama: *Matson v. NIBCO Inc.*, No. 19-cv-01137-RBF-JKP (W.D. Tex.) and *Garrett. v. NIBCO Inc.*, No. 19-cv-01137-RDP (D. Ala.) ("Litigation"). NIBCO has denied liability, and states that it is settling to avoid the expense, inconvenience, risk, and disruption of further litigation.

The enclosed Notice provides detailed information about the Litigation, the Settlement, and your options as a Settlement Class Member. Please read this Notice carefully because the Settlement affects your legal rights and the Notice describes certain important deadlines by which you may be required to take action.

The undersigned is one of the attorneys who has been appointed by the court to represent Settlement Class Members. This letter highlights some of the important aspects of the Settlement. Specifically, if the federal court grants final approval of the Settlement:

- NIBCO will pay up to Seven Million Six Hundred Fifty Thousand Dollars ($7,650,000.00) which will enable Settlement Class Members to receive: (i) up to 75% of the cost of unreimbursed costs spent on leak repairs and damages; and (ii) for those Settlement Class Members with sufficient qualifying leaks, up to 75% of the cost of a re-plumb (offered by a preferred provider at a discount) or an optional $3,000 cash payment in lieu of a re-plumb. The initial payments received by Settlement Class Members who have suffered leaks will be 50%. That is to say, if the Settlement is approved by the Court and you decide to participate in the Settlement, you will receive up to 75% of the cost of repairs and if you have a qualifying leak and if you have 3 or more qualifying leaks you will receive up to 75% of the cost of re-plumbing your home.

  - The prior advertisement you may have received made assertions about an average payment per home. The payments to be received by Settlement Class Members is

not calculated on that basis. That is because not all homes have experienced or will experience a leak and so the fund cannot be evaluated simply by dividing the fund size by the number of homes. An analysis of data regarding prior leaks experienced by Class Members shows that the likelihood of a home experiencing a first leak declines after a period of time, meaning that in the future, fewer homes will experience any leak because the homes at issue largely were constructed between 2008 and 2012, and the likelihood of homes beginning to experience leak problems declines over time. In other words, most homes that have not yet experienced a leak should not experience one in the future based on this data. Additionally, the repair of most leaks to date have been paid for by someone other than the homeowner (either the homebuilder or plumbing contractor) and therefore *will not* diminish the class fund. Based on the above, we believe the Settlement fund will be more than adequate to compensate those in the Settlement Class both for leaks that have happened but were not repaired at another's expense and for leaks that have not yet occurred.

o   Many homes included in the Settlement already have been re-plumbed with a different product. These re-plumbs generally were not paid for by homeowners and also *will not* diminish the class fund. Again, the trends suggest far fewer homes will experience leak activity warranting a re-plumb as more time passes.

- The attorneys representing Settlement Class Members here have negotiated discounted services rate by preferred plumbing providers (who have performed numerous re-plumbs in the relevant homes) at an approximate 15% discount from standard re-plumb rates they would charge homeowners in the cities included in the Settlement Class.

- The preferred providers also are offering other benefits like optional financing for any out-of-pocket expenses associated with a re-plumb. The Settlement thus provides for both a discount and compensation to pay for 50-75% of the potential cost of conducting the work.

- By remaining in the Settlement Class, you will pay nothing for Class Counsel's attorneys' fees. The attorneys representing Settlement Class Members will be paid separately by NIBCO, and those attorney fees will not be paid out of or deducted from the cash fund created for the class.

- Claims concerning the same alleged defects in the same NIBCO plumbing products were the subject of protracted litigation for more than five (5) years in the putative class action captioned *Cole v. NIBCO*, Case No. 13-cv-7871 (D.N.J.). That case was settled in 2019, but that settlement – which received final federal court approval on April 11, 2019 – excluded the members of this Settlement Class. That is what led to *Matson v. NIBCO Inc.*, No. 19-cv-01137-RBF-JKP (W.D. Tex.), and *Garrett. v. NIBCO Inc.*, No. 19-cv-01137-RDP (D. Ala.) being filed.

- This Settlement exceeds the judicially-approved recovery accomplished in *Cole* in several respects:

- The attorney fees of those attorneys who represented the *Cole* settlement class were paid out of the *Cole* settlement fund. Here on the other hand NIBCO has agreed to pay those attorney's fees separately, and therefore those attorney fees will not be paid out of or deducted from the up to $7,650,000.00 Class Settlement Fund.

- The *Cole* settlement (after payment of attorney's fees and expenses) provided up to approximately $29,000,000 for a settlement class that was estimated to include between 150,000 and 422,000 structures. This Settlement provides up to approximately $7,650,000 for a class that includes approximately 8,100 structures. On a *pro rata* basis, therefore, this Settlement is up to 8.4 times larger than the class settlement approved by the federal judge in *Cole*.

- The *Cole* settlement did not feature a preferred provider of re-plumbs with knowledge of the homes in the class who agreed to perform the work at a discount.

Court-approved counsel believes that this Settlement is in the best interests of the Settlement Class. Litigating these lawsuits to conclusion without a settlement could take years and there is no guarantee of a favorable outcome. In fact, NIBCO has significant legal defenses in these actions, particularly given the age of the homes and plumbing installations at issue. Most homes in the Settlement have not experienced a leak, and it would be challenging for homeowners who have not experienced a leak to date to secure a recovery, much less the cost of re-plumbing a home built years ago based on the possibility a leak may occur in the future. The settlement puts a remedy in place in the event of future leaks without the inconvenience, risk, and cost to you of litigation.

Class members can submit a claim by completing and returning the enclosed Claim Form. You can also complete and file a Claim Form online at www.AlabamaTexasPEXSettlement.com. The Notice explains the deadlines for Claims. You may also exclude yourself from the Settlement, but you must follow the procedure established by the Court and described in the enclosed notice, not the procedure described in other lawyer's letter.

If you need more information or have any questions, you may contact the Settlement Administrator via the Settlement Website, www.AlabamaTexasPEXsettlement.com, by toll-free telephone at 1-855-976-0649, or by email at info@AlabamaTexasPEXsettlement.com. You may also contact Class Counsel through email at any of the following addresses: atighe@nixlaw.com; rlinkin@munckwilson.com; drowe@dbcllp.com; or kfarris@frplegal.com.