## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **DAVID MATSON, BARBARA** | § | |
| **MATSON, and YOLANDA GARRET**, | § | |
| Individually and on behalf of all others | § | |
| similarly situated, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | Civil Action No. 5:19-cv-00717 |
| v. | § | |
| | § | |
| **NIBCO, Inc.**, | § | |
| | § | |
| *Defendant*. | | |

### Plaintiffs' Motion for Approval of Class Counsels' Attorneys' Fees and Costs

Plaintiffs David Matson, Barbara Matson, and Yolanda Garrett ("Plaintiffs"), individually and on behalf of all others similarly situated (the "Settlement Class" and "Settlement Class Members") file their Motion for Approval of Class Counsels' Attorneys' Fees and Costs, and state as follows:

### Introduction

The pending class-wide Settlement negotiated by Class Counsel creates, among other things, a $7.65 million Settlement Fund ("Settlement Fund") for the benefit of the Settlement Class. Importantly, undersigned Class Counsel do not seek a percentage of the Settlement Fund. Nor do Class Counsel seek a portion of the Settlement Fund based upon their collective lodestar. Indeed, Class Counsel do not seek to be paid out of the Settlement Fund, *at all*. Rather in order to create yet another benefit for the Settlement Class Members, the proposed settlement provides that Class Counsels' fee, if approved by this Court, will be paid separately by Defendant NIBCO, Inc. ("Defendant" or "NIBCO"), and thus, does not and will not diminish the amount available for Settlement Class Member claims.

In order to fully understand why this is so beneficial to Settlement Class Members, it is important to understand the chronology of how the Settlement here was reached. First, during hard-fought, arms-length negotiations, which culminated in an extensive mediation session, the parties agreed to the creation of a common-fund in the amount of $7.65 million for the benefit of the Settlement Class. Then, following additional, protracted negotiations which took months, Class Counsel focused on negotiating additional benefits for the Settlement Class (*i.e.*, the size of initial payments to Class Members filing claims, the maximum amount of payments to be received by Class Members filing claims; the negotiation of agreements with preferred plumbing service providers in both Texas and Alabama to perform re-plumbing services for eligible Settlement Class Members including significant discounts for plumbing services and available financing terms for Settlement Class Members). Only then, and after agreement on every material component related to relief to the Settlement Class was reached, did the parties discuss the manner in which Class Counsel would be compensated. Then, *and only then*, did Class Counsel and Defendant reach an agreement as to Class Counsels' fees. As a result, Settlement Class Members will not be taxed in any manner by the fees awarded to the undersigned Class Counsel—including for work Class Counsel will continue to perform through the multi-year administration period called for by the Settlement.[1] Accordingly, the undersigned Class Counsel request this Court approve an award in the amount of $2,330,000 for their fees and costs to be paid by Defendant and to be shared amongst the five firms appointed co-Class Counsel herein.

---

[1] As further discussed below, the recovery achieved on behalf of the Settlement Class significantly exceeds the *pro rata* recovery reached and approved in the District Court of New Jersey in *Cole v. NIBCO*, Case No. 13-cv-7871 (D.NJ), which involved the same claims as the instant actions, but the resolution of which did not include the approximately 8,100 structures owned by the Settlement Class Members in this action.

## I.     Request for Attorneys' Fees and Expenses

As discussed in the Settlement Agreement and fully explained in the Notice to Class Members, Class Counsel seeks an award of attorneys' fees and costs to be paid separately by Defendant in the amount of $2,330,000. As explained below, the fee and cost request which is not to be paid out of the Settlement Fund, is justified under considerations regularly employed in the Fifth Circuit, including within the guidelines commonly referred to as the *Johnson* factors.[2] The requested fee is in line with other awards of attorneys' fees in other class-action settlements in this Circuit and District is appropriate, fair, and reasonable under the unique circumstances presented here, and should be approved.[3]

### A.   The Law Supports the Payment of a Separate Attorneys' Fees

The parties, after reaching agreement on every other term with regard to the Class Settlement, negotiated and reached a separate and independent agreement with regard to attorneys'

---

[2] *See Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974). While not every factor is instructive in every case, the twelve factors set forth by the Fifth Circuit in *Johnson* are:

| | | |
|---|---|---|
| (i) | the time and labor required; |
| (ii) | the novelty and difficulty of the issues; |
| (iii) | the skill required to perform the legal services adequately; |
| (iv) | the preclusion of the other employment by counsel; |
| (v) | the customary fee for similar work |
| (vi) | whether the fee is fixed or contingent |
| (vii) | time limitations imposed by the client or circumstances |
| (viii) | the amount involved and the results obtained; |
| (ix) | the experience, reputation, and ability of the attorneys; |
| (x) | the undesirability of the case; |
| (xi) | the nature of the professional relationship with the client |
| (xii) | awards in similar cases. |

[3] The Fifth Circuit has previously held that the lodestar method is not required when evaluating attorneys' fees in "common fund" class action settlements. *See Union Asset Mgmt. Holding, A.G. v. Dell, Inc.*, 669 F.3d 632, 642-43 (5th Cir. 2012). Undoubtedly, this is even more true when, as here, the Settlement Fund is not reduced by the payment of attorneys' fees sought by Class Counsel, but rather paid separately by Defendant after negotiation of the size of the Settlement fund. *See. e.g., Sistrunk v. Titlemax*, 2018 WL 1773307, at *2-4 (W.D. Tex. Feb. 22, 2018) (awarding requested attorneys' fees without lodestar review or cross-check when fees were to be paid separately by Defendant). Nevertheless, even if the Court were required to perform such a lodestar cross-check (which it is not), the requested attorney's fee award would only amount to an approximate 1.6 multiplier. Such a multiplier is more than reasonable considering the

fees.[4] Courts in the Fifth Circuit and others have regularly approved agreements providing for the separate payment of Class Counsel's attorneys' fees.[5] In doing so, the Court considers "(a) how the fee award compares to the total recovery obtained in favor of the class (the "percentage method") and (b) the reasonableness of the award as measured against the *Johnson* factors.[6]

