IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

DAVID MATSON, BARBARA                §
MATSON, YOLANDA GARRET,               §
INDIVIDUALLY AND ON BEHLF OF          §
ALL OTHERS SIMILARLY SITUATED.;       §
                                      §
            *Plaintiffs*,             §              5-19-CV-00717-RBF
                                      §
vs.                                   §
                                      §
NIBCO INC.,                           §
                                      §
            *Defendant*.              §

**ORDER**

Before the Court is the Motion for Sanctions and Curative Action filed by Defendant NIBCO, Inc and partially joined by Plaintiffs David Matson, Barbara Matson, and Yolanda Garret (collectively "the *Matson* Plaintiffs"). *See* Dkt. Nos. 72 & 73. NIBCO filed an identical motion in the related case that is styled, *Williams v. Matson*, No. 5-20-cv-48-JKP-RBF, Dkt. No. 38. The parties in *Matson* consented to U.S. Magistrate Judge jurisdiction, and the case has accordingly been reassigned. *See* 28 U.S.C. § 636(c). The *Williams* case is referred for resolution of all nondispositive pretrial matters, pursuant to Local Rule CV-72.

For the reasons discussed below, NIBCO's Motion, Dkt. No. 72, is **GRANTED IN PART**. The Court will do as follows: (1) strike the 411 Requests for Exclusion either directly submitted by the law firm Fleming, Nolan & Jez or submitted using one of the firm's forms; (2) re-open the opt-out period for only those class members affected by that action; and (3) order that curative notice be sent to those same affected class members whose Requests for Exclusion are at issue.

1

All other relief requested, however, is denied. Finally, the *Williams* Plaintiffs' objections to the evidence submitted in support of the Motion, *see* Dkt. Nos. 85, 88 & 94, are **OVERRULED**.

## Factual and Procedural Background

On June 19, 2019, Plaintiffs David and Barbara Matson initiated this action on behalf of themselves and others similarly situated, alleging that Defendant NIBCO manufactured or distributed defective cross-linked polyethylene tubing that caused or will cause them and the putative class members to suffer water damage to their residences. Their live Complaint raises claims for (1) breach of express warranty pursuant to Section 2-313 of the Uniform Commercial Code, (2) breach of implied warranty of merchantability pursuant to Section 2-314 of the Uniform Commercial Code, and (3) Strict Liability Design Defect, Manufacturing Defect, and Failure to Warn. *See* Dkt. No. 52. Approximately seven months later, on January 14, 2020, attorney George Fleming of the law firm Fleming, Nolen & Jez, LLP signed the complaint in a nearly identical, competing putative class action against NIBCO and on behalf of named Plaintiffs Janice Williams, Antonio Rodriguez, Jr., Princess Diane Pippen, Diane Robinson and Maya Robinson as well as all others similarly situated (collectively the "*Williams* Plaintiffs"). *See* Dkt. No. 1 in *Williams v. NIBCO*, No. 5-20-cv-48-JKP-RBF.

On December 22, 2020, the *Matson* Plaintiffs advised the Court that they successfully resolved their claims with NIBCO. *See* Dkt. No. 50. They sought an Order pursuant to Rule 23(e) to accomplish the following: (1) preliminarily approve the settlement; (2) provisionally certify the settlement class; (3) provide for issuance of notice to the settlement class; and (4) schedule a final fairness hearing. Approximately one week later, Mr. Fleming filed—without leave of court—a notice of appearance in *Matson*. *See* Dkt. No. 53. Mr. Fleming then filed an objection to the *Matson*

settlement and a memorandum in support, claiming that his clients' rights would be affected by the Court's adjudication of the proposed settlement. *See* Dkt. No. 57 & 64.