This request for an award of fees should be considered in light of the remarkable results obtained by counsel on behalf of the Settlement Class. The proposed Settlement, which has been preliminarily approved, provides for the payment of no less than 50% and up to 75% of the approved repair and replacement costs associated with water damage from leaks. And for those Settlement Class Members who have suffered or do suffer more than three leaks during the Claim Period from NIBCO's PEX Plumbing, the Settlement provides for a re-plumb benefit which also pays between 50% and 75% of the cost of such re-plumb. The Settlement also provides for such additional benefits as use of "preferred plumbing providers" who, through Class Counsel's efforts, have agreed to provide significantly discounted rates and even financing for Class Members' portion of the cost, to facilitate the complete re-plumbing of their homes. Finally, those eligible for a re-plumb can instead chose a one-time *$3,000 cash* payout from the Settlement Fund in lieu of the re-plumb remedy. In short, Class Members with qualifying damage claims will potentially receive thousands of dollars in benefits depending on the specifics of their past and present claims.

---

complexity of the matter, the amounts at issue, and the risks faced by Settlement Class Members and undersigned Class Counsel. Should the Court request it, Class Counsel are prepared to submit more detailed billing information.

[4] *See* Settlement Agreement (Dkt. 50-1) at ¶41. *See also* **Declaration of Robert E. Linkin,** attached as Exhibit A.

[5] *See e.g., Sistrunk*, 2018 WL 1773307, at *2-4); *see also, Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 643 (5th Cir. 2012 (noting that"[D]istrict courts in this Circuit regularly use the percentage method blended with a *Johnson* reasonableness check."); *Turner v. Murphy Oil USA, Inc.*, 472 F.Supp.2d 830, 856 (E.D. La. 2007); *Bethea v. Sprint Communications Co., L.P.*, 2013 WL 228094, at *3 (S.D. Miss. Jan. 18, 2013).

[6] *See Union Asset.* 669 F.3d at 643.

Against the backdrop of the relief described above, the requested fee, when viewed as a "percentage of the fund" (which it is not) is valued at approximately 30% of the total value of the Settlement fund (not including the added value of the preferred plumbing provider discounts and financing), and therefore is well in line with other court approved fee awards.[7] And most importantly, the Settlement Class Member's recovery here will not be reduced at all by the payment of the requested fee.[8]

### B.   Application of the *Johnson* Factors Also Supports the Requested Fee

While not *per se* applicable to a separately paid attorney's fee, the Fifth Circuit also utilizes the *Johnson* factors when assessing the reasonableness of Class Counsels' requested fee. Here, any evaluation of those factors also supports the approval of undersigned Class Counsels' requested fee.

#### 1.   The Time and Labor Required

Substantial time and labor were required by undersigned Class Counsel. The litigation for the parties involved here began in Texas state court and the District of Alabama, included discovery and fact investigation, third party litigation, and ultimately the bringing of this action on a class wide basis in this Court.[9]

During the pendency of litigation, Plaintiffs have been required to engage in both "on docket" and "extensive "off-docket" litigation activities. With regard to the "on-docket" activity

---

[7] *See Rodriguez v. Stage 3 Separation, LLC*, 2015 WL 12866212, at *5 (W.D. Tex. Dec. 23, 2015) (noting that the Fifth Circuit benchmark for percentage-of-the-fund fees is 30%). Were this a typical "percentage of the fund" fee award and the amount agreed to by Defendant were simply part of the fund itself, the requested fee award would be only 23% of the fund, which is at the low end of the range of fee applications approved in this Circuit.

[8] *Sistrunk,* 2018 WL 1773307 at *3.

[9] *See* **Linkin Decl.** at ¶8.

that occurred in this District, Plaintiffs' filed their class action complaint on June 19, 2019.[10]

Defendant moved to dismiss Plaintiffs' complaint pursuant to Fed. R. Civ. P. 12(b)96).[11]

Thereafter on April 27, 2020, Plaintiffs filed their amended complaint which, *inter alia*, added an

Alabama subclass, and clarified the bases for Plaintiffs' claims.[12] On July 10, 2020, Defendant

moved to dismiss the Amended Complaint.[13] With regard to the "on-docket" activity which

occurred in the District of Alabama, on July 18, 2019, Plaintiff Yolanda Garrett filed her initial

complaint in the United States District Court for the Northern District of Alabama in a matter

captioned *Garret v. NIBCO*.  NIBCO moved to dismiss the complaint on September 30, 2019, and

Plaintiff Garrett responded with a First Amended Complaint on October 21, 2019.  On November

4, 2019, Defendant moved to dismiss the First Amended Complaint. On November 14, 2019,

Plaintiff Garrett filed her response in opposition to Defendant's motion to dismiss, and on

November 25, 2019, Defendant filed its reply. Thereafter, Plaintiff sought leave and filed her sur-

reply to the motion to dismiss. On May 28, 2020, without reaching the merits of the motion to

dismiss, the Court terminated Defendant's motion to dismiss and ordered Plaintiff to file a Second

Amended Complaint by November 6, 2020.

     With regard to the extensive "off-docket" activity, Plaintiffs reviewed discovery conducted

in the earlier filed state court action as well as discovery related to the *Cole* action, analyzed

Defendant's Motions to Dismiss the Amended Complaint, researched relevant authorities, and

began developing argument and theories in response to the Motion to Dismiss. Additionally,

Plaintiffs and Defendants have been engaged in "arms-length" negotiations for more than a year.