On January 15, 2020—while the *Matson* Plaintiffs' motion for preliminary settlement approval awaited disposition—Mr. Fleming transmitted a letter marked as an advertisement to all putative class members. Its subject line reads: "Re : Your defective NIBCO PEX Plumbing System." Dkt. No. 72-3. The first paragraph of the five-paragraph long letter begins, "The NIBCO PEX Plumbing system in your home *is defective*. It develops leaks that *will cause damage* to your home." *Id*. (emphasis added). The second paragraph advises that "[t]he proposed NIBCO settlement would set up a fund of $7.65 million for a class of 8,100 homeowners, or less than $1,000 per home. The cost to replace your defective NIBCO PEX Plumbing System alone is approximately $12,000-14,000" and "the value of your home *will decline* with the NIBCO plumbing system partially or fully in it." *Id*. (emphasis added). It further asserts that "if you sell your home, you will find it *has depreciated* in market value." *Id*. (emphasis added).  In the third paragraph, the letter asserts that "[y]ou *need* your home replumbed before there are any leaks and *before damages start* happening to your home. *The way* to do that is to opt out of this settlement and into an opt-out class that will seek full compensation for you." *Id.* (emphasis added). In the final paragraph, the letter instructs that "to opt out, please fill in all the following information and return it to us in the postage-paid, self-addressed stamped envelope provided for your convenience before March 1, 2021." *Id*. (emphasis in original).

After learning of Mr. Fleming's advertisement, the *Matson* Plaintiffs sought to amend their proposed court-approved notice to address certain inaccuracies in Mr. Fleming's letter. *See* Dkt. No. 62.

On February 23, 2021, the Court granted the *Matson* Plaintiffs' Motion for Preliminary Approval. *See* Dkt. No. 68. In that Order, the Court (1) provisionally certified a settlement class, (2) preliminarily approved the terms of the settlement, (3) directed notice be transmitted to the class members in the form (as amended) proposed by the *Matson* Plaintiffs, (4) appointed class counsel to represent the class members, (5) directed the manner and timetable for the filing of requests for exclusions and objections, and (6) scheduled a final approval hearing to occur on June 15, 2021. *See id.* In a contemporaneous order, the Court struck the *Williams* Plaintiffs' objections and memorandum for lack of standing and as premature. *See* Dkt. No. 69.

On March 5, 2021, the Court held a status conference in the *Williams* case. Mr. Fleming appeared on behalf of the *Williams* Plaintiffs. At the hearing, Mr. Fleming confirmed that the proposed putative class in *Williams* is effectively identical to the provisionally certified *Matson* class. Mr. Fleming also expressed an intent to submit hundreds of opt-outs from the *Matson* settlement class so that those individuals could join the *Williams* litigation. But at that time Court-approved noticed had not yet issued. Thus, any *Matson* class member who opted-out in favor of joining the *Williams* litigation would "run the risk of doing so without having the pertinent information conveyed to them via a court-approved notice." *Williams*, No. 5-20-cv-48, Dkt. No. 35. Accordingly, the Court exercised its discretion and stayed the *Williams* case pursuant to its inherent powers and Rule 23(d)—at least while NIBCO's motion to dismiss in *Williams* remained pending. *See id.* Finally, to ensure the *Matson* class received "the best notice that is practicable under the circumstances," Fed. R. Civ. P. 23(c)(2)(B), the Court explained that:

> While the stay remains in place, prudence dictates that communications issued to the putative class members should be subject to prior court approval. Although the Court won't at this time prospectively ban all non-Court sanctioned communications, the Court notes that *inaccurate, misleading, or coercive communications with putative class members are frowned upon*.[] The Court,

therefore, trusts that counsel will adhere to their ethical obligations and duty of candor to the Court, as well as to the relevant rules of professional responsibility.

*Williams*, No. 5-20-cv-48, Dkt. No. 35 (emphasis added, footnote omitted, and citing *Georgine v. Amchem Prods., Inc.*, 160 F.R.D. 498, 518 (E.D. Pa. 1995)).