Those negotiations have included numerous in person, telephonic, and Zoom settlement

---

[10] *See* Dkt No. 1.
[11] *See* Dkt No. 14.
[12] *See* Dkt. No. 33.
[13] *See* Dkt. No. 38.

conferences (some of which included third-party DR Horton, the parent of the companies that constructed the homes in the Settlement Class). Finally, undersigned Class Counsel spent countless hours reviewing and analyzing data concerning leaks in class member homes, including the timing and frequency of such leaks. Those analyses undergirded the negotiations that culminated in a full-day mediation on September 16th before Ross Hart (the mediator which also resolved the *Cole* litigation), which mediation was ultimately successful and led to the instant Settlement.[14]

Put simply, this action has been at times an all-consuming endeavor that required great sacrifice on behalf of Class Counsel. Accordingly, the time and labor required and expended by Class Counsel supports the reasonableness of the requested fee.

### 2. The Novelty and Difficulty of the Questions Involved

This class action was not ordinary by any stretch of the imagination and created significant risks for Class Counsel. To highlight a few of the major issues presented by this matter and without limitation:

- Class Members faced significant statutes of limitations defenses on virtually all of their claims (some of which had already resulted in adverse results in individual actions pending throughout the United States), and particularly in light of the pendency of *Cole*, and a growing trend in courts (including the U.S. Supreme Court and courts in Alabama and Texas) to disfavor *American Pipe* tolling and/or cross-jurisdictional tolling for state law claims asserted in a call action in federal court;[15]

- Class Members faced significant defenses regarding whether their claims under NIBCO's written Limited Warranty would fail based on the need to show reliance on the terms of the warranty to demonstrate the "basis of the bargain" requirement;

- Class Member claims faced significant defenses based upon the Economic Loss Doctrine which, if successful, could have severely limited Class Member damages, including foreclosing claims to repair or replace the NIBCO PEX products themselves;

---

[14] *See* **Linkin Decl.** at ¶9 b.
[15] *See China Agritech, Inc. v. Resh*, 138 S.Ct. 1800 (2018)

- Class Members faced significant "failure to warn" defenses with regard to Texas-based claims of design defect;

- Class Member claims required multiple experts on such topics as materials science, rates of oxidation and failure, and statistics (with regard to likely future plumbing leaks and damages models).

And for the majority of Class Members, the above defenses were exacerbated by the fact they had not experienced any leaks, although their homes had been built more than nine years ago.

In addition to all of the above-described complexities, unlike many class actions, Class Member claims, while too small to merit extensive individual litigation, in some cases concern damages in the thousands of dollars and require immediate resolution. Simply put, some Settlement Class Member's homes were and are leaking and thus, Class Counsel were well aware and were driven by the fact their class members required immediate and meaningful relief, without the risk and delay of protracted litigation.[16]

The bottom line is that this case presented a host of novel and difficult legal and economic questions – any one of which could have resulted in an adverse outcome – such that Class Counsel undertook significant risk when accepting the case. This factor thus supports the reasonableness of the fee.

### 3. The Skill Requisite to Perform the Legal Services Properly/the Reputation and Experience of the Attorneys

The third and seventh *Johnson* factors (*i.e.,* the skill required to carry out the legal services properly and the experience, reputation, and ability of the attorneys involved) are easily reviewed together, and also support the reasonableness of the fee request.

Litigation of this matter required counsel highly skilled and experienced in class-action law, as well as the specialized issues related to products-liability claims presented here. And

---

[16] *See* **Linkin Decl.** at ¶10.

because of the many complicated issues presented, the case was ripe with peril on all sides. The case clearly required a high level of skill to perform the services required.

The reputation and experience of the attorneys involved is commensurate with the level of skill required. And the reputation and skill brought by the undersigned Class Counsel clearly added value to the representation of the Class and were substantial factors in the ability to litigate this matter effectively and efficiently.[17] Specifically, the firms involved here are among the most reputable in the States of Texas and Alabama with regard to such matters, and the undersigned Counsel have decades of class action and products liability experience among them.

Finally, in evaluating the quality of representation by Class Counsel, the Court should also consider the quality of opposing counsel.[18] Throughout this litigation, NIBCO was defended by extremely capable counsel who zealously advocated for their client, and also held the significant advantage of having tested every argument and position posited here through the prior *Cole* litigation. That too speaks to the quality of Class Counsel.

For all these reasons, the second and seventh *Johnson* factors also support the reasonableness of the instant fee request.

### 4.   The Preclusion of Other Employment by the Attorneys

As noted above, the litigation itself took up a significant amount of time. It goes without saying that as a result, the lawyers who devoted that time routinely were required to turn down other engagements that they otherwise would have accepted.[19] Thus, this factor also weighs in favor of the reasonableness of the fee requested.

---

[17] *See* **Linkin Decl.** at ¶11.
[18] *See e.g.*, *Schwartz v. TXU Corp.*, 2005 WL 3148350, at *30 (N.D. Tex. Nov.8, 2005) (citing *In re King Res. Sec. Litig.*, 420 F.Supp.610, 634 (D. Colo. 1976); *see also DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 330 (W.D. Tex. 2007) (Biery, J)
[19] *See* **Linkin Decl.** at ¶12.

### 5. **The Customary Fee**

As discussed in more detail below, the fee here is contingent. The contingent fee ordinarily agreed upon between client and counsel in matters such as these normally ranges between 33.3% and 40%.[20] Indeed, most fee arrangements provide for an additional 10% should appellate work be required.[21] Accordingly, the fee request being made by Class Counsel is below the range of customary fees for similar work in the community and thus weighs in favor of the reasonableness of the fee request.