On March 10, 2021, and notwithstanding the Court's expressed concerns that *Matson* class members ought not rush to opt-out of the class without the benefit of a Court-approved notice, Mr. Fleming submitted to the *Matson* class administrator 228 Requests for Exclusion. *See* Dkt. No. 72-4. Those submitted requests were all on the form that Mr. Fleming had attached to his letter of January 15, 2020.

On March 18, 2021, the District Court denied NIBCO's motion to dismiss in the *Williams* case but extended the stay for all purposes, except with respect to specific jurisdictional discovery. *See Williams*, No. 5-20-cv-48, Dkt. No. 36. In extending the stay the District Court noted:

> This is an unusual case in that two parallel putative class actions are both proceeding. The *Matson* case has apparently reached the home stretch and the parties are in the process of finalizing the settlement and necessary notice to putative plaintiffs. *Neither this Court nor the parties (or counsel) in this case should interfere with that earlier filed action*. Extending the stay in this case is warranted.

*Id.* (emphasis added).

On March 19, 2021—one day after the District Court ordered the *Williams* Plaintiffs and their counsel not to interfere with the *Matson* settlement and almost a week *before* the *Matson* court-approved notice issued on March 25, 2021[1]— Mr. Fleming transmitted a *second* letter to the provisionally certified *Matson* class. The letter, again, was marked as an advertisement and again encouraged class members to opt-out of the *Matson* settlement. *See* Dkt. No. 72-1.

---

[1] *See* Dkt. No. 77-10.

The purpose of the second letter was ostensibly to "update" class members on *NIBCO*'s proposed class settlement and their right to exclude themselves from the settlement and join the *Williams* Plaintiffs. *Id*. Those *Williams* Plaintiffs, the letter explained, "seek a settlement that involves a total replumb of their homes." *Id.* Much like the first letter, the second letter addressed the alleged terms of the *Matson* settlement, explaining to class members that "[w]hen you get the [*Matson* Plaintiffs'] Notice, you will see that under the settlement NIBCO will pay up to $7.65 million for a proposed class of 8,100 homes—which on average is less than $1,000 per home." *Id.* The *Williams* Plaintiffs, according to the letter, planned to object to this "inadequate" settlement. *Id.* In support, the letter provided that "[t]he NIBCO plumbing system in your home *is defective*, according to our experts." *Id.* (emphasis added). The experts, according to the letter, "have also testified that whether or not you have already had a leak or flood, your entire plumbing system needs to be replaced at a cost of between $12,000-$14,000. So, in our experts' opinions, you have already suffered damages." *Id.* (emphasis added). The letter further "notifi[ed]" class members that "if you sell your home, the Texas and Alabama Seller's Disclosure forms both *require* you to advise the purchaser that you have a defective plumbing system. So it is highly likely that the value of your home will be lowered." *Id.* (emphasis added). The last paragraph advised class members that they can opt-out of the *Matson* class by completing an attached opt-out form and returning it to the office of Fleming, Nolen & Jez by May 1, 2021. *See id.* Class members, according to the letter, could then either join the *Williams* litigation or pursue their claim with other counsel. *See id.* The bottom of the letter contained two disclaimers. First, the letter reiterated that the letter is an advertisement. Second, the letter instructed class members who are "currently represented by an attorney" to disregard it. *See id.*

Shortly after this second letter went out, NIBCO filed the instant motion requesting curative action and sanctions, claiming that Mr. Fleming's second advertisement was incomplete, misleading, and coercive and unfairly resulted in hundreds of opt-outs from class members who made their decision without all the pertinent information. *See* Dkt. No. 72. The *Matson* Plaintiffs join NIBCO's request for curative action and they—along with NIBCO—request that counsel for *Williams* be ordered, as a sanction, to pay for the requested curative notice. NIBCO also seeks a separate sanctions award of fees and costs. *See* Dkt. No. 72. Counsel for the *Williams* Plaintiffs oppose the requested relief and, further, object to much of the evidence NIBCO and the *Matson* Plaintiffs offer in support. *See* Dkt. Nos. 77, 85, 88 & 94.