### 6. **Whether the Fee is Fixed or Contingent**

By accepting this matter entirely on a contingent-fee basis, undersigned Class Counsel assumed a massive risk of nonpayment or underpayment, not only of their fees, but of the large expenses associated with fully-litigating this matter to conclusion.[22] Both simple logic and well-established law dictate the risk warrants an appropriate fee. Indeed a "contingency fee arrangement often justifies an increase in the award of attorney's fees."[23]

Moreover, public policy concerns – in particular, ensuring the continued availability of experienced and capable counsel to represent classes of injured plaintiffs whose significant claims might be too small to justify bringing an individual action – support the requested fee. As one federal court aptly noted:

> Generally, the contingency retainment must be promoted to assure representation when a person could not otherwise afford the services of a lawyer . . .  A contingency fee arrangement often justifies an increase in the award of attorney's fees. This rule helps assure that the contingency fee arrangement endures. If this "bonus" methodology did not exist, very few lawyers could take on the

---

[20] *See* **Linkin Decl.** at ¶14.
[21] *See id.*
[22] *Id.* Indeed, Class Counsel has already expended tens of thousands of dollars on expert fees here.
[23] *In re Sunbeam Sec. Litig.*, 176 F.Supp.2d 1323, 1335 (S.D. Fla. 2001); *See also In re Continental Ill. Sec. Litig.*, 962 F.S2d 566 (7th Cir. 1992) (holding that prosecution of class action on a contingent fee basis dictates plaintiffs' counsel should adequately compensated for the risk of non-payment);

representation of a class client given the investment of substantial time, effort and money, especially in light of the risks of recovering nothing.[24]

The progress of this action demonstrates the inherent risk in accepting this case on a contingency-fee basis. Despite enormous efforts by Class Counsel, by the time this Court considers final approval, each of the firms represented by Class Counsel will have gone completely uncompensated for more than 2 years for hard expenses laid out as well as the tremendous amount of time each has devoted (continues to devote and will continue to devote during the Claim Period that runs through May 16, 2025) on behalf of the Settlement Class. And for the entirety of that period, Class Counsel faced the real possibility they might never be compensated for any of their efforts or recoup any of their hard expenses.[25] It is well understood that such uncompensated expenditures are frequently devastating for firms of any size, including the firms which undertook this representation here. Thus, this factor also weights in favor of the reasonableness of the requested fee.

## 7.  **Time Limitations Imposed by the Client or Circumstances**

As described above, the circumstances surrounding Class Member claims imposed critical time limitations. This was not an action where Class Members could wait indefinitely for relief. Indeed, certain Settlement Class Member homes have leaked and are experiencing leaks as final approval is pending and those Class Members with qualifying claims (*i.e.*, those who have suffered or are suffering leaks), need impactful relief now just so that they can make repairs and obtain new plumbing systems if eligible. As a result, Class Counsel for the benefit of the Settlement Class moved quickly in this litigation, particularly with an eye towards finding a resolution which could

---

[24] *See Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988); *See also DeHoyos*, 240 F.R.D. at 330.
[25] *See* **Linkin Decl.** at ¶13.

adequately compensate them, in order to fulfill their duties to the Class.[26] Thus, this factor also weights in favor of the reasonableness of the requested fee.

### 8.   The Amount Involved and Results Obtained

Given the significant litigation risks faced by the Class here, the result obtained is empirically excellent, and accordingly, Class Counsels' fee should be commensurate with that result.

Rather than face additional litigation (potentially for years), not to mention the risk of complete loss and no recovery whatsoever given the formidable defenses available to and put forward by Defendant, the Settlement Agreement negotiated by Class Counsel provides for cash benefits in the form of a $7,650,000 Settlement Fund. Specifically, the Settlement provides the following important benefits for Settlement Class Members:

- **Payment of between 50% and 75% of Settlement Class Members qualifying past property damage claims;[27]**

- **Payment of (i) between 50% and 75% of the cost of a re-plumb of Settlement Class Member's homes; or (ii) the option to simply receive a direct $3,000 cash payment, for those Settlement Class Members who have experienced three or more leaks from NIBCO PEX Plumbing;[28]**

- **Arrangement for a "preferred plumbing provider" providing an approximate 15% discount from standard re-plumb rates charged to consumers in the relevant communities for those Class Members who chose to utilize the preferred plumbing providers' services;[29] and**

- **Provision of low-cost or no-cost financing provided by each preferred plumbing provider for any portion of their services not covered by the Settlement Fund.[30]**

---

[26] *See* **Linkin Decl.** at ¶15.
[27] *See* Settlement Agreement (Dkt. 50-1) at ¶10 a.
[28] *See id.* at ¶10 c. v.
[29] *See id.* at ¶10 c. i.
[30] *See id.* at ¶10 c. iv. 3.

And importantly, none of the benefits described above will be reduced or diminished in any manner by the requested attorneys' fee and cost award, which was not negotiated or agreed upon until each of the above settlement terms had been agreed to and finalized between Class Counsel and Defendant.[31]

Moreover, and perhaps most tellingly, the compensation provided for the Settlement Agreement provides more funds and benefits on a *pro rata* basis for Settlement Class Members than the settlement reached and finally approved in *Cole*.[32]

Needless to say, a settlement providing between 50% and 75% of Settlement Class Member losses is an outstanding result—particularly considering the incredible litigation risks faced by the Class. Accordingly, this factor also supports the reasonableness of the requested award.

### 9.  The Undesirability of the Case

The risk of obtaining little or even no recovery was significant. On the merits, the Defendant mounted potentially meritorious defenses, including statute of limitations and no reliance by the homeowners given their lack of privity to NIBCO. Similarly, there was a substantial risk that no class could be certified in light of individual questions that inherently arise in theories of liability presenting significant manageability issues. Where there is "the risk of little or no recovery," this factor weighs in favor of approving the fee request.[33]

### 10. The Nature and Length of the Relationship with the Client

In some cases, having either a longstanding or strong pre-existing attorney client relationship with a client justifies accepting a case with significant attendant risks, because the

---

[31] *See* **Linkin Decl.** at ¶7.
[32] *See id.* at ¶16.
[33] *In re Enron Corp. Sec., Derivative & Erisa Litig.*, 586 F. Supp. 2d 732, 797 (S.D. Tex. 2008).

prospect of future, valuable additional engagements justify accepting the matter. In this case however, no such prospect for additional work existed such that it would have additionally benefited any of the undersigned Class Counsel.[34] Accordingly, this factor also weighs in favor of the requested fee award.