On May 7, 2021—over a month after NIBCO filed its motion—Mr. Fleming submitted an additional 183 Requests for Exclusion. *See* Dkt. No. 102. These Requests for Exclusion were all— or virtually all—on the form attached to Mr. Fleming's letters.

On April 28, 2021 and May 18, 2021, the Court held a consolidated hearing in both the *Matson* and *Williams* cases to address the merits of NIBCO's motion.

## Analysis

### A.    Further Significant Curative Action is Warranted in *Matson*.

As discussed further below, Mr. Fleming's January and March 2021 letter-advertisements were misleading, coercive, factually inaccurate, or a combination of some or all of these things. There is a sufficient basis to conclude that a significant percentage of the 411 *Matson* class members who submitted Requests for Exclusion were misled by one or both letters. Significant curative action is therefore necessary.

Federal Rule of Civil Procedure 23 requires the Court to direct to class members "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). This notice must

"clearly and concisely state in plain, easily understood language": (1) "the nature of the action;" (2) "the definition of the class certified;" (3) "the class claims, issues, or defenses"; (4) "that a class member may enter an appearance through an attorney if the member so desires"; (5) "that the court will exclude from the class any member who requests exclusion"; (6) "the time and manner for requesting exclusion"; and (6) "the binding effect of a class judgment on members." *Id.*(c)(2)(B)(i)-(vii). In other words, Rule 23 "requires that class members be given information reasonably necessary for them to make a decision whether to object to the settlement." *In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 197 (5th Cir. 2010). "This mandatory notice pursuant to subdivision (c)(2), together with any discretionary notice which the court may find it advisable to give under subdivision (d)(2), is designed to fulfill requirements of due process to which the class action procedure is of course subject." Fed. R. Civ. P. 23 advisory committee's note to 1966 amendment.

In light of due process concerns and the potential for abuse that a class action can pose, the Court has an "affirmative obligation in its capacity as fiduciary for absent class members" to ensure class members receive "objective, neutral information about the nature of the claim and the consequence of proceeding as a class" and also to safeguard those members from misleading communications.[2] In order to further this obligation and ensure that class litigation proceeds in an

---

[2] McLaughlin on Class Actions § 5:85 (17th ed. 2020); *Kleiner v. First Nat. Bank of Atl.*, 751 F.2d 1193, 1203 (11th Cir. 1985) (rejecting a defendant's campaign to solicit exclusions of class members from the litigation and observing that "[u]nsupervised, unilateral communications with the plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of the facts, without opportunity for rebuttal"); *see also Deposit Guar. Nat'l Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 331 (1980) (the district court has a responsibility "to protect both the absent class and the integrity of the judicial process by monitoring the actions of the parties before it"); *Erhardt v. Prudential Grp., Inc.*, 629 F.2d 843, 846 (2d Cir. 1980) (explaining that notice to class members is "crucial" to Rule 23 and discussing the Court's responsibility in preventing abusive practices).

efficient manner, a district court has "the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981). Indeed, Rule 23 permits a Court to issue orders that "(A) determine the course of proceedings . . . (B) require—to protect class members and fairly conduct the action—giving appropriate notice to some or all class members of: (i) any step in the action . . . (C) impose conditions on the representative parties or on intervenors; . . . or (E) deal with similar procedural matters." Fed. R. Civ. P. 23(d)(1).

Matters become a bit more complicated in situations such as this where two overlapping actions are filed around the same time by separate counsel, each seeking redress for the same injuries allegedly suffered by essentially the same putative class. In this context, there is a heightened risk that attorneys will attempt to "cut into [one] class action" and "steal away class members." *McWilliams v. Advanced Recovery Sys., Inc.*, 176 F. Supp. 3d 635, 639 (S.D. Miss. 2016) (citing *Gulf Oil*, 452 U.S. at 100 n. 12). At the same time, noncoercive, accurate, and non-misleading lawyer advertising is a form of protected commercial speech. *Shapero v. Kentucky Bar Ass'n*, 486 U.S. 466, 472 (1988). But no one disputes here that inherently misleading, coercive, or factual inaccurate advertisements aren't entitled to First Amendment protection.