## 11. <u>The Requested Fee Comports with Fees Awarded in Similar Cases</u>

The fee requested by undersigned Class Counsel in this case comports with fees awarded in similar cases. Indeed, the "benchmark" fee recognized by the Fifth Circuit in common fund cases where, unlike here, the Settlement Fund is reduced by an attorneys' fee award, is 30%.[35]

There is no reason why undersigned Class Counsel's fee should be entitled to anything less than the requested amount—particularly in light of the fact it is being paid separately by Defendant and was negotiated long after the parties agreed to the size of the fund. By doing so, Class Counsel undertook additional care to protect Settlement Class Members from paying attorneys' fees they undoubtedly would have been taxed with had undersigned Class Counsel pursued a percentage of the common fund award. Accordingly, this last *Johnson* factor also supports the reasonableness of the requested award.

## C. <u>The Expense Request is Appropriate</u>

Here, the fee to be paid separately by Defendant will also compensate undersigned Class Counsel for unreimbursed expenses, which include necessary travel, the cost of mediation, expert

---

[34] *See* **Linkin Decl.** at ¶17.
[35] *See e.g.*, *Fairway v. Medical Center, LLC v. McGowan Enters., Inc.*, 2018 WL 1479222, at *2 (E.D. La. Mar. 27, 2018) (noting the 30% benchmark for common fund cases in awarding such a fee); *In re: Pool Prods. Ditrib. Mkt. antitrust Litig.*, 2016 WL 235781 (E.D. La. Jan. 20, 2016) (awarding 33% of common fund and noting that such is consistent with "awards that other courts in this Circuit have found to be reasonable"); *Buford v. Cargill, Inc.*, 2012 WL 5471985, at *1 (W.D. La. Nov. 8, 2012) (awarding 1/3 of the common fund without necessity of lodestar cross-check).

fees, filing fees and other costs of litigation in the total amount of $48,491.75. At all times, Class Counsel was mindful to incur only those costs and expenses which were reasonably necessary to the prosecution and settlement of this action on behalf of the Class Members. Indeed, as the Supreme Court has noted, the reimbursement of expenses is necessary to prevent the unjust enrichment of absent class members.[36]

### CONCLUSION

Undersigned Class Counsel respectfully submit the results they have achieved on behalf of the Settlement Class Members they represent is valuable, impactful, immediate, and thus under any circumstances, an excellent result worthy of the requested fee award. More importantly, here Class Counsel has undertaken to negotiate the proposed Settlement in a manner that results in Settlement Class Members paying precisely zero for attorneys' fees and costs, without regard to the size of the fund created.

Accordingly, because the reasonableness of the fee is supported by those methods employed in the Fifth Circuit, this Court should grant Plaintiffs' requested Attorney Fee and Cost award in the aggregate amount of $2,330,000.

WHEREFORE, Plaintiffs respectfully request the Court grant the instant Motion for Approval of Application for Attorneys' Fees and Costs.

Dated: April 12, 2021                    Respectfully submitted,

                                         */s/ Robert E. Linkin*
                                         Robert E. Linkin

                                         **NIX PATTERSON, LLP**
                                         3600 N Capital of Texas Highway, Ste. B350
                                         Austin, Texas 78746
                                         (512) 328-5333 (telephone)

---

[36] *Mills v. Electric Auto Lite-Lite Co.,* 396 U.S. 375, 391-92 (1970).

Austin Tighe
atighe@nixlaw.com

**MUNCK WILSON MANDALA, LLP**
807 Las Cimas Pkwy., Building II
Suite 300
(737) 201-1616 (telephone)
Robert E. Linkin
rlinkin@munckwilson.com

**DuBOIS, BRYANT & CAMPBELL, LLP**
303 Colorado Street, Ste. 2300
Austin, TX  78701
(512) 457-8000 (telephone)
J. David Rowe
drowe@dbcllp.com

**GRABLE GRIMSHAW PLLC**
1603 Babcock Road, Ste. 118
San Antonio, TX  78229
(210) 963-5297 (telephone)
Brandon J. Grable
brandon@g2.law
Matthew Grimshaw
matt@g2.law

*ATTORNEYS FOR PLAINTIFFS*
**David Matson and Barbara Matson,
Individually, and on Behalf of All Others
Similarly Situated**

*/s/ Kirby D. Farris*
Kirby D. Farris
*(Pro Hac Vice* Forthcoming)
**FARRIS, RILEY & PITT LLP**
505 20th Street North, Ste. 1700
Birmingham, AL 35203
(205) 324-1212 (telephone)
(205) 324-1255 (fax)
kfarris@frplegal.com

*ATTORNEY FOR PLAINTIFFS*
**Yolanda Garrett, Individually, and on Behalf of
All Others Similarly Situated**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 12th day of April 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Missy Atwood
matwood@germer-austin.com
Ben Zinnecker
bzinnecker@germer-austin.com
GERMER BEAMAN & BROWN PLLC
301 Congress Avenue, Suite 1700
Austin, TX 78701

J. Gordon Cooney, Jr.
Gordon.cooney@morganlewis.com
Franco A. Corrado
Franco.corrado@morganlewis.com
MORGAN, LEWIS & BOKIUS, LLP
1701 Market Street
Philadelphia, PA 19103-2921

Kevin Kuhlman
kkuhlman@lathropgage.com
LATHROP & GAGE, LLP
2345 Grand Blvd., Ste. 220 Kansas City, MO
64108-2618


       */s/ Robert E. Linkin*
       Robert E. Linkin

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **DAVID MATSON, BARBARA MATSON, and Yolanda Garret**, Individually and on behalf of all others similarly situated, | §<br>§<br>§<br>§<br>§ | |
| *Plaintiffs*, | §<br>§ | |
| v. | §<br>§ | Civil Action No. 5:19-cv-00717 |
| **NIBCO, Inc.**, | §<br>§<br>§ | |
| *Defendant*. | §<br>§ | |

---

### DECLARATION OF ROBERT LINKIN

---

1.      "My name is Robert Linkin. My date of birth is March 7, 1969 and my address is 807 Las Cimas Parkway, Suite 300, Austin, Texas 78746.