The *Williams* Plaintiffs urge that in this context only "inherently misleading" communications can be prohibited. The curative action contemplated and indeed ordered here, however, is not a prohibition or prior restraint on speech. It is, in a sense, *more* speech, albeit speech needed to cure actual or potential confusion or harm caused by inherently inaccurate, coercive, or misleading speech that preceded it. In any event, even potentially misleading advertisements may be restricted—let alone clarified with more speech—provided that the

restriction is narrowly tailored to further a substantial interest. *See Express Oil Change, L.L.C. v. Miss. Bd. of Licensure for Pro. Eng'rs & Surveyors*, 916 F.3d 483, 488 (5th Cir. 2019).

Regardless, the Court finds that the letters submitted by Mr. Fleming to the putative class members—one of which by itself already motivated the Court to approve an initial clarification— were inherently misleading.  "[A] statement is actually or inherently misleading when it deceives or is inherently likely to deceive." *Joe Conte Toyota, Inc. v. La. Motor Vehicle Comm'n*, 24 F.3d 754, 756 (5th Cir. 1994). Given the timeline here and the letters' text, the communications at issue satisfy this standard. They also independently quality as coercive and factually inaccurate.

1.      *The January 15, 2021 letter was inherently misleading, coercive, and factually inaccurate*. Much can be gleaned from the January 15, 2021, letter on its face. And what is learned provides ample cause for concern.

*First*, the January 2021 letter begins by misrepresenting that every single class member's plumbing system "*is defective*" and "develops leaks that *will cause* damage to [every class member's] home" regardless of whether a particular class member's home has experienced or will experience a leak. Dkt. No. 72-3 (emphasis added). Mr. Fleming conceded at the May 18 hearing that he doesn't *know* that every home with NIBCO plumbing will develop a leak. At most, he speculates that class members' homes will *probably* develop leaks. But whether a given plumbing system, or all the plumbing systems, is or are defective is the essential disputed liability issue in the case. *See, e.g.,* Dkt. No. 38 (Mot. to Dismiss) at 1 ("Plaintiffs continue to predicate their claim on the existence of an *alleged* design defect in the NIBCO products." (emphasis altered)). This is no immaterial misstatement; a homeowner who might have a defective plumbing system surely would view a proposed settlement (or a class action) in a different light than if the system were in

fact defective. This is especially true for homeowners who haven't experienced a leak. The letter presents this disputed matter as established fact.

*Second*, the letter mischaracterizes the settlement as involving "less than $1,000 per home." The letter then indicates that "[t]he cost to replace your defective NIBCO PEX Plumbing System alone is approximately $12,000-14,000." These statements, again, reflect a misleading notion that *every* home necessarily will participate in the settlement fund, and also indicate that *every* home will require a new plumbing system. The letter then further represents that "[t]he NIBCO settlement leaves [all class members] almost totally responsible for the consequences of NIBCO's defective plumbing system." *Id.* But the expected payment to each class member can't be calculated or even estimated on an average-payment-per-home basis. Rather, the proposed settlement compensates class members who experience a qualifying leak, and, to date, the majority of Texas class members haven't reported any leaks. *See* Kulman Decl. (Dkt. No. 82-2) ¶¶ 11-12.

*Third*, the letter misrepresents that all class members' homes—regardless of whether they have experienced a leak or even will—have declined in value because of this "defect." This, too, is inherently misleading and coercive.

*Fourth*, the letter suggests that "the way" class members can obtain a total replumb of their homes is to opt-out of the *Matson* class and join the *Williams* litigation. In fact, the letter suggests that a settlement providing for such relief is underway. These statements are misleading and coercive in that they imply that the *only* way to obtain a replumb is to join the *Williams* litigation.