2.      I am one of the counsel representing the Matson Plaintiffs in the above-styled action and am a partner in the law firm of Munck, Wilson, Mandala, LLP. Pursuant to the Court's Order Granting Preliminary Approval of the proposed class-wide settlement, I have also been appointed Class Counsel, along with Austin Tighe of Nix Patterson, David Rowe of Dubois, Bryant, and Campbell, Kirby Farris, of Farris, Riley & Pitt, and Brandon Grable of Grable Grimshaw.

3.      I submit this declaration in conjunction with and in support of Class Counsel's Motion for Approval of Class Counsel's Attorneys' Fees and Costs.

### THE SETTLEMENT NEGOTIATIONS

4.      On September 16, 2020, after protracted litigation in this Court and long, hard fought arms-length settlement negotiations, the parties agreed to attend mediation in an effort to resolve this litigation. To that end the parties attended a one-day mediation session. Ross Hart, who had previously served as the mediator in *Cole v. NIBCO*, Case No. 13-cv-7871 (D.N.J.), served as mediator.

5.      During mediation, the parties agreed to the formation of a Settlement Fund for the benefit of Class Members in the amount of $7,650,000. This was the only term of the Settlement Agreement negotiated or agreed to during the September 16th mediation session.

6.      Immediately following mediation, the parties continued to negotiate for several months regarding additional terms intended to benefit Class Members. For example, the parties negotiated the minimum percentage and maximum percentage of damages Class Members with



Page **1** of **5**

qualifying claims could receive out of the Settlement Fund. Additionally, Plaintiffs fought for and sought to include "preferred plumbing providers" who would provide (i) significant discounts to Class Members who utilized their services with regard to the re-plumb benefit provided for in the Settlement, and (ii) financing to make it easier for those Class Members who were entitled to a re-plumb of their home under the terms of the Settlement, to complete such a re-plumb.

7.      Ultimately, after months of negotiation, the parties reached agreement on every term of the settlement embodied within the Settlement Agreement submitted to the Court, with the notable exception of attorney's fees to be received by Class Counsel. Then, and only at this point did the parties independently negotiate and reach an agreement for Class Counsel to receive up to a $2,330,000 attorney fees and costs award to be paid separately by Defendant, so that the benefits to Settlement Class Members provided by the Settlement would not be diminished by the payment of attorneys' fees.

### *JOHNSON* FACTORS

### Substantial Time and Labor

8.      Substantial time and labor were required by undersigned Class Counsel. The litigation for the parties involved here initially began in Texas state court and the District of Alabama. Those matters included discovery and fact investigation, third party litigation, and ultimately the bringing of this action on a class wide basis in this Court.

9.      With regard to the activity which occurred following the filing of this action, Plaintiffs' Counsel engaged in significant "on docket" and "off docket" activity, which at times became all-consuming for both myself and my co-counsel. Specifically:

> (a) The extensive "on-docket" activity included the following: Plaintiffs' filed their class action complaint on June 19, 2019. Defendant moved to dismiss Plaintiffs' complaint pursuant to Fed. R. Civ. P. 12(b)96). Thereafter on April 27, 2020, Plaintiffs filed their amended complaint which, inter alia, added an Alabama subclass, and clarified the bases for Plaintiffs' claims. On July 10, 2020, Defendant moved to dismiss the Amended Complaint. Additional "on-docket" activity occurred in the District of Alabama, including: on July 18, 2019, Plaintiff Yolanda Garrett filed her initial complaint in the United States District Court for the Northern District of Alabama in a matter captioned Garret v. NIBCO. NIBCO moved to dismiss the complaint on September 30, 2019, and Plaintiff Garrett responded with a First Amended Complaint on October 21, 2019. On November 4, 2019, Defendant filed a motion to dismiss the First Amended Complaint. On November 14, 2019, Plaintiff Garrett filed her response in opposition to Defendant's motion to dismiss, and on November 25, 2019, Defendant filed its reply. Thereafter, plaintiff sought leave and filed her sur-reply to the motion to dismiss. On May 28, 2020, without reaching the merits of the motion to dismiss, the Court terminated Defendant's motion to dismiss and ordered plaintiff to file a Second Amended Complaint by November 6, 2020.

(b) The extensive "off docket" activity included the following: Plaintiffs reviewed discovery conducted in the earlier filed state court action as well as discovery related to the *Cole* action, analyzed Defendant's Motions to Dismiss the Amended Complaint, researched relevant authorities, and began developing argument and theories in response to the Motion to Dismiss. Plaintiffs engaged with Defendants in "arms-length" negotiations for more than a year. Those negotiations included numerous in person, telephonic, and Zoom settlement conferences (some of which included third-party DR Horton). Additionally, I along with my co-counsel spent countless hours reviewing and analyzing the data concerning the likelihood of future leaks in Class member homes, including the timing and frequency of such leaks. Those analyses undergirded the negotiations that culminated in a full-day mediation session on September 16th before Ross Hart (the mediator which also resolved the *Cole* litigation), which was ultimately successful and led to the instant Settlement.