*Fifth*, and finally, the letter recommends that each class member opt-out of the *Matson* settlement and join the *Williams* litigation, yet the letter—apart from its label as an

advertisement—doesn't make clear that the attorney sending the advertisement is financially motivated to make this recommendation.

**2.** *The March 19, 2021 letter made matters worse.* The March 2021 letter is also inherently misleading, coercive, and factually inaccurate. Although it is more carefully worded than its predecessor, it again indicates that *all* homes in the settlement class will experience leaks and that every class member's home requires a total replumb. It also misrepresents that all class members' homes have declined in value. It further potentially misleads by providing that every class member has a legal duty to disclose a defect their home, even if a home has never experienced a leak. The letter reiterates that class members on average stand to receive less than $1,000 in damages compared to the $12,000 to $14,000 damages class members have allegedly already suffered. The letter again fails to disclose counsel's financial motivation for the advertisement. The letter also appears to suggest that class members aren't represented by counsel when, in fact, class counsel had already been appointed.

As noted, the language in this second letter, in some but not all places, appears to be more carefully crafted to avoid outright factual misstatements, as compared to the January letter. Unfortunately, that fact serves to reinforce the egregious nature of the January letter. Recall, class members almost certainly received both letters before receiving the Court-approved notice. The March letter never explains *why* it is more carefully worded; it does not explain that matters may have been overstated in the January letter. Thus, the letter leaves the impression with a reader that the letter is merely a supplement to the January letter, which means it only appears to endorse the statements in the January letter rather than clarify or tone down any of them. Ultimately, there can be no assurance that any recipient of these various communications could or would understand who they all came from and what their purpose was, let alone which one(s) any given recipient

ought to credit. A clear, direct statement from the Court to class members is needed to clarify matters here.

The fact that the letters each contained a link to the motion for preliminary approval or preliminarily approved settlement doesn't change matters. Class members shouldn't be burdened with independently reviewing the settlement website to acquire a balanced picture of the proposed settlement. That is the purpose of court-approved notice. This is particularly true where class members received the two misleading letters *before* court-approved notice issued, and the website apparently wasn't live at the time class members received, and likely read and digested, the letters.

Affidavits from class members and class counsel confirm that the letters are inherently misleading (and actually misleading), coercive, and factually inaccurate. For example, class member Almas Dhanani explained that the letters "confused [his] family" in that they were "not sure whether or not Mr. Fleming was associated [with Class Counsel] or whether or not [they] should respond to their Opt-Out Coupon." Dkt. No. 83-1. Class member Jennifer Flournoy—who also serves as President of a Homeowners' Association covering a large group of homes involved—explained that she and other class members were similarly confused by the letters. Dkt. No. 83-3. In response to the advertisements, a couple of HOA members called Ms. Flournoy "confused as well asking for [her] advice as to whether or not they should pursue additional inspections on their properties." *Id.* Finally, class counsel and their staff attest that they have received numerous inquiries from class members regarding the import of the letters including (1) whether the *Williams* counsel were also Settlement Class Counsel; (2) whether they were required to sign the opt-out form attached to *Williams* counsel's January and March letters in order to participate in pending Class Settlement; (3) what the letters meant, whether the class members needed to take any action in response to them, and how the letters affected their case; and

(4) whether the proposed settlement would provide *any funds* to those who suffered leaks. *See* Dkt. Nos. 83-2 ¶ 6 (Linkin Aff.); 83-4 (Farris Aff.); 83-5 (Kennedy Aff.).