**Novelty and Difficulty of the Case**

10.     As Class Counsel we found the issues presented by this class action to be unique and complicated. This action involved significant legal and economic issues. The complex legal issues are best viewed through the lens of Defendant's multiple motions to dismiss filed in this case and the Alabama action. With regard to the economic issues, based on Class Counsels' collective experience in such matters, our view has always been that while incredibly significant to each Class Member (and in some cases thousands of dollars), the dollar value of their claims were not independently valuable enough to merit extensive individual litigation. Regardless, at all times we were concerned and driven by the fact class members required immediate and meaningful relief without the risk and delay of protracted litigation due to the nature of their damages—*i.e.*, our Class Member's homes were leaking.

**The Skill, Reputation, and Experience of Class Counsel**

11.     The skill reputation and experience of each of the attorneys appointed Class Counsel, as well as their firms was certainly commensurate with the level of skill required in order to successfully prosecute this Class action. Likewise, the reputation and experience brought to bear by Class Counsel added value to the representation of the Class and were substantial factors in our ability to litigate this matter effectively and efficiently. Specifically:

(a) I have litigated complex class action matters for nearly two decades, on behalf of both Class Plaintiffs and Defendants. Just a few examples of the matters in which I have played a significant role as an attorney or lead counsel include *O'Shaughnessy v. Young Living, L.C., et al.*, (D. Utah), *In Re Autoparts Antitrust Litig.*, (E.D. Mich.); *Cifuentes v. Regions Bank, N.A.*, (S.D. Fla); *In re Medical Capital*, (C.D. Calif.); *In re Provident Shale Royalties, Inc.* (N.D. Tex.); *Pujals v. Standard Charted Bank* (S.D.N.Y.), and *In re Managed Care Litig.* (S.D. Fla.).

(b) My Co-Counsel, Austin Tighe, has been lead counsel in more than 100 class actions filed nationwide, representing insurance policyholders, oil and gas

royalty owners, and a wide range of consumers of products and services. He was lead counsel in a partnership dispute involving one of the largest sports facilities in the country, lead counsel on behalf of hundreds of federal workers on back-pay claims against the United States, and co-lead counsel representing a class of oil and gas rights owners against sixty producers in three states. Austin presently represents a number of Native American Tribes in a variety of lawsuits against the United States, the State of Connecticut, and British Petroleum. In addition, his firm Nix Patterson, among other things is noted for its representation of the State of Texas in its $17 billion -plus recovery in the Texas Tobacco litigation.

(c) My Co-Counsel David Rowe also has significant class action experience, having been my co-counsel in *In re Autoparts Antitrust Litig.*, and *O'Shaughnessy v. Young Living, L.C. et al*. In addition, David's experience includes 25+ years of litigating complex commercial disputes involving product and construction defect cases as well as partnership and shareholder disputes, copyright and trademark infringement, hard money lender claims, patent infringement, anti-trust, civil RICO, landlord tenant, trade secrets and unfair competition, covenants not to compete, UCC, DTPA, breach of warranty claims, and securities fraud cases, among others.

(d) My Co-Counsel Kirby Farris and his firm, Farris, Riley, & Pitt are also deeply experienced class action attorneys. Mr. Farris has provided a separate affidavit regarding his experience which is attached as Exhibit "A" to this declaration.

## Preclusion of Other Employment

12.    The litigation itself took up a significant amount of time for each of the attorneys involved and each of the Class Counsel who devoted that time routinely were required to turn down other engagements that they otherwise would have accepted.

## The Nature of the Engagement (Contingent Fee Arrangement and Customary Fees)

13.    The fee to be awarded here is contingent. That is to say, neither myself nor any of Class Counsel have been paid thus far for our work—and could have never been paid without a successful result on behalf of Class Members. In fact, despite the efforts and time expended by Class Counsel, by the time this Court considers final approval, each of our firms will have gone completely uncompensated for more than 2 years for hard expenses laid out as well as the tremendous amount of time each has devoted (and continues to devote) on behalf of the Settlement Class. Indeed, we will each continue to provide valuable legal services to Settlement Class Members through the end of the Claims Administration period for the Settlement, which does not end until May of 2025.

14.    It is my experience that the contingent fee ordinarily agreed upon between client and counsel in matters such as these in this district normally ranges between 33.3% and 40% and that the fee request being made by Class Counsel, therefore, are below the range of customary fees for similar work in the community.

**The Time Limitations Imposed**

15.     The circumstances surrounding Class Member claims imposed critical time limitations upon Class Counsel. Each of our firms quickly realized this was not a typical class action where Class Members could wait for compensation for damages that had happened in the past. Indeed, Class Member homes are continuing to experience leaks as final approval is pending and those Class Members with qualifying claims (*i.e.,* those who have suffered or are currently suffering leaks), need impactful relief now just so that they can live in their homes. As a result, Class Counsel had no choice but to move quickly in this litigation, particularly with an eye towards finding a resolution which could adequately compensate them, in order to fulfill their duties to the Class.

**Amounts Involved and Results Obtained**

16.     The Settlement Agreement awaiting the Court's approval provides meaningful and impactful relief for the Settlement Class.[1] The benefits provided will enable Class Members who have suffered or are suffering leaks to repair and, in some cases, completely re-plumb their homes. Moreover, the compensation provided for by the Settlement Agreement provides more funds and benefits on a *pro rata* basis for Settlement Class Members than the settlement reached a in the *Cole* litigation—which was finally approved by the United States District Court for the District of New Jersey.

**No Pre-Existing Relationship**

17.     No such pre-existing relationship existed between Class Counsel with Plaintiffs. Such that there was any prospect for additional work from which Class Counsel would benefit here.

## EXPENSES

18.     Class Counsel incurred at least $48,491.75 in expenses during the litigation of this matter.

I declare under penalty of perjury that the facts stated in this declaration are true and correct."

Executed in Travis County, Texas on the 12th day of April 2021.

Robert Linkin

---

[1] The Settlement Agreement is attached to Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (Dkt. No. 50-1).