Although the *Williams* Plaintiffs object to much of this evidence on procedural grounds, the Court orally overruled their objections at the May 18 hearing. The Court has discretion to consider evidence submitted in a reply, and the *Williams* Plaintiffs and their counsel were free to offer their own contravening affidavits. Moreover, to alleviate any potential prejudice, the Court provided the *Williams* Plaintiffs and their attorneys an opportunity to submit a sur-reply brief. The *Williams* Plaintiffs' substantive objections similarly lack merit. The affiants have sufficiently established personal knowledge of the events at issue, and they have also provided sufficient facts to support their allegations. Moreover, any allegations concerning the misleading nature of the January 2021 letter are relevant to the present dispute. This situation is also somewhat unique in that the Court has an obligation to ensure accurate notice to the class; formalistic adherence to procedural rules on the presentation of affidavits—at the expense of informing the Court about potential class-member confusion—would disserve that duty. Finally, there's no requirement that the evidence must be admissible to be considered at this stage of the proceeding,[3] particularly where there's no basis in the record to doubt the truthfulness of the statements. Accordingly, the *Williams* Plaintiffs' objections are overruled.

      **3.** *A significant remedy is required.* For all these reasons, curative action is warranted here. As explained, the Court has a responsibility to direct to class members "the best notice that is practicable under the circumstances"[4] that will enable them to make an informed, intelligent

---

[3] *See, e.g.*, *Sierra Club, Lone Star Chapter v. F.D.I.C.*, 992 F.2d 545, 551 (5th Cir. 1993) (noting that at the preliminary injunction stage, "the procedures in the district court are less formal, and the district court may rely on otherwise inadmissible evidence, including hearsay evidence").

[4] Fed. R. Civ. P. 23(c)(2)(b).

decision whether to opt out or remain a member of the *Matson* settlement class. Mr. Fleming's January and March 2021 misleading, coercive, and factual inaccurate letters have substantially interfered with that obligation as well as the class members' ability to make an informed decision regarding their rights. Although the Court previously permitted the March 25 court-approved notice to address some inaccuracies mentioned in the January 2021 letter, Mr. Flemings' second letter—combined with the large number of opt-outs submitted by Mr. Fleming and evidence of confusion here—demonstrates that further curative action is required. Indeed, of the 411 opt-out received by the settlement administrator, 410 were submitted directly by Mr. Fleming and his law firm. The one opt-out that didn't come directly from Mr. Fleming's office was still submitted using the firm's forms. *See* Shawver Aff. (Dkt. No. 102). On this record, the Court isn't assured that class members made their opt-out decisions based on accurate, non-coercive information.

In order to place these class members in the position they would have been but for their exposure to the misleading advertisements, the Court will exercise its discretion pursuant to Rule 23(d) and do the following: (1) restore to the class the 411 class members who have opted-out; (2) order curative notice be sent to them; and (3) re-open the opt-out period as to the affected class members for a period of 30 days after curative notice is sent.[5] Striking these opt-outs will protect the integrity of the class while imposing little to no prejudice on the affected class members. "[I]f these class members did, in fact, make a free and unfettered decision in choosing to withdraw, then

---

[5] *See, e.g.*, *Georgine*, 160 F.R.D. at 518 (striking opt-outs procured as a result of confusing and misleading solicitations sent to members of the potential settlement class); David F. Herr, Manual for Complex Litigation § 21.33 (4th ed. 2004) (explaining that curative action for misleading communications to class members may include "extending deadlines for opting out, intervening, or responding to a proposed settlement, or voiding improperly solicited opt outs and providing a new opportunity to opt out").

they will do so again" during the re-opened opt-out period. *Impervious Paint Indus., Inc. v. Ashland Oil*, 508 F. Supp. 720, 724 (W.D. Ky. 1981).

Although the Court recognizes that striking all 411 Requests for Exclusion (as opposed to only the 228 requested by the Motion) exceeds the relief requested by NIBCO and the *Matson* Plaintiffs, the record reflects that Mr. Fleming submitted 183 of the Requests for Exclusion *after* NIBCO filed its motion. And the same rationale applies for striking these additional opt-outs. They appear to have been the result of the misleading, coercive, and factually inaccurate letters. The Court, moreover, has an affirmative duty here to ensure accurate notice is sent to class members; that duty dictates in these circumstances that action as to all opt-outs received thus far is required.