## AFFIDAVIT OF KIRBY FARRIS IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS

COUNTY OF JEFFERSON   )
STATE OF ALABAMA       )

BEFORE ME, the undersigned authority;

PERSONALLY CAME AND APPEARED:

### KIRBY D. FARRIS

Who, after being first duly sworn, under penalty of perjury, did depose and declare that the following are true and correct:

1.      I am over the age of twenty-one and I have personal knowledge of the matters set for herein and believe them to be true and correct.

2.      I am a founding partner at Farris, Riley & Pitt, LLP ("The Firm"), located at 505 20th Street North, Suite 1700, Birmingham, Alabama, 35203.  I have practiced for nearly three decades representing plaintiffs in actions against corporations requiring complex litigation matters, including class actions, mass torts, catastrophic personal injury, products liability, and wrongful death.

3.      I have served as class counsel in roughly ten prior class/collective actions as well as being appointed class counsel in this litigation.  I am currently a member in good standing in the following courts: all Alabama state and federal courts and this Court, The Western District of Texas and I have been previously admitted to the Eastern District of Tennessee and in a District of Colorado.

Plaintiff's Exhibit

B

In addition, I have tried well over 100 cases in both federal and state courts across the country to verdict receiving notable verdicts totaling well into the millions. I have also achieved numerous seven-plus figure settlements, including multi-plaintiff litigation settlement.

4.      My firm is currently comprised of nine lawyers, five of whom, including myself, contributed their skills and expertise to the prosecution of claims against NIBCO, Inc., J.D. Lawrence, Jessica Zorn, Darius Crayton, and Calle Mendenhall.  The Firm's attorneys have zealously advocated on behalf of Plaintiff and the putative class in this case.  We have invested substantial time and resources preparing this case, including through investigating Plaintiff's individual and class claims.  The Firm's attorneys have engaged in substantial motion practice, conducted discovery, and have worked diligently with co-counsel to negotiate the settlement in this case.

5.      J.D. Lawrence has practiced since 2002 and joined The Firm in 2014.  During this time, J.D. has concentrated his practice on construction litigation and personal injury litigation.  He has tried over 35-40 trials to verdict.  J.D. attended strategy meetings and was the representative plaintiff's primary contact at the firm during the course of this litigation.

6.      Jessica Zorn has practiced since 2016 with The Firm.  Jessica has extensive experience in motion practice and jury trials.  She has been recognized for her commitment to clients through her selections as a Super Lawyer Rising Star (2020), Birmingham Magazine Rising Star Attorney (2017), and B-Metro Topflight Attorney (2018-2020).  In this litigation, Jessica's motion practice expertise was an essential value to the work up of this class action.

7.      Darius Crayton has practiced since 2015, joining The Firm in 2019.  Prior to joining The Firm, Darius served as a Deputy District Attorney in Jefferson County, Alabama where he conducted numerous jury trials and gained immeasurable experience in investigatory and case

development work.  In this litigation, Darius primarily handled discovery and expert and case theory workup.

8.      Calle Mendenhall has practice since 2012, joining The Firm in 2018.  Calle's career has predominately focused on multi-plaintiff actions, including class actions.  Currently, Calle is a member of Plaintiffs' Steering Committees for a multidistrict litigation in the District of Arizona and a state court consolidation in Alameda County, California involving thousands of injured plaintiffs.  Calle has been selected as a Rising Star by Super Lawyers (2018-2020) and ranked as a Top 100 Trial Lawyer by the National Trial Lawyers.  In this litigation, Calle primarily handled the pleadings and motion practice for the *Garrett* case along with Jessica Zorn and Kirby Farris.

9.      Despite the appearance of a late entry into the *Matson* case, The Firm spent significant time and effort litigating against NIBCO, Inc. through my Firm's own class action filed in the State of Alabama.[1]  The in-depth motion practice, discovery, and expert workup has been invaluable, and indeed a significant impetus, in achieving a resolution both of these two class actions.

10.     In early 2019, Class Representative Yolanda Garrett contacted The Firm regarding the issues she was encountering with the PEX piping in her home.  The Firm's attorneys began an in-depth investigation and analysis of the case.  The Firm drafted and filed the Class Complaint on July 18, 2019. Over the course of the next six to nine months, The Firm engaged in arduous motion practice requiring the skill and expertise of our well-qualified lawyers.  This motion practice and very early discovery has been invaluable to all class members.  We were able to unearth significant issues and develop strong strategies to prosecute these cases to a successful conclusion.  During this process, we were in constant contact with the representative plaintiff, Yolanda Garrett, including conducting initial discovery.  The Parties were able to reach the present settlement only

---

[1] *Garrett v. NIBCO, Inc.*, Case No. 19-cv-01137-RDP (N.D. Ala.)

after the motion practice, initial case work up, settlement discussions, and the in-person mediation along with other class counsel in the *Matson* case. Although the Parties were able to reach a settlement in-spirit during the mediation, the final terms of the Settlement Agreement took several months to finalize.

11.     The time spent litigating and settling this case necessarily precluded The Firm along with other Class Counsel from engaging in other cases. This case was complex and presented difficult issues. Settlement Class Counsel understood that litigating this case would require substantial time and money, creating a significant risk of foregoing compensation. Additionally, the relationship between a class action plaintiff and counsel is unlikely to lead to repeat business or ongoing retainers, as might be the case where counsel represents a business or wealthy client.

15.     The requested awards will not affect the amount Defendant will pay to satisfy the approved Settlement Class claims. This settlement, in my judgment, is a fair and reasonable result for all class plaintiffs.


        Further affiant sayeth not.


                                                    KIRBY D. FARRIS

SWORN TO AND SUBSCRIBED BEFORE ME
ON THIS 9th DAY OF April, 2020.


NOTARY PUBLIC
PRINT NAME: Hayden Hall
My commission expires: 7/10/2024
[APPLY SEAL]

4