## B. The Request for Sanctions Is Denied.

Citing the Court's inherent authority to impose sanctions to control the litigation before it, NIBCO and the *Matson* Plaintiffs urge that costs for transmitting the aforementioned curative notice be borne by Mr. Fleming and his law firm. And NIBCO seeks an additional award of fees and costs incurred with the filing of its motion. But in the Fifth Circuit, "the threshold for the use of inherent power sanctions is high" and such powers "must be exercised with restraint and discretion." *Elliott v. Tilton*, 64 F.3d 213, 216 (5th Cir. 1995) (quotations omitted). On this record and briefing, NIBCO and the *Matson* Plaintiffs have failed to establish that sanctions pursuant to the Court's inherent power are warranted.[6] Accordingly, costs for the curative notice discussed above will be paid equally by the parties in the *Matson* litigation, and the request for additional monetary sanctions is denied.

---

[6] *See, e.g.*, *Erhardt v. Prudential Grp., Inc.*, 629 F.2d 843, 846 (2d Cir. 1980) (refusing to find CEO of defendant in class action in contempt for making imprudent communications to class members where the court imposed sufficient remedial measures to counteract CEO's lack of judgment, and the Court's order didn't "spell-out" that defendant couldn't send unapproved notices to class members).

The lack of a sanctions finding at this time does not reflect that there will never be any additional consequences for Mr. Fleming and his law firm because of their letter-writing endeavors. Those letters are sufficiently concerning and inappropriate to necessitate significant corrective action from the Court. If nothing else, the spectacular waste of the parties' time and resources necessitated by these ill-conceived letters—not to mention the drain on judicial resources and disservice delivered to class members—reflects a lack of judgment that the Court believes brings into serious doubt whether Mr. Fleming and his law firm could serve as "fair and adequate" class counsel under Rule 23 in the *Williams* litigation. *See* Fed. R. Civ. P. 23(g) (providing that "[i]n appointing class counsel, the court . . . may consider any [ ] matter pertinent to counsel's ability to fairly and adequately represent the interests of the class"). That issue, however, will be addressed more fully at the appropriate juncture in that separate action and after all interested groups have a full opportunity to be heard on it.

## Conclusion

For the reasons discussed above, NIBCO's Motion, Dkt. No. 72, which is joined in part by the *Matson* Plaintiffs is **GRANTED IN PART** as follows:

(1) All 411 Requests for Exclusion either directly submitted by the law firm Fleming, Nolan & Jez or submitted on one of the firm's forms are **STRUCK**, and these class members shall be restored to the settlement class;

(2) Curative notice shall be sent to all affected class members. Within **14 days** from the date of this Order, NIBCO and the *Matson* Plaintiffs shall confer regarding the content of this notice and submit a proposed notice for Court approval or modification. The notice should explain why the Court has struck the class members' Requests for Exclusion and what that means for those members. It should not mention Mr. Fleming

or his law firm by name, although it can address that it is the letters or advertisements that have been sent to class members that have necessitated a clarifying notice from the Court. Thus, the Notice should be in a form to reflect that it comes from the Court. Costs for transmitting the curative notice shall be borne equally by NIBCO and the *Matson* Plaintiffs;

(3) The opt-out period for all affected class members shall be **RE-OPENED** for a period of **30 days** from the date curative notice is transmitted to them;

To accommodate these scheduling changes, the Court will **RE-SET** by separate order the final approval hearing and the deadline for the *Matson* Plaintiffs to file their Motion for Final Approval of the Settlement. The hearing date shall be no less than 45 days after the curative notice is issued.

**IT IS FURTHER ORDERED THAT** the *Williams* Plaintiffs' objections to NIBCO and the *Matson* Plaintiffs' evidence, *see* Dkt. Nos. 85, 88 & 94, are **OVERRULED**.

All other relief requested, including NIBCO and the *Matson* Plaintiffs' request for sanctions, is **DENIED**.

**IT IS SO ORDERED**.

SIGNED this 10th day of June, 2021.

RICHARD B. FARRER
UNITED STATES MAGISTRATE JUDGE